**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| OKLAHOMA FIREFIGHTERS PENSION AND RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, | Case No. 1:20-cv-08024-PKC |
| Plaintiff, | <u>CLASS ACTION</u> |
| v. | |
| PEABODY ENERGY CORPORATION, GLENN L. KELLOW, and AMY B. SCHWETZ, | |
| Defendants. | |

**SCHULTZE ASSET MANAGEMENT, LP'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND .................................................................................................. 2

ARGUMENT .......................................................................................................................... 5

I.     SCHULTZE IS ENTITLED TO BE APPOINTED LEAD PLAINTIFF FOR THE
CLASS .......................................................................................................................... 5

     A.    The PSLRA Standard For Appointing Lead Plaintiff .................................................. 5

     B.    Under The PSLRA, Schultze Should be Appointed Lead Plaintiff .......................... 6

          1.    Schultze Filed a Timely Motion ................................................................. 6

          2.    Schultze Has the Largest Financial Interest in the Relief Sought by the
Class ........................................................................................................... 7

          3.    Schultze Meets Rule 23's Typicality and Adequacy Requirements ........... 8

II.    SCHULTZE'S SELECTION OF THE FARUQI FIRM AS LEAD COUNSEL
SHOULD BE APPROVED .......................................................................................... 10

CONCLUSION...................................................................................................................... 13

## TABLE OF AUTHORITIES

**Cases**                                                                                              **Page(s)**

*Baughman v. Pall Corp.*,
   250 F.R.D. 121 (E.D.N.Y. 2008) ..................................................................................6, 7, 8

*Blackmoss Inv., Inc. v. ACA Capital Holdings, Inc.*,
   252 F.R.D. 188 (S.D.N.Y. 2008) ...................................................................................8, 10

*In re Fuwei Films Sec. Litig.*,
   247 F.R.D. 432 (S.D.N.Y. 2008) ...................................................................................6, 7, 8

*In re GE Sec. Litig.*,
   No. 09 Civ. 1951 (DC), 2009 WL 2259502 (S.D.N.Y. July 29, 2009) ............................7, 8, 9

*Kokkinis v. Aegean Marine Petroleum Network, Inc.*,
   No. 11 Civ. 0917 (BSJ) (JCF), 2011 WL 2078010 (S.D.N.Y. May 19, 2011)........................9

*Levine v. AtriCure, Inc.*,
   508 F. Supp. 2d 268 (S.D.N.Y. 2007)..................................................................................6

*In re Olsten Corp. Sec. Litig.*,
   3 F. Supp. 2d 286 (E.D.N.Y. 1998) .....................................................................................7

*Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*,
   275 F.R.D. 187 (S.D.N.Y. 2011) ........................................................................................9

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*,
   229 F.R.D. 395 (S.D.N.Y. 2004) ......................................................................................6, 7

*Pompano Beach Police & Firefighters' Ret. Sys. v. Comtech Telecomms. Corp.*,
   No. CV 09-3007 (SJF) (AKT), 2010 WL 3909331 (E.D.N.Y. Sept. 29, 2010) ......................8

*Reitan v. China Mobile Games & Entm't Grp.*,
   68 F. Supp. 3d 390 (S.D.N.Y. 2014)..................................................................................10

*Quan v. Advanced Battery Techs., Inc.*,
   No. 11 Civ. 2279 (CM), 2011 WL 4343802 (S.D.N.Y. Sept. 9, 2011) ..................................9

*Topping v. Deloitte Touche Tohmatsu CPA, Ltd.*,
   95 F. Supp. 3d 607 (S.D.N.Y. 2015)................................................................................7, 8

*In re Tronox, Inc. Sec. Litig.*,
   262 F.R.D. 338 (S.D.N.Y. 2009) .........................................................................................6

*Zak v. Chelsea Therapeutics Int'l, Ltd.*,
   780 F.3d 597 (4th Cir. 2015) .............................................................................................11

**Statutes**

15 U.S.C. § 78u-4(a) ................................................................................................................ *passim*

**Other Authorities**

Rule 23(a)(4) ................................................................................................................................9

Anne Cullen,
    More Judges Are Demanding Diversity Among Class Counsel,
    Law360 (July 16, 2020) ..........................................................................................................13

Ralph Chapoco,
    Calls for Lawyer Diversity Spread to Complex Class Litigation,
    Bloomberg Law (July 30, 2020) .............................................................................................13

Schultze Asset Management, LP ("Schultze"), respectfully submits this memorandum of law pursuant to § 21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §78u-4(a)(3)(B), as amended by Private Securities Litigation Reform Act of 1995 ("PSLRA"), in support of its motion for the entry of an order (1) appointing Schultze as Lead Plaintiff and (2) approving Schultze's selection of the law firm of Faruqi & Faruqi, LLP (the "Faruqi Firm") as Lead Counsel.[1]

## PRELIMINARY STATEMENT

The above-captioned securities class action (the "Action") presently pending before this Court is brought on behalf of those who purchased or otherwise acquired Peabody Energy Corporation ("Peabody") common stock between April 3, 2017 and October 28, 2019, inclusive (the "Class Period"), which seeks to recover damages caused by defendants' violations of the Exchange Act.

With respect to the appointment of a lead plaintiff to oversee the Action, Congress established a presumption in the PSLRA that requires the Court to appoint the "most adequate plaintiff" as the lead plaintiff for the Action. 15 U.S.C. § 78u-4(a)(3)(B)(i). The "most adequate plaintiff" is the person who has the "largest financial interest in the litigation" and who also satisfies Rule 23's typicality and adequacy requirements for class representatives. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

---

[1]     Unless stated otherwise, the following conventions apply: (1) all citations, internal quotation marks and footnotes are omitted; (2) all emphases are added; and (3) all "Ex. _" references are to the exhibits attached to the Declaration of James M. Wilson, Jr. in Support of Schultze Asset Management, LP's Motion for Appointment as Lead Plaintiff and Approval of Lead Counsel filed herewith.

With losses of $2,238,598.59, Schultze, to the best of counsel's knowledge, has the largest financial interest in the litigation of any movant. Schultze also satisfies Rule 23's typicality and adequacy requirements. Schultze's claims are typical of the Class's claims because it suffered losses on its Peabody investment as a result of the defendants' false and misleading statements.  Further, Schultze has no conflict with the Class and will adequately protect the Class's interests given its significant stake in the litigation and its conduct to date in prosecuting the litigation, including its submission of the requisite certification and selection of experienced class counsel.  Accordingly, Schultze is the presumptive Lead Plaintiff.

Lastly, if appointed Lead Plaintiff, Schultze is entitled to select, subject to the Court's approval, lead counsel to represent the Class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). Schultze has engaged the Faruqi Firm for this purpose. The Faruqi Firm is an appropriate selection to serve as Lead Counsel because it is a highly experienced firm with substantial securities class action experience.

For the reasons summarized above and those explained more fully below, Schultze's motion should be granted in its entirety.

## FACTUAL BACKGROUND

Peabody is currently the largest coal mining company in the world, with 23 coal mines throughout the United States and Australia. ECF No. 1 at ¶ 2. One of its mines in Australia is the North Goonyella mine, which was acquired by Peabody in 2004 and through which the Company ships coal to customers in India, China and South Korea. *Id.* Peabody is a Delaware corporation headquartered in St. Louis, Missouri. *Id.* at ¶ 16. The Company's stock is listed on the NYSE under the ticker symbol "BTU." *Id.*

The complaint in the Action alleges that defendants knowingly and/or recklessly made false and/or misleading statements and/or failed to disclose: (i) the Company had failed to implement adequate safety controls at the North Goonyella mine to prevent the risk of a spontaneous combustion event; (ii) the Company failed to follow its own safety procedures; and (iii) as a result, the North Goonyella mine was at a heightened risk of shutdown. *Id.* at ¶ 54.

The truth about Peabody's inadequate safety practices was revealed when, on September 28, 2018, a fire erupted at the mine, forcing Peabody to suspend operations indefinitely. *Id.* at ¶ 55. On this news, Peabody's stock fell $5.54, or 13.5 percent, closing at $35.64 on September 28, 2018, down from the previous day's close of $41.18. *Id.*

Then, an article by *The Daily Mercury* published on September 28, 2018 quoted a long-time underground operator at the North Goonyella mine as stating that employees had been told not to talk about the incident: "We're told 'don't talk to the media, don't talk to the media' but I think people have a right to know." *Id.* at ¶ 56.

Then, in an investor update on October 2, 2018, Peabody stated that the fire was mostly contained and that the Company would initiate a formal review of the fire with the involvement of independent third parties. *Id.* at ¶ 57. On October 11, 2018, Peabody further disclosed that the Queensland Mines Inspectorate ("QMI") would commence a safety investigation into Peabody related to the events leading up to the North Goonyella fire. *Id.*

However, even after the fire and the announcement of both an internal and a governmental investigation, defendants continued to mislead investors about the Company's plan to restart operations at North Goonyella, falsely assuring investors that the Company would be able to mine significant coal at the North Goonyella mine in the near-term, while continuing to conceal major issues that would impede any progress at the mine and which would ultimately

3

cause QMI to reject its plans. *Id.* at ¶ 58. Specifically, defendants' statements conditioned investors to believe that its low-cost plan to restart operations at North Goonyella was reasonable and had a high likelihood of regulatory approval, while simultaneously omitting to disclose that the plan posed unreasonable safety and environmental risks such that QMI would likely mandate a safer, more cost-prohibitive approach that would cause major delays in restarting the mine. *Id.*

The truth about the feasibility of Peabody's plan to restart operations at North Goonyella was revealed through a series of disclosures. First, on February 6, 2019, Peabody revealed that contrary to previous statements, production at the North Goonyella mine would not resume in 2019, but was instead now targeted to begin to ramp in the early months of 2020. *Id.* at ¶ 61. On this news, Peabody shares fell by $3.80 per share, or 10.6%. *Id.*

Second, on May 1, 2019, Peabody reported that it had received a directive from QMI which could lead to further delays and necessitate a re-evaluation of the Company's re-entry plan. *Id.* at ¶ 65. On this news, Peabody shares fell $1.61 per share, or 5.6%. *Id.*

Third, on July 31, 2019, Peabody reported additional delays to the reentry of North Goonyella, explaining that QMI's requirements had resulted in a slower rate of progress than Peabody's initial plan had contemplated. *Id.* at ¶ 68. As a result, Peabody suspended its 2020 production guidance at the mine and informed investors that it was reevaluating its entire reentry plan. *Id.* On this news, Peabody shares fell by $1.06 per share, or 4.8%. *Id.*

Fourth, on August 9, 2019, QMI released a one-page document with its preliminary investigative findings indicating that Peabody had deficient safety systems at North Goonyella and that the Company was not cooperating fully with its investigation. *Id.* at ¶¶ 72-73. On this news, Peabody's stock fell $0.37 per share, or 2 percent. *Id.*

Finally, on October 29, 2019, Peabody disclosed that QMI was placing strict restrictions on restarting operations at the North Goonyella mine and that as a result Peabody was forced to drastically adjust its reentry plan, ultimately announcing a three year or more delay before any meaningful coal could be produced. *Id.* at ¶ 74.

On this news, Peabody's stock fell $3.56, or 22 percent¸ closing at $12.48 on October 29, 2019, down from the previous day's close of $16.04. *Id.* at ¶ 76.

Through the Action, Schultze seeks to recover for itself and absent class members the substantial losses that were suffered as a result of the defendants' fraud.

## ARGUMENT

### I.   SCHULTZE IS ENTITLED TO BE APPOINTED LEAD PLAINTIFF FOR THE CLASS

#### A.   The PSLRA Standard For Appointing Lead Plaintiff

The PSLRA governs the appointment of a lead plaintiff for "each private action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." *See* 15 U.S.C. § 78u-4(a)(l); *see also* 15 U.S.C. § 78u-4(a)(3)(B). It provides that within 20 days of the filing of the action, the plaintiff is required to publish notice in a widely circulated business-oriented publication or wire service, informing class members of their right to move the Court, within 60 days of the publication, for appointment as lead plaintiff. *See Foley v. Transocean Ltd.*, 272 F.R.D. 126, 127 (S.D.N.Y. 2011) (citing 15 U.S.C. § 78u-4(a)(3)(A)).

Under the PSLRA, the Court is then to consider any motion made by class members and is to appoint as lead plaintiff the movant that the Court determines to be "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). Further,

the PSLRA establishes a rebuttable presumption that the "most adequate plaintiff" is the person that:

> (aa) has either filed the complaint or made a motion in response to a notice [published by a complainant]; (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also Levine v. AtriCure, Inc.*, 508 F. Supp. 2d 268, 276-77 (S.D.N.Y. 2007) (same); *Baughman v. Pall Corp.*, 250 F.R.D. 121, 125 (S.D.N.Y. 2008) (describing the PSLRA's process for determining the "most adequate plaintiff"); *In re Tronox, Inc. Sec. Litig.,* 262 F.R.D. 338, 343-44 (S.D.N.Y. 2009) (same).

Once it is determined who among the movants seeking appointment as lead plaintiff is the presumptive lead plaintiff, the presumption can be rebutted only upon proof by a class member that the presumptive lead plaintiff: "(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see also In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 436 (S.D.N.Y. 2008); *Baughman,* 250 F.R.D. at 125.

### B.      Under The PSLRA, Schultze Should be Appointed Lead Plaintiff

As discussed below, Schultze should be appointed Lead Plaintiff because all of the PSLRA's procedural hurdles have been satisfied, Schultze holds the largest financial interest of any movant, and Schultze otherwise satisfies Rule 23's typicality and adequacy requirements.

#### 1.      Schultze Filed a Timely Motion

Pursuant to the PSLRA, the first plaintiff to file a complaint in the action was required to publish notice within twenty (20) days of its filing.  15 U.S.C. § 78u-4(a)(3)(A)(i). Counsel for first-filed plaintiff Oklahoma Firefighters Pension and Retirement System published notice of the lead plaintiff deadline via *Business Wire* on September 28, 2020. *See* Ex. A; *Pirelli Armstrong*

*Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 403 (S.D.N.Y. 2004) ("*Business Wire* is a suitable vehicle for meeting the statutory requirement that notice be published."). Consequently, any member of the proposed Class was required to seek to be appointed lead plaintiff within 60 days after publication of the notice, *i.e.*, on or before November 27, 2020. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i). Thus, Schultze's motion is timely filed.

Additionally, pursuant to Section 21D(a)(2) of the Exchange Act, Schultze timely signed and submitted the requisite certification, identifying all of its relevant Peabody trades during the Class Period, and detailing the Schultze's suitability to serve as Lead Plaintiff in this case. *See* Ex. B.  The PSLRA's procedural requirements have therefore been met**.**

### 2. Schultze Has the Largest Financial Interest in the Relief Sought by the Class

The PSLRA instructs the Court to adopt a rebuttable presumption that the "most adequate plaintiff" for lead plaintiff purposes is the person with the largest financial interest in the relief sought by the class. *See* 15 U.S.C. § 78u-4 (a)(3)(B)(iii)(I)(bb).

Although the PSLRA is silent as to any definitive methodology courts are to use in determining which movant has the largest financial interest in the relief sought, courts in this Circuit have typically looked to the following four factors in the inquiry: (1) the number of shares purchased by the movant during the Class Period; (2) the number of net shares purchased by the movant during the Class Period; (3) the total net funds expended by the movant during the Class Period; and (4) the approximate losses suffered by the movant. *See Fuwei*, 247 F.R.D. at 437; *Topping v. Deloitte Touche Tohmatsu CPA, Ltd.*, 95 F. Supp. 3d 607, 616 (S.D.N.Y. 2015); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998); *Baughman*, 250 F.R.D. at 125; *In re GE Sec. Litig.*, No. 09 Civ. 1951 (DC), 2009 WL 2259502, at *4 (S.D.N.Y. July 29, 2009). Courts have placed the most emphasis on the last of the four factors: the approximate loss

suffered by the movant. *See, e.g.*, *Baughman*, 250 F.R.D. at 125; *In re GE*, 2009 WL 2259502, at *5; *Fuwei*, 247 F.R.D. at 437; *Topping*, 95 F. Supp. 3d at 616.

Overall, during the Class Period, Schultze purchased 57,913 net and 248,476 total Peabody shares, expended $2,860,505,90 in net funds and suffered losses of $2,238,598.59 attributable to the fraud. *See* Ex. B. Schultze is presently unaware of any other movant with a larger financial interest in the outcome of this litigation.

### 3. Schultze Meets Rule 23's Typicality and Adequacy Requirements

The PSLRA also requires that, in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(cc). When assessing a potential lead plaintiff only Rule 23(a)'s typicality and adequacy requirements are relevant. *See, e.g.*, *Pompano Beach Police & Firefighters' Ret. Sys. v. Comtech Telecomms. Corp.*, No. CV 09-3007 (SJF)(AKT), 2010 WL 3909331, at *2 (E.D.N.Y. Sept. 29, 2010); *Fuwei*, 247 F.R.D. at 436; *see also Blackmoss Inv., Inc. v. ACA Capital Holdings, Inc.*, 252 F.R.D. 188, 191 (S.D.N.Y. 2008) ("At this stage of the litigation, the moving plaintiff must only make a preliminary showing that the adequacy and typicality requirements have been met.").

Typicality is established where each class member's claim "arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Blackmoss*, 252 F.R.D. at 191 (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)). "However, a lead plaintiff's claims need not be identical to the claims of the class in order to satisfy the preliminary showing of typicality." *Topping*, 95 F. Supp. 3d at 623; *Fuwei*, 247 F.R.D. at 436.

Schultze's claims are clearly typical of the Class's claims. Schultze purchased Peabody shares during the Class Period, suffered damages as a result of the Company's false and

misleading statements, and therefore can assert the Class's claims against Peabody and certain of its officers under the federal securities laws. Because the factual and legal bases of Schultze's claims are similar to those of the Class's claims, Schultze necessarily satisfies the typicality requirement. *See Quan v. Advanced Battery Techs., Inc.*, No. 11 Civ. 2279 (CM), 2011 WL 4343802, at *3 (S.D.N.Y. Sept. 9, 2011) (finding movant typical where "he suffered losses as a result of [the company's] false and misleading statements during the same period as other movants, plaintiffs, and potential class members, and [] he is alleging violations of the same provisions of the [Exchange Act], against the same defendants as the other parties").

With respect to adequacy, Rule 23(a)(4) requires that the representative party will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequate representation will be found if able and experienced counsel represent the proposed representative, and the proposed representative has no fundamental conflicts of interest with the interests of the class as a whole. *See Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*, 275 F.R.D. 187, 190 (S.D.N.Y. 2011) ("In considering the adequacy of a proposed lead plaintiff, a court must consider: (1) whether the lead plaintiff's claims conflict with those of the class; and (2) whether class counsel is qualified, experienced, and generally able to conduct the litigation."); *In re GE*, 2009 WL 2259502, at *5 (Plaintiff "satisfies the adequacy requirement because its interests are aligned with those of the putative class, and it has retained competent and experienced counsel").

As evidenced by the representations in its certification, *see* Ex. B, Schultze's interests are perfectly aligned with—and by no means antagonistic to—the Class. *See Kokkinis v. Aegean Marine Petroleum Network, Inc.*, No. 11 Civ. 0917(BSJ)(JCF), 2011 WL 2078010, at *2

(S.D.N.Y. May 19, 2011) (movant's certification evidenced adequacy to serve as lead plaintiff); *see also Blackmoss*, 252 F.R.D. at 191 (same).

Schultze has also selected and retained highly competent counsel to litigate the claims on behalf of itself and the Class.  As explained below in Section II, the Faruqi Firm is highly regarded for its experience, knowledge, and ability to conduct complex securities class action litigation.  *See* Ex. C.  Consequently, Schultze is more than adequate to represent the Class and has every incentive to maximize the Class's recovery.

In light of the foregoing, Schultze respectfully submits that it is the presumptive Lead Plaintiff and should be appointed Lead Plaintiff for the Action.

## II.   SCHULTZE'S SELECTION OF THE FARUQI FIRM AS LEAD COUNSEL SHOULD BE APPROVED

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), the Lead Plaintiff is entitled to select and retain Lead Counsel for the Class, subject to the Court's approval. Schultze has selected the Faruqi Firm to be Lead Counsel for the Class. The Faruqi Firm is a minority-owned and woman-owned law firm, and, as reflected in the firm's resume, possesses extensive experience successfully litigating complex class actions on behalf of plaintiffs, including securities class actions. *See* Ex. C; *see also Reitan v. China Mobile Games & Entm't Grp.*, 68 F. Supp. 3d 390, 401 (S.D.N.Y. 2014) (appointing the Faruqi Firm as sole lead counsel and noting: "Faruqi & Faruqi has extensive experience in the area of securities litigation and class actions.  The firm's resume indicates that it has litigated more than ten prominent securities class actions since its founding in 1995. Faruqi & Faruqi achieved successful outcomes in many of these cases."). For example, the Faruqi Firm has previously obtained significant recoveries for injured investors. *See, e.g., Sterrett v. Sonim Techs., Inc*., No. 3:19-cv-06416-MMC (N.D. Cal.) (where, as sole lead counsel, the firm obtained preliminary approval of $2 million settlement); *Larkin v. GoPro,*

*Inc.*, No. 4:16-cv-06654-CW (N.D. Cal. 2019) (where, as sole lead counsel, the firm obtained final approval of $6.75 million settlement); *In re Avalanche Biotechnologies Sec. Litig.*, No. 3:15-cv-03185-JD (N.D. Cal. 2018) (appointed as sole lead counsel in the federal action, and together with lead counsel in a parallel state action, obtained final approval of a $13 million global settlement); *Rihn v. Acadia Pharm., Inc.*, No. 3:15-cv-00575-BTM-DHB (S.D. Cal. 2018) (where, as sole lead counsel, the Faruqi Firm obtained final approval of a $2.925 million settlement); *In re Geron Corp., Sec. Litig.*, No. 3:14-CV-01224-CRB (N.D. Cal. 2017) (where, as sole lead counsel, the Faruqi Firm obtained final approval of a $6.25 million settlement); *In re Dynavax Techs. Corp. Sec. Litig.*, No. 3:13-CV-02796 (CRB) (N.D. Cal. 2016) (where, as sole lead counsel, the Faruqi Firm obtained final approval of a $4.5 million settlement); *McIntyre v. Chelsea Therapeutics Int'l, LTD*, No. 3:12-cv-00213-MOC-DCK (W.D.N.C. 2016) (where, as sole lead counsel, the Faruqi Firm secured the reversal of the district court's dismissal of the action at the Fourth Circuit, *see Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597 (4th Cir. 2015), and obtained final approval of a $5.5 million settlement); *In re L&L Energy, Inc. Sec. Litig.*, No. 1:13-CV-06704 (AJP) (S.D.N.Y. 2015) (where the Faruqi Firm, as co-lead counsel, secured a $3.5 million settlement); *In re Ebix, Inc. Sec. Litig.*, No. 1:11-CV-02400-RWS (N.D. Ga. 2014) (where the Faruqi Firm, as sole lead counsel for the class, secured a $6.5 million settlement); *Shapiro v. Matrixx Initiatives, Inc.*, No. CV-09-1479-PHX-ROS (D. Ariz. 2013) (where the Faruqi Firm, as co-lead counsel for the class, secured a $4.5 million settlement); *In re United Health Grp. Inc. Deriv. Litig.*, No. 27 CV 06-8085 (Minn. 4th Jud. Dist. 2009) (where the Faruqi Firm, as co-lead counsel, obtained a recovery of more than $930 million for the benefit of the Company and negotiated important corporate governance reforms designed to make the nominal defendant corporation a model of responsibility and transparency); *In re Tellium Inc.*

*Sec. Litig.*, No. 3:02-cv-5878-FLW-JJH (D.N.J. 2006) (where the Faruqi Firm, as co-lead

counsel, recovered a $5.5 million settlement); *In re Olsten Corp. Sec. Litig*., No. 0:97-CV-5056-

DRH-ETB (E.D.N.Y. 2001) (where the Faruqi Firm, as co-lead counsel, recovered $24.1 million

for class members); *Ruskin v. TIG Holdings, Inc.*, No. 1:98-cv-01068-LLS (S.D.N.Y. 2002)

(where the Faruqi Firm, as co-lead counsel, recovered $3 million for the class); and *In re

Purchase Pro Inc. Sec. Litig.*, No. 2:01-cv-0483-JLQ-PAL (D. Nev. 2006) (where the Faruqi

Firm, as co-lead counsel for the class, secured a $24.2 million settlement).

The Faruqi Firm is also currently litigating several prominent securities class actions.

*See, e.g., Lowthorp v. Mesa Air Group, Inc.*, No. 2:20-cv-00648-MTL (D. Ariz.) (appointed as

sole lead counsel for the class); *In re Tahoe Res., Inc. Sec. Litig.*, No. 2:17-cv-01868-RFB-NJK

(D. Nev.) (appointed as sole lead counsel for the class); *Liu v. Intercept Pharms. Inc.,* No. 1:17-

cv-07371-LAK (S.D.N.Y.) (appointed as sole lead counsel for the class); *Lehmann v. Ohr

Pharm. Inc.*, No. 1:18-cv-01284-LAP (S.D.N.Y.) (appointed as sole lead counsel for the class);

*In re Synergy Pharm., Inc. Sec. Litig.*, No. 1:18-cv-00873-AMD-VMS (E.D.N.Y.) (appointed as

co-lead counsel for the class); *In re CV Scis., Inc. Sec. Litig.*, No. 2:18-cv-01602-JAD-BNM (D.

Nev.) (appointed as sole lead counsel for the class); *In re Amarin Corp. PLC Sec. Litig.*, No.

3:19-cv-06601-BRM-TJB (D.N.J.) (appointed as co-lead counsel for the class); *Rudani v.

Ideanomics, Inc.*, No. 1:19-cv-06741-GBD (S.D.N.Y.) (appointed as sole lead counsel for the

class).

The Faruqi Firm is a minority-owned and woman-owned[2] law firm, and, as reflected in

the firm's resume, possesses extensive experience successfully litigating complex class actions

---

[2]     *See* Ex. D (certificate from Women's Business Enterprise National Council certifying the
Faruqi Firm as a woman-owned business (renewal pending)).

on behalf of plaintiffs, including securities class actions. The Faruqi Firm has a proven track record of successfully representing its clients in these matters and is nationally recognized for its excellence. Not only does the firm have the experience and expertise necessary to obtain significant successes for its clients, it has a demonstrated commitment to diversity and inclusion that clients and judges increasingly seek from the bar.[3] Class members in securities class actions have diverse backgrounds, and that diversity should be reflected in class counsel. Currently, approximately 40% of the firm's partnership positions are held by women and minorities, and the firm is committed to growing this figure in the coming years. *See* https://www.faruqilaw.com /our-attorneys. The Faruqi Firm is proud to be made up of such a diverse group of legal professionals and strongly believes that its clients are better served because of it.

## CONCLUSION

For the foregoing reasons, Schultze respectfully requests that the Court (1) appoint it as Lead Plaintiff; (2) approve its selection of the Faruqi Firm as Lead Counsel for the putative Class; and (3) grant such other relief as the Court may deem just and proper.

Dated: November 27, 2020                    Respectfully submitted,

                                            **FARUQI & FARUQI, LLP**

                                            By:     */s/ James M. Wilson, Jr.*
                                                    James M. Wilson, Jr.

                                            James M. Wilson, Jr.
                                            Robert W. Killorin (*pro hac vice*
                                            forthcoming)
                                            **FARUQI & FARUQI, LLP**

---

[3]      *See* Anne Cullen, More Judges Are Demanding Diversity Among Class Counsel, Law360 (July 16, 2020), https://www.law360.com/articles/1292926/more-judges-are-demanding-diversity-among-class-counsel; Ralph Chapoco, Calls for Lawyer Diversity Spread to Complex Class Litigation, Bloomberg Law (July 30, 2020), https://www.bloomberglaw.com/document/ XA1TPNEG000000?bna_news_filter=social-justice&jcsearch=BNA.

685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email:   jwilson@faruqilaw.com
        rkillorin@faruqilaw.com

*Attorneys for [Proposed] Lead Plaintiff and*
*[Proposed] Lead Counsel for the putative*
*Class*