**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| |
|---|
| IN RE PEABODY ENERGY CORP. SECURITIES LITIGATION |

No. 20-cv-08024-PKC

**REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'**
**CONSOLIDATED AMENDED COMPLAINT**

CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

*Attorneys for Defendants Peabody Energy*
*Corp., Glenn L. Kellow and Amy B.*
*Schwetz*

August 23, 2021

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................... ii

PRELIMINARY STATEMENT ...........................................................................1

ARGUMENT.........................................................................................................2

I.    THE COMPLAINT FAILS TO PLEAD SCIENTER......................................2

    A.    Plaintiffs Do Not Identify Contradictory Information Available to Any Defendant. ............................................................................................2

    B.    Plaintiffs' "Additional" Evidence of Scienter Is Insufficient. .....................5

    C.    Plaintiffs' Purported Expert Cannot Opine on Scienter..............................6

II.   THE PRE-FIRE STATEMENTS ARE TIME-BARRED.................................7

III.  THE COMPLAINT FAILS TO PLEAD ANY ACTIONABLE MISSTATEMENT OR OMISSION. ........................................................................8

    A.    Plaintiffs Intentionally Omit Documents Showing Statements About the Evolving Combustion Event in Late September 2018 Were Not False. ..........................................................................................8

    B.    Projections About Re-Opening the Mine After the Fire Are Forward-Looking, Opinion Statements. ........................................................9

CONCLUSION .................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Campo v. Sears Holdings Corp.*,
371 F. App'x 212 (2d Cir. 2010) ..................................................................................4

*Das v. Rio Tinto PLC*,
332 F. Supp. 3d 786 (S.D.N.Y. 2018).........................................................................6

*Foley v. Transocean Ltd.*,
861 F. Supp. 2d 197 (S.D.N.Y. 2012).........................................................................5

*Freudenberg v. E\*Trade Financial Corporation*,
712 F. Supp. 2d 171 (S.D.N.Y. 2010).....................................................................3, 8

*Hou Liu v. Intercept Pharmaceuticals, Inc.*,
No. 17-cv-7371, 2020 WL 1489831 (S.D.N.Y. Mar. 26, 2020)...................................9

*In re Abercrombie & Fitch Co. Securities Litigation*,
No. M21-83, 2003 WL 22705131 (S.D.N.Y. Nov. 17, 2003) ......................................9

*In re Barrick Gold Corp. Sec. Litig.*,
341 F. Supp. 3d 358 (S.D.N.Y. 2018).........................................................................9

*In re Gen. Elec. Sec. Litig.*,
844 F. App'x 385 (2d Cir. 2021) ................................................................................2

*In re Lululemon Sec. Litig.*,
14 F. Supp. 3d 553 (S.D.N.Y. 2014)...........................................................................5

*In re M/V MSC Flaminia*,
No. 12-cv-8892, 2017 WL 3208598 (S.D.N.Y. July 28, 2017)...................................6

*In re Sanofi Sec. Litig.*,
87 F. Supp. 3d 510 (S.D.N.Y. 2015)...........................................................................7

*In re Tarragon Corp. Sec. Litig.*,
No. 07-cv-7972, 2009 WL 10732259 (S.D.N.Y. Mar. 27, 2009)................................4

*Jackson v. Abernathy*,
960 F.3d 94 (2d Cir. 2020)..........................................................................................5

*Lefkowitz v. Synacor, Inc.*,
No. 18 CIV. 2979, 2019 WL 4053956 (S.D.N.Y. Aug. 28, 2019) ...............................9

*Long Miao v. Fanhua, Inc.*,
   442 F. Supp. 3d 774 (S.D.N.Y. 2020) ...................................................................6

*Manavazian v. ATEC Grp., Inc.*,
   160 F. Supp. 2d 468 (E.D.N.Y. 2001) .................................................................8

*Ong v. Chipotle Mexican Grill, Inc.*,
   294 F. Supp. 3d 199 (S.D.N.Y. 2018)..................................................................6

*Roth v. OfficeMax, Inc.*,
   527 F. Supp. 2d 791 (N.D. Ill. 2007) ..................................................................7

*S. Cherry St., LLC v. Hennessee Grp. LLC*,
   573 F.3d 98 (2d Cir. 2009)..................................................................................2

*Sfiraiala v. Deutsche Bank Aktiengesellschaft*,
   729 F. App'x 55 (2d Cir. 2018) ..........................................................................2

*Silvercreek Mgmt. v. Citigroup, Inc.*,
   248 F. Supp. 3d 428 (S.D.N.Y. 2017)..................................................................5

*Slayton v. Am. Express Co.*,
   604 F.3d 758 (2d Cir. 2010)................................................................................9

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007).............................................................................................2

*Tung v. Bristol-Myers Squibb Co.*,
   No. 18-cv-01611, 2020 WL 5849220 (S.D.N.Y. Sept. 30, 2020) ......................6

*Tyler v. Liz Claiborne, Inc.*,
   814 F. Supp. 2d 323 (S.D.N.Y. 2011)..................................................................5

*Wright v. Ernst & Young LLP*,
   152 F.3d 169 (2d Cir. 1998)................................................................................6

**Statutes & Rules**

Individual Practices of Judge P. Kevin Castel, Rule 3.A.iv (Feb. 3, 2020).......................10

iii

## **PRELIMINARY STATEMENT**

Like their Complaint,[1] Plaintiffs' Opposition (ECF 45, "Opp.") offers an implausible theory of fraud rooted in deficient allegations. *First*, Plaintiffs fail to plead scienter because they do not allege that *any* Defendant had *any* information that contradicted their public statements. Instead, Plaintiffs rely on vague allegations that Defendants attended "frequent meetings" and received "papers" and "reports," without identifying any contradictory information contained therein. Plaintiffs similarly point to statements from Confidential Witnesses ("CWs") about staffing issues and technical decisions made onsite at the mine, but fail to connect any of these issues to Defendants and fail to explain how these facts (even taken as true) contradict any public statement (they do not). The result is an absence of intent, motive or recklessness by anyone to commit fraud.

*Second*, Plaintiffs barely respond to Defendants' argument that statements made before September 28, 2018, are time-barred. Plaintiffs parrot the legal standard, but then ignore the substantial information available prior to September 28—including Defendants' September 27, 2018 statement that there was a "likely fire" in the already-evacuated mine. Nor do Plaintiffs attempt to explain what was disclosed later that supposedly revealed any fraud.

*Third*, Plaintiffs have not pleaded falsity for a single alleged misstatement. Plaintiffs do not defend the Complaint's improper attempt to plead fraud based on inactionable puffery, forward-looking statements and opinions, instead arguing that these statements are false due to Defendants' supposed knowledge of contradictory information (which, again, they have entirely failed to plead). Moreover, Plaintiffs continue to cherry-pick portions of the statements, omitting language that defeats falsity. The Complaint should be dismissed.

---

[1] Capitalized terms have the same definitions set forth in Defendants' Memorandum of Law in Support of Their Motion To Dismiss the Consolidated Amended Complaint (ECF 48, "MTD").

## ARGUMENT

### I.   THE COMPLAINT FAILS TO PLEAD SCIENTER.

Plaintiffs downplay their burden by arguing that scienter "need not be irrefutable," they need not present a "smoking-gun," and a "tie . . . goes to the plaintiff."  (Opp. at 19.)  But as Plaintiffs well know, they must plead "facts that give rise to a 'strong'—*i.e.*, a powerful or cogent—inference" of scienter with respect to *each defendant individually*.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 310 (2007).  Indeed, the Second Circuit has repeatedly observed that the PSLRA imposes a "stringent rule for inferences involving scienter," *Sfiraiala v. Deutsche Bank Aktiengesellschaft*, 729 F. App'x 55, 57 (2d Cir. 2018), to "capture the stricter demand Congress sought to convey," *S. Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 110-11 (2d Cir. 2009).  In any event, there is no "tie" here.  Plaintiffs rely on a theory of recklessness to plead scienter, for which they must show "highly unreasonable" conduct approximating "actual intent" by identifying specific contradictory information that was available to—and intentionally ignored by—Defendants at the time they made their statements.  *In re Gen. Elec. Sec. Litig.*, 844 F. App'x 385, 388 (2d Cir. 2021).  But Plaintiffs fail to point to a single instance where any Defendant received information that contradicted their public statements.  Instead, Plaintiffs vaguely reference meetings and reports; assert (without facts) that Defendants would have received that information; and fail to plead that the information contradicted the public statements.  That does not create any (much less a strong) inference for any Defendant, and the Court should dismiss the Complaint in full for failure to plead scienter.

### A.   Plaintiffs Do Not Identify Contradictory Information Available to Any Defendant.

*First*, Plaintiffs argue they adequately plead scienter because "the CWs assert that Defendants attended frequent meetings where highly relevant information was discussed."  (Opp. at 21; *see also id.* at 5 (Defendants "were part of a 'North Goonyella Task Force'" that held

2

"regular meetings" and was "in daily contact with Peabody Australia.").)  The problem for

Plaintiffs is that they do not point to a single piece of contradictory information discussed at any

of these meetings, without which these allegations describe nothing more than a diligent

management team working around the clock to address a pressing situation.  The cases cited by

Plaintiffs only highlight this deficiency.  For example, in *Freudenberg v. E\*Trade Financial*

*Corporation*, a case about the subprime mortgage crisis, the court held scienter was sufficiently

pleaded where (i) 16 CWs detailed personal meetings with individual defendants where they told

those defendants about "the high risk nature of the loans" and where individual defendants

"admitted that E\*TRADE was experiencing and expected more losses," and (ii) the CWs

reported "insufficiently hedged mortgage portfolios *directly to [an individual defendant]*, who

refused to reduce the risk."  712 F. Supp. 2d 171, 198 (S.D.N.Y. 2010) (emphasis added).

Indeed, the court in that case expressly distinguished cases like this one where "the complaint[]

d[oes] not identify any conversation where information was provided to Defendants that was

contrary to public statements" and where the CWs "claim[] no contact with Defendants."  *Id.*

*Second*, Plaintiffs claim the Complaint adequately pleads scienter because CWs

"confirm that Defendants received models and reports, such as 'every piece of paper generated

by the QMI in Australia.'"  (Opp. at 21-22.)  The same problem remains:  without also pleading

that the contents of these reports contradicted Defendants' public statements, these allegations

cannot show fraudulent intent.  In fact, a review of the reports cited by Plaintiffs shows that

Defendants' statements reflect *exactly* the information received from QMI.  (*See* MTD at 21-22;

Ex. GG (ECF 47-33 at 8) (fire reported by QMI same day Peabody disclosed smoke and a "likely

fire").)  Remarkably, Plaintiffs are silent on this evidence, fail to even address it in their

Opposition, and intentionally omit it from the Complaint.  This in itself weighs heavily against

an inference of scienter. *See In re Tarragon Corp. Sec. Litig.*, No. 07-cv-7972 (PKC), 2009 WL 10732259, at *9 (S.D.N.Y. Mar. 27, 2009) ("If a complaint contains ambiguities or omissions, those weigh against inferring scienter.").

*Third*, Plaintiffs claim the Complaint adequately pleads scienter because the CWs allege "there was 'no shortage of people looking at the models' that forecasted the NGM's reopening . . . much later than the timelines presented to the market." (Opp. at 21; Compl. ¶¶ 173, 185-86.)[2]  Even accepting that the models contradicted estimated timelines presented by Defendants, Plaintiffs do not plead that any Individual Defendant was among the "people looking at the models," nor that anyone presented the models or forecasts to them. *See Campo v. Sears Holdings Corp.*, 371 F. App'x 212, 217 (2d Cir. 2010) (no inference of scienter where CWs alleged individual defendants "could obtain access to" conflicting information, but "had no knowledge of whether [individual defendants] actually accessed or reviewed the reports").

*Finally*, Plaintiffs allege the Complaint pleads scienter because Peabody "cut corners on safety through improper staffing at the NGM," which was "relayed to management" through safety audits in 2016 and 2017.  (Opp. at 21; Compl. ¶¶ 87-88.)  As an initial matter, even taking those allegations as true, the fact that an employee raised with "management" what the employee believed to be improper staffing at NGM a year before the fire does not contradict any public statement that the Company was focused on safety.[3]  And once again, crucially,

---

[2] We previously noted that CW-1's claim that the "initial estimates to reopen the mine were '12-15 months'" aligns with Defendants' statements.  (*See* MTD at 14 n.5.)  Plaintiffs now focus on the fact that CW-1 also alleged that forecast "was later revised to 18 months" in late October 2018 before he left the mine, meaning NGM would not be operational "before May 2020."  (Compl. ¶ 186; Opp. at 22 n.17.)  But even this is not inconsistent with Defendants' statements that "production would be targeted" either for the second half of 2019 or extending into 2020, or a "base case" targeting production in early 2020 (Compl. ¶¶ 295, 305), especially given that "Peabody's forecasting team was re-forecasting every 1-2 weeks" (*id.* ¶ 196).  In any event, as described herein, Plaintiffs do not allege that any Defendant actually reviewed this purported October 2018 forecast.

[3] Allegations that "management"—without identifying a specific individual—received information do not satisfy Plaintiffs' burden under the PSLRA.  *See infra* note 7.

4

Plaintiffs do not plead that either Mr. Kellow or Ms. Schwetz conducted or reviewed these audits, nor that these specific staffing concerns were relayed to either one of them.  Courts in this circuit routinely find allegations such as these insufficient to establish a strong inference of scienter.  *See Foley v. Transocean Ltd.*, 861 F. Supp. 2d 197, 213 (S.D.N.Y. 2012) (allegation that defendant had access to database of safety reports insufficient without pleading reports contradicted public statements or that defendant was aware of reports); *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 581 (S.D.N.Y. 2014) (CW allegations of "quality issues" insufficient because "they do not establish what specific contradictory information the makers of the statements had"), *aff'd*, 604 F. App'x 62 (2d Cir. 2015).[4]

B.    Plaintiffs' "Additional" Evidence of Scienter Is Insufficient.

Plaintiffs point to various supplemental facts they claim support scienter, including that NGM was so important to Peabody that Defendants *must have* known their public statements were false.  (Opp. at 22-23.)  Plaintiffs assert that the "core operations" doctrine can "buttress" or "enhance" scienter allegations, but ignore that the doctrine can only "bolster[] the strength of the inference of scienter *when plaintiff has already adequately alleged facts indicating that defendants might have known their statements were false*."  *Tyler v. Liz Claiborne, Inc.*, 814 F. Supp. 2d 323, 343 (S.D.N.Y. 2011) (emphasis added).  Where, as here, Plaintiffs have "not successfully offered an independently sufficient means to plead scienter,

---

[4] In attempting to distinguish *Jackson v. Abernathy*, 960 F.3d 94 (2d Cir. 2020), Plaintiffs argue the Complaint "pleads scienter on the part of the very individuals in senior management positions who knew about the true safety deficiencies . . . ."  (Opp. at 22.)  To the extent Plaintiffs are arguing they have pleaded corporate scienter through the Individual Defendants, they have failed for the reasons described herein.  To the extent Plaintiffs seek to plead corporate scienter by alleging that various issues were raised to *management* (*see, e.g.*, *id.* at 4 (CWs raised safety issues to management); *id.* at 11 (arguing courts attribute the scienter of management-level employees to corporate defendants); *id.* at 21 (forecasting was "handled by mine management")), this fails for the very reasons set forth in *Jackson*—namely, that Plaintiffs have not alleged that "management" acted with scienter, and it is "insufficient to 'separately allege misstatements by some individuals and knowledge belonging to some others where there is no strong inference that, in fact, there was a connection between the two.'"  960 F.3d at 99 (quoting *Silvercreek Mgmt. v. Citigroup, Inc.*, 248 F. Supp. 3d 428, 440 (S.D.N.Y. 2017)).

[their] core operations argument must fail." *Das v. Rio Tinto PLC*, 332 F. Supp. 3d 786, 817 (S.D.N.Y. 2018). Plaintiffs' next argument—that the frequency of Defendants' statements about NGM supports scienter because "Defendants knew the financial significance of the NGM to the Company's overall revenues"—is just the "core operations" doctrine repackaged, and fails for the same reason. (Opp. at 23.) Finally, Plaintiffs argue NGM's publicly-known "history of spontaneous combustion and heating events" since 2004 shows that Defendants must have known their statements were false. (*Id.* at 24; Compl. ¶¶ 359-62.) But all this shows is that mine fires were a known, disclosed risk of which investors were well aware, and is yet another insufficient basis on which to infer scienter without first pleading knowledge: even if the Court accepts these arguments, they are merely "a few facts that would be the proverbial 'cherry-on-top' had there been an adequate pleading of scienter, but [Plaintiffs have] failed to allege the sundae." *Long Miao v. Fanhua, Inc.*, 442 F. Supp. 3d 774, 808 (S.D.N.Y. 2020) (PKC).

## C.    Plaintiffs' Purported Expert Cannot Opine on Scienter.

In offering their anonymous expert as "support" for scienter, Plaintiffs' Opposition describes *precisely* what an expert *cannot* do: review information with the benefit of perfect hindsight, "advance[]" a new "timeline," then opine on what "Defendants" could have "reasonably believed" about reopening the mine.[5] (Opp. at 24.) *First*, an expert's "opinions cannot substitute for facts under the [PSLRA]." *Tung v. Bristol-Myers Squibb Co.*, No. 18-cv-01611, 2020 WL 5849220, at *5 (S.D.N.Y. Sept. 30, 2020) (citation omitted). Plaintiffs' expert's "timeline" is irrelevant, and is "not a permissible way for [P]laintiffs to get around the

---

[5] The Complaint is silent on what, if anything, Plaintiffs' expert did to reach these opinions. Plaintiffs now claim in their Opposition that the expert "analyzed the information pled," including "reports and models" that are now publicly available. (Opp. at 24.) But Plaintiffs are "not entitled to amend [their] [C]omplaint through statements made in motion papers," *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998), nor can Plaintiffs use a purported expert to parrot the allegations in their Complaint, particularly without disclosing any qualifications or methodology, *see In re M/V MSC Flaminia*, No. 12-cv-8892, 2017 WL 3208598, at *2, *4 (S.D.N.Y. July 28, 2017); *Ong v. Chipotle Mexican Grill, Inc.*, 294 F. Supp. 3d 199, 224 (S.D.N.Y. 2018).

PSLRA requirement that they allege specific facts demonstrating scienter." *Roth v. OfficeMax, Inc.*, 527 F. Supp. 2d 791, 801 (N.D. Ill. 2007). *Second*, the Court cannot rely on an unnamed expert's opinion about whether Defendants "should have been aware" of information that contradicted their public statements. *Id.* Plaintiffs admit their expert looked at the facts alleged in the Complaint and then opined on the "feasibility of Peabody's reopening timeline" to determine if it was "reasonabl[e]" that Defendants believed their statements. (Opp. at 24.) But "[i]t is not sufficient for these purposes to allege that an opinion was unreasonable. . . . The Second Circuit has firmly rejected this 'fraud by hindsight' approach." *In re Sanofi Sec. Litig.*, 87 F. Supp. 3d 510, 528 (S.D.N.Y. 2015), *aff'd sub nom. Tongue v. Sanofi*, 816 F.3d 199 (2d Cir. 2016) (citations omitted).

## II.    THE PRE-FIRE STATEMENTS ARE TIME-BARRED.

Plaintiffs ignore the reason why their claims for statements made prior to September 28, 2018, are time-barred. As Defendants have explained, to the extent Plaintiffs contend the confirmation of a fire at NGM revealed the purported fraud regarding safety issues, so too would earlier disclosed information, like that elevated gas levels had caused an evacuation of NGM or that there was smoke and a likely fire in the mine. (MTD at 18.) Having no answer to these disclosures made more than two years before filing suit, Plaintiffs merely state that the statute of limitations begins to run when "a reasonably diligent plaintiff would have discovered [] the facts constituting scienter." (Opp. at 8.) But Plaintiffs do not (and cannot) explain how the revelation on September 28, 2018, provided new "facts constituting scienter" that were not available before that date, in particular in the face of Peabody's statement on September 27, 2018, that smoke "indicate[ed] a likely fire in a portion of the mine," which Plaintiffs do not even address. (MTD at 18.) Plaintiffs' pre-fire claims are time-barred and should be dismissed.

7

### III.    THE COMPLAINT FAILS TO PLEAD ANY ACTIONABLE MISSTATEMENT OR OMISSION.

Plaintiffs also fail to substantiate the falsity of any alleged misstatement. Plaintiffs' core argument appears to be that otherwise inactionable statements of puffery, opinions and forward-looking statements are somehow actionable here because they were made with knowledge of contrary information.  (*See* Opp. at 9 (pre-fire statements not puffery because "Defendants made these statements . . . while aware that the contrary was true"); *id.* at 13 ("[t]he statements issued by Defendants in September 2018 are false and misleading because of contrary concrete facts known by Defendants"); *id.* at 16 (forward-looking, post-fire statements are actionable because "these statements were known to be false and misleading when made")).) These arguments fail because, as set forth above, the Complaint fails to allege that any Defendant—not Mr. Kellow, not Ms. Schwetz, not any individual whose knowledge can be imputed to Peabody—had contemporaneous knowledge contradicting their public statements.[6]

### A.    Plaintiffs Intentionally Omit Documents Showing Statements About the Evolving Combustion Event in Late September 2018 Were Not False.

Even in the face of evidence directly refuting their allegations (MTD at 21-22), Plaintiffs maintain that Defendants "downplayed the true situation at the NGM" in September 2018 because Defendants knew a fire was occurring earlier than they disclosed (Opp. at 11-12). Plaintiffs ignore that the Mine Record Entry reports they cite report a fire for the first time on September 27, 2018 (Ex. GG (ECF 47-33 at 8))—*the very same day* Peabody disclosed that it had "observed smoke coming from the mine indicating a likely fire" (Compl. ¶ 276).  Rather than confront this evidence, Plaintiffs continue to raise obscure and non-sensical examples of

---

[6] Plaintiffs' cited cases similarly hinge on Defendants' knowledge of contradictory information and do not save their claims for the same reasons.  *See Manavazian v. ATEC Grp., Inc.*, 160 F. Supp. 2d 468, 481 (E.D.N.Y. 2001) (statements not puffery if defendants "were aware that an 'adverse business trend' rendered those statements misleading"); *E*Trade*, 712 F. Supp. 2d at 192 (mismanagement actionable only when statements are "wholly inconsistent with known existing mismanagement").

supposed contemporaneous falsity.[7]  For example, Plaintiffs argue that it was fraud when, "on

September 19, 2018, Defendants affirmatively disclosed that Peabody was not revising its sales

targets for 2018" because at the time "Defendants did not know where the fire was coming from,

let alone how to contain it."  (Opp. at 12.)  But Plaintiffs do not plead that there was a fire on

September 19, nor that Peabody missed its sales targets for 2018 or that there was any reason to

believe they would fall short.  These alleged misstatements should thus be dismissed.

      B.      <u>Projections About Re-Opening the Mine After the Fire Are Forward-Looking,<br>Opinion Statements.</u>

Plaintiffs argue that Peabody's statements about plans to reopen NGM are "not

forward-looking at all," but in doing so highlight the very words and phrases—"intends," "has

targeted," and "expects"—that render each statement forward-looking.  (Opp. at 14-15.)

Plaintiffs fail to cite any authority to support their claim that this language signals a "present-

tense assertion" of fact (*id.* at 15), and ignore the numerous cases holding that this precise

language makes a statement forward-looking.  *See, e.g.*, *In re Barrick Gold Corp. Sec. Litig.*, 341

F. Supp. 3d 358, 375 (S.D.N.Y. 2018) ("[W]ords such as 'expect' identify forward-looking

statements." (quoting *Slayton v. Am. Express Co.*, 604 F.3d 758, 769 (2d Cir. 2010)));

*Lefkowitz v. Synacor, Inc.*, No. 18 CIV. 2979, 2019 WL 4053956, at *9 (S.D.N.Y. Aug. 28,

2019) (statements that company was "on track to deliver on [the] target of $300 million in

revenue," and "[w]e expect accelerated revenue growth" are forward-looking), *aff'd sub*

---

[7] Plaintiffs also misrepresent the court's opinion in *Hou Liu v. Intercept Pharmaceuticals, Inc.*, No. 17-cv-7371, 2020 WL 1489831 (S.D.N.Y. Mar. 26, 2020), to argue the September 4, 2018 statement in an analyst report is actionable because it was attributed to *senior* management, not just "management."  (Opp. at 11.)  But the court in *Hou Liu* rejected a statement in a report that did "not identify the speakers and attribute[d] the comments only to 'management'" because plaintiffs did not "allege which members of Intercept's management were present at the time the statements were made."  2020 WL 1489831, at *6.  And in *In re Abercrombie & Fitch Co. Securities Litigation*, No. M21-83, 2003 WL 22705131 (S.D.N.Y. Nov. 17, 2003), the court attributed statements in an analyst report to individual defendants because the complaint "describe[d] in some detail the nature of A&F management as being small and tightly knit," and alleged specific details of communications by those individuals to analysts.  *Id.* at *4.  There are no such allegations here.

*nom. Shreiber v. Synacor, Inc*, 832 F. App'x 54 (2d Cir. 2020).  Similarly, Plaintiffs' assertion that statements about Peabody's "base case" projection are actionable misrepresentations is wrong:  by definition, a "base case" is a forward-looking opinion offering the Company's current projection of *one potential* future scenario, which the market understood.  (*See* Ex. AA (ECF 47-27 at 13) (analyst asking at earnings call, "you speak of the plan as being the base case . . . are there other cases which could perhaps get your mining earlier?").)

Plaintiffs also argue the forward-looking statements are actionable because Defendants failed to provide adequate risk disclosures (Opp. at 15-16), but ignore Defendants' particularized cautionary statements regarding the reopening of NGM, including that it was "too early" to assess the "financial effects" of the fire, the "timing of next steps" or when production could resume, that mine re-entry was subject to ongoing "assessments at each stage," and that Peabody was suspending guidance completely given the uncertainty.  (*See, e.g.*, Ex. A (ECF 47-01) at Stmts. 31, 36-37, 43-44, 47-50, 53, 58-59; MTD at 23-24.)  These detailed disclosures are not "mere boilerplate" and are more than sufficient to qualify for the PSLRA's safe harbor.

Plaintiffs' final attempt to save these statements by quoting selective portions and highlighting purported omitted "facts" is unavailing:  Plaintiffs have failed to plead the existence of the various omitted "facts" (Opp. at 13),[8] let alone that Defendants had knowledge thereof.

## CONCLUSION

For the foregoing reasons, Defendants respectfully move for this Court to dismiss the Complaint in its entirety and without leave to amend.[9]

---

[8] Plaintiffs cannot put forward allegations that demonstrate the uncertainty of their own "facts," then demand that Defendants should have disclosed them. (*See, e.g.*, Compl. ¶ 186 ("no one knew at the time exactly when the mine was going to re-open"); ¶ 188 (highlighting the decreasing reliability of forecasting).)

[9] Plaintiffs did not seek to amend their Complaint when faced with these same arguments in Defendants' Pre-Motion Letter. (ECF 39.)  This weighs against granting leave to amend now.  *See* Individual Practices of Judge P. Kevin Castel, Rule 3.A.iv (Feb. 3, 2020).

10

Date:  August 23, 2021

Respectfully submitted,

CRAVATH, SWAINE & MOORE LLP,

by

_____
                /s/ Karin A. DeMasi
                Karin A. DeMasi
                Carolyn Young

Worldwide Plaza
   825 Eighth Avenue
      New York, NY 10019
         (212) 474-1000
            kdemasi@cravath.com
            cyoung@cravath.com

*Attorneys for Defendants Peabody Energy Corporation, Glenn L. Kellow and Amy B. Schwetz*