**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

<table>
<tr><td>IN RE PEABODY ENERGY CORP.<br>SECURITIES LITIGATION</td><td>No. 1:20-cv-08024-PKC</td></tr>
</table>

## [PROPOSED] ORDER REGARDING THE PROTOCOL FOR PRODUCTION OF ELECTRONICALLY STORED INFORMATION AND HARD-COPY DOCUMENTS

IT IS HEREBY STIPULATED AND AGREED, by and among Lead Plaintiff Oregon Public Employees Retirement Fund ("Lead Plaintiff"), and Defendants Peabody Energy Corporation ("Peabody"), Glenn L. Kellow ("Kellow") and Amy B. Schwetz ("Schwetz") (collectively, "Defendants"), each of whom individually is referred to as a "Party," and collectively, the "Parties," that this protocol (the "Protocol") governs the search, processing and production of Electronically Stored Information ("ESI") and Hard-Copy Documents during the pendency of this litigation.

The Parties preserve their attorney-client privileges and other privileges, all of which are preserved and protected to the fullest extent provided by law, and there is no intent by this ESI protocol or the production of documents pursuant to this ESI Protocol, to in any way waive or weaken these privileges. Documents produced hereunder are fully protected and covered by any protective order entered by this Court and orders of the Court effectuating the same. The Parties do not waive any objections to the discoverability, admissibility, or confidentiality of documents or ESI. Nothing in this Order shall be interpreted to supersede the provisions of any protective order governing confidentiality and/or privilege entered by the Court in this litigation, unless expressly provided for in such an order. The Parties shall comply with this ESI Protocol to the

extent reasonably feasible. A Party is not required to comply with any aspect of this Protocol that is unreasonable or infeasible provided that it informs the other Parties in writing at or before the time of production as to why compliance with the Protocol is unreasonable or infeasible. In such instance, the Parties will meet and confer in good faith on reasonably feasible alternatives.

Nothing in this Order is intended to limit the Parties' obligations under the Federal Rules of Civil Procedure and Local Rules. To the extent any disputes arise related to the production of ESI, and those disputes are not addressed by any of the agreements made herein, they shall be resolved according to the Federal Rules of Civil Procedure, this Court's Local and Individual Rules, and other applicable orders, laws, and rules (the "Applicable Rules").

## 1. DEFINITIONS

1.1. "Requesting Party" means and refers to the Party that serves a request for the production of Documents.

1.2. "Producing Party" means and refers to the Party upon whom a request for the production of Documents is served.

1.3. "Document" or "Documents" means any writing however recorded, including handwriting, typewriting, printing, photographing, photocopying, transmitting by electronic mail or facsimile and every other means of recording upon any tangible thing, any form of communication or representation, including letters, words, pictures, sounds or symbols or combinations thereof, and any record created thereby, regardless of the manner in which the record has been stored, and also specifically includes Electronically Stored Information and Hard-Copy Documents.

1.4. "Electronically Stored Information" or "ESI" means any Document or Documents stored or transmitted in electronic form.

1.5. "Hard-Copy Document" means any Document existing in paper form at the time of collection.

1.6. "Native Format" means and refers to the format of ESI in which it was generated and/or as used by the Producing Party in the usual course of its business and in its regularly conducted activities. For example, the Native Format of an Excel workbook is a .xls or .xslx file.

1.7. "Metadata" means the information associated with each Document that is identified in Attachment A.

1.8. "Optical Character Recognition" or "OCR" means the process of recognizing, and creating a file containing, visible text within an image.

1.9. "Hash Value" is a unique numerical identifier that can be assigned to a file, a group of files or a portion of a file, based on a standard mathematical algorithm applied to the characteristics of the text contained within the file or files.

1.10. "Confidentiality Designation" means the "Confidential" legend affixed to Documents, as defined by, and subject to, the terms of the Protective Order entered in this matter.

1.11. "Searchable Text" means the text extracted or generated using OCR from any Document that allows the Document to be electronically searched.

1.12. "Load Files" means electronic files provided with a production set of Documents and images used to load that production set into a Requesting Party's Document review platform.

1.13. "Include" and "Including" shall be construed to mean "include but not be limited to" and "including, but not limited to".

1.14. "All" and "each" shall both be construed as all and as each.

**2.      IDENTIFICATION OF RESPONSIVE DOCUMENTS**

2.1.      The Producing Party may apply electronic searches in order to identify potentially responsive ESI.  The Parties shall meet and confer in an effort to conduct discovery in the most efficient and effective manner.  Specifically, the Parties will attempt in good faith to come to an agreement on search and culling methods used to identify responsive information.  The Parties will meet and confer regarding any proposed limitations on the scope of discovery, including custodians, custodial and non-custodial sources, date ranges, file types, or any additional proposed method to cull Documents for review (*e.g.*, search terms, technology-assisted-review, predictive coding).  The parties agree that the grounds for objections should be supported by specific information.  The Parties will not seek Court intervention without first attempting to resolve any disagreements in good faith, based upon all reasonably available information.  If the Parties fail to reach agreement as to the search protocol, either Party may, but is not required to, bring the dispute to the Court for resolution pursuant to the Applicable Rules.

2.2.      The fact that the Parties agree to a search protocol shall not preclude a Producing Party from reviewing potentially responsive ESI that is returned by the search protocol in order to make final determinations as to the responsiveness of the ESI and the privilege and other protections applicable to the ESI.

2.3.      <u>Sources</u>.  The Parties will promptly disclose and discuss the custodial and non-custodial data sources likely to contain responsive information.  The Parties will identify and describe any relevant electronic systems and storage locations.  The Parties will identify and describe sources likely to contain responsive information that a Party asserts should not be searched or are not reasonably accessible because of undue burden or cost and will explain the reasons for such assertions.  The Parties retain the right, upon reviewing the initial production of

Documents, and conducting other investigation and discovery, to request that files from additional custodial or non-custodial sources be searched and to meet and confer regarding such requests.

The Parties will provide a description of any potentially relevant data sources that the Party is aware of having been lost or destroyed, and the circumstances of such loss or destruction.

2.4.　Identification of Custodians.　The Parties shall promptly identify all persons whose files are likely to contain Documents and ESI relating to the subject matter of this litigation.　This will include a description of the proposed custodians' job title, brief description of such person's responsibilities (including dates of employment by the applicable party).　The Parties retain the right, upon reviewing the initial production of Documents, and conducting other investigation and discovery, to request that files from additional custodians be searched and to meet and confer regarding such requests.

2.5.　Easily Targeted Responsive Documents.　Discoverable documents that are identified or reasonably can be identified without the use of an electronic search shall be produced without the use of search terms or other agreed-upon advanced search methodology. Where potentially responsive ESI shall be searched through the use of search terms, the Parties agree to follow the process identified below and the Parties shall meet and confer regarding any proposed deviation.

2.6.　Search Terms.　Where the Parties agree that potentially responsive ESI shall be searched through the use of search terms, the Parties shall use the process identified below and shall meet and confer regarding any proposed deviation.　The Producing Party shall provide a list of proposed search terms, which shall contain all search terms that it believes would lead to the identification of relevant Documents, and the Parties agree to meet and confer regarding any additional search terms or proposed modifications.　To the extent appropriate, search terms will be

crafted with input from the custodians in order to identify appropriate nomenclature, code words, etc. The Parties acknowledge that the development of a search methodology, and the identification of custodians and search terms in particular, is an iterative process that may be modified as discovery progresses. If during discovery, sources, custodians, or search terms, which were not contemplated initially, are uncovered, the Parties shall meet and confer in an effort to target unique and relevant data. If disputed terms still exist at the end of the meet and confer process, the Parties may submit those terms to the Court pursuant to the Applicable Rules.

2.7. <u>Technology-Assisted Review</u>. No party shall use predictive coding/technology-assisted-review for the purpose of culling the Documents to be reviewed or produced without notifying the opposing party prior to use and with ample time to meet and confer in good faith regarding a mutually agreeable protocol for the use of such technologies.

**3. PROCESSING SPECIFICATIONS FOR HARD-COPY DOCUMENTS**

3.1. <u>General</u>. To the extent the Parties agree on the production of any Hard-Copy Documents, such Hard-Copy Documents will be scanned as single-page TIFF images as they are kept in the ordinary course of business with an .opt image cross-reference file and a delimited database load file (*i.e.*, .dat). The Documents should be logically unitized (*i.e.*, distinct Documents shall not be merged into a single record, and single Documents shall not be split into multiple records). The Producing Party will treat pages that are stapled or clipped together as a single Document; otherwise the Producing Party need not attempt to identify what pages are logically part of the same Document.

3.2. <u>Hard-Copy Metadata</u>. For any produced Hard-Copy Documents, the Producing Party shall, to the extent the information is reasonably available, provide metadata for each scanned Document, including the: (1) beginning production number (*i.e.*, the "Bates" number); (2) ending production number; (3) confidentiality designation; (4) custodian; (5) volume; and (6) page count.

3.3.    Searchable Text.  For any produced Hard-Copy Documents, the Producing Party should take reasonable steps to create Multi-page Searchable Texting using OCR.  The OCR software shall maximize text quality.  Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process.

## 4.    PROCESSING SPECIFICATIONS FOR ESI

4.1.    De-Duplication.  A Producing Party may remove Documents identified as duplicative based on MD5 or SHA-1 Hash Values of the full text of the Documents at the family level.  Attachments should not be eliminated as duplicates for purposes of production, unless the parent e-mail and all attachments are also duplicates.  The Parties agree that an e-mail that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an e-mail that does not include content in those fields, even if all remaining content in the e-mail is identical.  Removal of near-duplicate Documents is not acceptable.  The Producing Party shall produce a Metadata field for all produced Documents for which duplicate Documents were removed listing the Custodians that possessed a duplicate Document that was removed.  The Producing Party will update this field no later than ten (10) calendar days following substantial completion of production.  The above shall not impose on a Party any obligation to produce duplicative Documents.

4.2.    Metadata.  ESI shall be processed in a manner that preserves the source Native Format file and relevant metadata without modification, including their existing time, date, and time-zone metadata consistent with the requirements provided in this Order.  ESI items shall be produced with all of the metadata and coding fields set forth in Table 1, to the extent such metadata and coding fields exist and where reasonably feasible.  This Order does not create any obligation to create or manually code fields that are not automatically generated by the

processing of the ESI, or that do not exist as part of the original metadata of the Document; provided, however, that the Producing Party must populate, where possible, the (a) BegBates, (b) EndBates, (c) BegAttach, (d) EndAttach, (e) Custodian, (f) NativeFileLink fields, if applicable, (g) TextPath, (h) redaction status, and (i) confidentiality designation.  These fields, listed at (a)-(i) in the immediately preceding sentence, should be populated for all produced ESI regardless of whether the fields can be populated pursuant to an automated process, unless impracticable.  To the extent providing these metadata fields is unduly burdensome, the Parties shall meet and confer to determine appropriate solutions.  For ESI other than e-mail that does not conform to the metadata listed in Table 1, such as text messages, Instant Bloomberg, iMessage, Google Chat, Yammer, Slack, etc., the Parties will meet and confer as to the appropriate metadata fields to be produced.

4.3.     De-NISTing.  Non-user-generated files may be removed from review and production using the list of non-user-generated files maintained by the National Institute of Standards and Technology (NIST).  Additional culling of system files based on file extension may include: WINNT, LOGS, DRVS, C++ Program File (c), C++ Builder 6 (cpp), Channel Definition Format (cdf), Creatures Object Sources (cos), Dictionary file (dic), Executable (exe), Hypertext Cascading Style Sheet (css), JavaScript Source Code (js), Label Pro Data File (IPD), Office Data File (NICK), Office Profile Settings (ops), Outlook Rules Wizard File (rwz), Scrap Object, System File (dll), temporary files (tmp), Windows Error Dump (dmp), Windows Media Player Skin Package (wmz), Windows NT/2000 Event View Log file (evt), Python Script files (.py, .pyc, .pud, .pyw), Program Installers.

4.4.     Embedded Objects.  Files that are embedded in other files ("Embedded Objects"), including email inline images and Microsoft Office embedded images, need not be extracted as

separate files and treated as attachments to the parent Document provided that all content contained in the Embedded Object is contained and/or visible within the parent Document, to the extent it is produced.

4.5. <u>E-mail Threading</u>. The Parties will not suppress email threads in their productions, but may do so for the purposes of internal review. For partially-privileged chains of emails that are redacted, a Producing Party may produce only a single, most-inclusive, redacted copy of such email chain except that any unique branches of the email chain must also either be produced separately in redacted form.

4.6. <u>Attachments</u>. The Parties agree that if any part of an e-mail or its attachments is responsive, the entire e-mail and attachments will be produced, except any attachments that must be withheld or redacted on the basis of privilege. The Parties will meet and confer about whether there is an appropriate basis for withholding a family Document for any reason other than attorney-client or work product privilege. The attachments will be produced sequentially after the parent e-mail. With respect to hyperlinks embedded in responsive email and/or communications that are not otherwise publicly available, the Parties agree to make reasonable efforts to locate and produce the linked documents upon reasonable and particularized request.

4.7. <u>Compressed Files </u>Types. Compressed file types (*e.g.*, .ZIP, .RAR, .CAB, .Z, .TAR, .GZ) should be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual files.

4.8. <u>Structured Data</u>. To the extent a response to discovery requires production of electronic information stored in a database, the Parties will meet and confer regarding methods of production. The Parties will consider whether all relevant information may be provided by

querying the database for discoverable information and generating a report in a reasonably usable and exportable electronic file.

4.9. <u>Searchable Text</u>.  Text will be extracted directly from the Native Format electronic file of ESI unless the Document requires redaction, is an image file or is any other native electronic file that does not contain text to extract (e.g., non-searchable PDFs), in which case Searchable Text may be created using OCR. Extracted text will include all comments, revisions, tracked changes, speaker's notes and text from Documents with comments or tracked changes, and hidden worksheets, slides, columns and rows. Extracted text from e-mails will include all header information that would be visible if the e-mail was viewed natively including: (1) the individuals to whom the communication was directed, (2) the author of the e-mail communication, (3) who was copied and blind copied on such e-mail, (4) the subject line of the e-mail, (5) the date and time of the e-mail and (6) the names of any attachments.

4.10. <u>Exception Files</u>.  The Parties will use commercially reasonable efforts to address Documents that present processing or production problems (including encrypted, unsupported, and/or protected files) ("Exception Files").  Exception Files that are attached to produced Documents will be produced as a Bates-stamped placeholder in Image Format bearing the legend, "This Document was unable to be processed".  The Parties will meet and confer regarding requests for the production of the native versions of Exception Files.  If the Parties cannot reach agreement on the handling of Exception Files through the meet and confer process, the matter may be submitted to the Court for resolution pursuant to the Applicable Rules.

## 5.  PRODUCTION FORMAT

5.1. <u>General</u>.  Except as otherwise provided herein, the Parties will produce Documents in single-page, black and white, TIFF Group IV, 300 DPI TIFF images with the exception of

spreadsheet and presentation type files, source code, audio and video files, which shall be produced in Native Format.  The Parties are under no obligation to enhance an image beyond how it was kept in the usual course of business.  TIFFs/JPGs will show any and all text and images that would be visible to the reader using the native software that created the Document.  For example, TIFFs/JPGs of e-mail messages should include the BCC line.  If the image does not accurately reflect the Document as it was kept in the usual course of business, including all comments, edits, tracking, etc., the Parties agree to meet and confer in good faith on production format options.  A Requesting Party may request the production of Native Format files of other Documents (*e.g.*, images) where the production of the Native Format file is reasonably necessary to the Document's comprehension or use.

5.2.    TIFF Format.  All TIFFs produced by any Party in this matter will be single-page Group IV TIFF format with 300 dpi quality with 1 bit depth or better.  TIFF files will be named according to the corresponding Bates-numbered images.  Page size shall be 8.5 x 11 inches, unless in the reasonable judgment of the Producing Party, a particular item requires a different page size. All Documents that contain comments, deletions, tracked changes and revision marks (including the identity of the person making the deletion or revision and the data and time thereof), speaker notes or other user-entered data that the source application can display to the user will be processed such that all that data is visible in the image.  All TIFF images will be branded in the lower right-hand corner with its corresponding Bates number, and in the lower left-hand corner with its Confidentiality Designation, if any, using a consistent font type and size.  If the Requesting Party believes that a Bates number or Confidentiality Designation obscures the content of a Document, then the Requesting Party may request that the Document be produced with the Bates number in a different position.

5.3.    Native Format.  If a Document is produced in Native Format, a single-page Bates stamped TIFF bearing a legend indicating the Document has been produced in native format shall also be produced in the same manner as other TIFFs, with the exception of PowerPoint presentations.  PowerPoint files should be produced in native format along with single-page, 300 DPI TIFF/JPG images which display both the slide and speaker's notes.  Each Native Format file shall have a file name that includes the Bates number it has been assigned and Confidentiality Designation, and should be linked directly to its corresponding record in the load file using the NATIVELINK field.  To the extent that either Party believes that specific Documents or classes of Documents, not already identified within this protocol, should be produced in Native Format, the Parties agree to meet and confer in good faith.

5.4.    Bates Numbering.  Each TIFF image produced under this Order shall be assigned a Bates number that must: (1) be unique across the entire Document production; (2) maintain a constant length of eight numeric digits (including 0-padding) across the entire production; (3) contain only alphanumeric characters, no special characters; and (5) be sequential within a given Document.  The Producing Party will identify the Bates number range of each production in a cover letter or production log accompanying the production.

5.5.    Load Files.  Productions will include image load files in Opticon format and Concordance format data (.dat) files with reasonably available Metadata for all Documents.  All Metadata will be produced in UTF-7 or UTF-8 with Byte Order Mark format.

5.6.    Text Files.  A single Document-level text file containing the Searchable Text shall be provided for each Document.  The text file name shall be the same as the Bates number of the first page of the Document with the Document extension ".txt." suffixed.  File names shall not have any special characters or embedded spaces.  Searchable Text shall be provided in UTF-8 or

Western European (Windows) with Byte Order Mark format text.  The .DAT load file shall include a link to the corresponding text file.

5.7.     Decryption of Production Data.  The Parties will make reasonable efforts to ensure that all encrypted or password-protected Documents and ESI are successfully processed for review and production.   To the extent security protection for such Documents and ESI cannot be successfully processed despite reasonable efforts, when producing such encrypted files, the Producing Party shall produce a slip sheet stating that the Documents cannot be decrypted and provide the metadata required by Table 1, attached hereto, to the extent it can be reasonably extracted from the file in its encrypted form.

5.8.     Encryption of Data in Transit.  To maximize the security of information in transit, any media on which Documents are produced may be encrypted.  In such cases, the Producing Party shall transmit the encryption key or password to the Receiving Party, under separate cover, contemporaneously with sending the encrypted media.

5.9.     Redactions.  A Party may use redactions to protect for privilege.  Parties may also redact information that is personally or commercially sensitive so long as that information is not responsive to any agreed requests for production.  Each redaction on a Document shall be endorsed with the word "redacted" or "redaction," along with the basis for such redaction in the text of the redaction box (e.g., "Redacted – Attorney Client Privilege").  Redacted Documents shall be identified as such in the Metadata, and the Parties agree to provide additional information in response to reasonable, individualized requests where the basis for a privilege redaction is unclear on the face of the redacted document itself.  If Documents that the parties have agreed to produce in native format need to be redacted, the parties will meet and confer regarding how to implement redactions while ensuring that proper formatting and usability are maintained.

5.10.   Color.  To the extent any Documents that contain color are produced in black and white, upon reasonable request and if necessary for legibility, the Producing Party will produce additional Documents in color on an as-needed basis to assist with readability.

5.11.   Parent-Child Relationships.  Parent-child relationships (the association between an attachment and its parent Document or between embedded Documents and their parent) will be preserved through the production of an appropriate Metadata field.  Parent-child relationships shall also be preserved by assigning sequential Bates numbers to all items within the parent-child group, where reasonably feasible.

5.12.   Family Groups.  A Document and all other Documents in its attachment range, e-mails with attachments and files with extracted embedded OLE Documents all constitute family groups.  Attachments that are wholly privileged may be excluded from production provided that a slipsheet with the placeholder "Document Withheld as Privileged" is produced.

5.12.   Production Media.  The Producing Party will use the appropriate electronic media (CD, DVD, secure FTP or other secure file transfer utility, hard drive or other mutually agreeable media) for its production, and will use high-capacity media to minimize associated overhead. Electronic delivery via secure FTP or other secure file transfer utility shall be preferred, and the Producing Party will notify the Requesting Party in cases of non-electronic delivery of any productions.  The Producing Party will label any physical media with the Producing Party, media volume name and Bates number range.

## 6.   PRIVILEGE LOG

6.1.   For all Documents wholly withheld on the basis of privilege, the Parties agree to furnish logs that comply with the legal requirements under federal law and the Applicable Rules, and that contain information sufficient to enable the Requesting Party to evaluate the claims made, including the following information to the extent reasonably available:

a. A unique number for each entry on the log.

b. The Document custodian.

c. The date of Document. For emails, this should be the sent date of the Document and for other ESI this should be the create date of the Document.

d. The Author of the Document. For emails, this should be populated with the metadata extracted from the "Email From" field associated with the file. For other ESI, this should be populated with the metadata extracted from the "Author" field; if such field contains generic information such as the company name, a party may substitute the information contained in the "Custodian" metadata field.

e. If the Document is an email, the Subject Line of the email (unless the Subject Line itself contains privileged information).

f. If the Document is ESI other than email, the File Name and Doc Title.

g. Recipient(s) of the Document where reasonably ascertainable. For emails this should be populated with the metadata extracted from the "Email To" field associated with the file. Separate columns should be included for the metadata extracted from the "Email CC" and "Email BCC" fields, where populated. For emails, this shall include, in addition to the Recipient(s)' name(s), either (a) an email address for each recipient or (b) information sufficient to identify their employer at that time.

h. A description of why privilege is being asserted over the Document. This description should include information sufficient to identify if the

-15-

Document contained attachments over which privilege is also being asserted.

    i.    The type of privilege being asserted: (a) AC for Attorney/Client, (b) WP for Attorney Work Product, (c) CI for Common Interest.

    j.    Log entries shall identify names of counsel with an asterisk.

6.2.    Privilege logs shall be provided in searchable Microsoft Excel format.

6.3.    Documents presumptively not to be logged on a privilege log include Documents created after the initiation of litigation in this matter on September 28, 2020.

6.4.    The same Document Description may be used for multiple Documents (*i.e.*, a categorical description) so long as the Producing Party has, in good faith, evaluated the Document to ensure the Document Description accurately reflects the contents of the Document and is sufficient for the Receiving Party to fairly evaluate the claim of privilege or immunity.

6.5.    Email thread suppression shall not be used for email chains that are to be logged. Otherwise, a single Document containing multiple emails in an email chain may be logged as a single entry. A Document family (*e.g.*, e-mail and attachments) may be logged as a single entry so long as the log entry references the attachment(s) and accurately describes both the e-mail and its responsive attachment(s).

6.6.    If any member of a family group is produced, all members of that group must also be produced and logged as privileged, and no such member shall be withheld from production as a duplicate.

6.7    The Producing Party will provide a privilege log no later than fifteen (15) calendar days following the date of substantial completion of document discovery, and supplement that privilege log as necessary thereafter.

## 7.    THIRD-PARTY DOCUMENTS AND ESI

7.1.    A Party that issues a subpoena upon any third party ("Issuing Party") after the execution of this ESI Protocol shall include a copy of this ESI Protocol and any protective order agreed and/or entered in this litigation with the subpoena and state that the Parties in this litigation have requested that third parties produce Documents in accordance with the specifications set forth herein.

7.2.    The Issuing Party shall request that third parties produce the same Documents to all Parties simultaneously.  In the event that the third party fails to do so (as indicated by, among other means, failing to address both Parties in its production cover letter), the Issuing Party shall produce a copy to all other Parties of any Documents and ESI (including any metadata) obtained under subpoena to a third party in the same form and format as produced by that third party within five (5) business days of receipt from the third party, and may not use those Documents in this Action until such production has been made.

7.3.    If a third-party production is not Bates-stamped, the Issuing Party will endorse its production with unique Bates prefixes and numbering scheme prior to reproducing them to all other Parties.

DATED: June 29, 2022

**LABATON SUCHAROW LLP**

/s/ *Christine M. Fox*
Carol C. Villegas
Christine M. Fox
James M. Fee
140 Broadway
New York, NY 10005
(212) 907-0700
cvillegas@labaton.com
cfox@labaton.com
jfee@labaton.com

*Counsel for Lead Plaintiff and the Proposed Class*

**CRAVATH SWAINE & MOORE LLP**

/s/ *Karin A. DeMasi*
Karin A. DeMasi
Carolyn Young
825 Eighth Avenue
New York, NY 10019
(212) 474-1000
kdemasi@cravath.com
cyoung@cravath.com

*Attorneys for Defendants Peabody Energy Corporation, Glenn L. Kellow, and Amy B. Schwetz*

SO ORDERED.
Dated: 7/6/2022

P. Kevin Castel
United States District Judge

-18-

**TABLE 1**

**METADATA FIELDS**

| Field Name | Description | Example / Format | Doc Type |
|---|---|---|---|
| PRODBEG | The Document ID number of first page of the document. | ABC00000001 | All |
| PRODEND | The Document ID number of the last page of a document. | ABC00000003 | All |
| BEGATTACH | First Bates number of family range (*i.e.*, Bates number of the first page of the parent Document. | ABC00000001 | All |
| ENDATTACH | Last Bates number of family range (*i.e.*, Bates number of the last page of the last attachment or, if no attachments, the Document itself). | ABC00000008 | All |
| CONFIDENTIALITY DESIGNATION | Confidentiality level if assigned pursuant to any applicable Protective Order or Stipulation. | Confidential | All |
| PAGE COUNT | The number of pages in a document. (image records) | Numeric | All |
| CUSTODIAN | Name of person from where Documents/files were collected or, in the case of non-human sources, a short description of that source ("*e.g.*, "Shared Drive"). | Smith, Joe | All |
| DUPLICATE CUSTODIAN | Names of all other custodians who possessed the document. Where multiple individuals share first and last name, individuals should be distinguished by an initial which is kept constant between productions (*e.g.*,Smith, John A. and Smith, John B.). | Smith, John; Doe, Jane | All |
| NATIVE FILE LINK | The file path for Documents provided in Native Format. | D:\NATIVES\ABC00000001.xls | All |
| SOURCE | Location where hard documents were found at time of collection. | Joe Smith Office; HR File Room | All |
| SOURCEPARTY | Name of Party producing the item. | | All |
| VOLUME | The name of the CD or Hard Drive for ESI, or collection, binder, cabinet for hard copy docs. | VOL0001 | All |

-19-

| Field Name | Description | Example / Format | Doc Type |
|---|---|---|---|
| **RECORD TYPE** | The type of document / record. | Email, text message, instant message, hard copy, loose eFile | All |
| **PARENT DATE** | Date of the Parent Document. | MM/DD/YY YY HH:MM:SS AM | All |
| **EMAIL SUBJECT** | The subject line of the email. | | E-mail |
| **EMAIL AUTHOR / FROM** | The display name and email of the author and/or sender of an email. | Joe Smith <jsmith@email.com> | E-mail |
| **EMAIL RECIPIENTS / TO** | The display name and email of the recipient(s) of an email. | Joe Smith <jsmith@email.com>; tjones@email.com | E-mail |
| **EMAIL CC** | The display name and email of the copyee(s) of an email. | Joe Smith <jsmith@email.com>; tjones@email.com | E-mail |
| **EMAIL BCC** | The display name and email of the blind copyee(s) of an email. | Joe Smith <jsmith@email.com>; tjones@email.com | E-mail |
| **EMAIL ATTACHMENT COUNT** | The number of attachments to a parent. | Numeric | E-mail |
| **EMAIL ATTACHMENT NAME** | The original file name of attached record. | Attach1.doc | E-mail |
| **RECEIVED DATE** | The date the document was received. | MM/DD/YY YY | E-mail |
| **RECEIVED TIME** | The time the document was received. | HH:MM:SS AM | E-mail |
| **SENT DATE** | The date the document was sent. | MM/DD/YY YY | E-mail |
| **SENT TIME** | The time the document was sent. | HH:MM:SS AM | E-mail |

| Field Name | Description | Example / Format | Doc Type |
|---|---|---|---|
| EMAIL IMPORTANCE | Email Importance Flag. | Normal, Low, High | E-mail |
| EMAIL CONVERSATION INDEX / THREAD TEXT | ID used to tie together email threads. | 01C72AC4C | E-mail |
| TIME OFFSET VALUE / TIMEZONE PROCESSED | The time zone that the data is set to when processed. NOTE: This should be the time zone where the documents were located at time of collection. | PST, CST, EST, etc. | All |
| FILE NAME | Original file name of a native document at the point of collection. | Document Name.xls | E-Document |
| FILE AUTHOR | The author and/or creator of a document from extracted metadata. | jsmith | E-Document |
| DOC TITLE | Any value populated in the Title field of the source file metadata or item properties. | Table of Contents | E-Document |
| FILE MANAGER / APPLICATION DESCRIPTION | Native file application. | Microsoft Excel, Word, etc. | E-Document |
| FILE EXTENSION | The file extension of a document. | XLS | E-Document |
| HIDDEN DATA | Whether hidden exists in the doc. For example, hidden Excel cells or PowerPoint slides. | Y,N,Blank | E-Document |
| FILE CREATE DATE | The date the document was created. | MM/DD/YYYY | E-Document |
| FILE CREATE TIME | The time the document was created. | HH:MM:SS AM | E-Document |
| FILE LAST MODIFICATION DATE | The date and time the document was last modified. | MM/DD/YYYY HH:MM:SS AM | E-Document |
| REDACTED | "Yes" for redacted Documents; "No" for un-redacted Documents. | | All |
| FILE LAST ACCESS DATE | The date the document was last accessed. | MM/DD/YYYY | E-Document |
| FILE LAST SAVED BY | The last individual to save the file. | jsmith | E-Document |
| FILE LAST EDITED BY | The name of the last person to edit the document from extracted metadata. | jsmith | E-Document |
| FILE UNREAD | Y if an email is unread, N if read, and blank for attachments and non-email documents. | Y, N | All |

| Field Name | Description | Example / Format | Doc Type |
|---|---|---|---|
| **DATE APPOINTMENT START** | Date of calendar appointment entry. | MM/DD/YYYY | All |
| **TIME APPOINTMENT START** | Start time of calendar appointment entry. | HH:MM | All |
| **DATE APPOINTMENT END** | End date of calendar appointment entry. | MM/DD/YYYY | All |
| **TIME APPOINTMENT END** | End time of calendar appointment entry. | HH:MM | All |
| **FILESIZE** | The file size (in kilobytes) of the source native file (including embedded attachments). | Numeric | E-Document |
| **FILE PATH / ORIGINAL PATH** | Location of the original document / location in the ordinary course of business. This field should be populated for email and e-files. | Joe Smith/email/ Inbox Joe Smith/email/ Deleted Items | All |
| **HASHVALUE** | The MD5 Hash value or de-duplication key assigned to a document. | MD5 or SHA-1 | All |
| **TEXTPATH** | File path for OCR or Extracted Text files. | D:\TEXT\ABC000001.txt | All |