**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

|  |  |  |
|---|---|---|
|  | : | Case No. 1:20-cv-08024-PKC |
| IN RE PEABODY ENERGY CORP. | : |  |
| SECURITIES LITIGATION | : |  |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : |  |

---

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S**
**UNOPPOSED MOTION FOR PRELIMINARY APPROVAL**
**OF PROPOSED CLASS ACTION SETTLEMENT**

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND.............................................. 2

I.     Procedural History and Lead Plaintiff's Investigation........................................ 2

II.    Discovery and Class Certification .................................................................... 4

III.   Negotiation of the Settlement and the Terms of the Proposed Settlement .................. 5

ARGUMENT ....................................................................................................... 6

I.     PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED ................. 6

       A.     Standards for Preliminary Approval of a Proposed Class Action
              Settlement ................................................................................................. 6

       B.     Rule 23(e)(2)(A): Adequate Representation........................................... 8

       C.     Rule 23(e)(2)(B): The Settlement Is the Product of Good Faith,
              Informed, and Arm's-Length Negotiations by Experienced Counsel ................... 8

       D.     Rule 23(e)(2)(C): The Settlement Provides Significant and Certain
              Benefits ................................................................................................. 10

              1.     Despite Strong Claims, Many Risks to Recovery Remained .................. 10

              2.     The Effective Process for Distributing Relief to the Settlement
                     Class ............................................................................................. 14

              3.     The Settlement Does Not Excessively Compensate Lead Counsel .......... 15

       E.     Rule 23(e)(2)(D): Settlement Class Members Are Treated Equitably
              Relative to One Another ......................................................................... 16

II.    PRELIMINARY CERTIFICATION OF THE SETTLEMENT CLASS......................... 17

III.   THE PROPOSED NOTICE PROGRAM SHOULD BE APPROVED .......................... 18

IV.    PROPOSED SCHEDULE OF SETTLEMENT-RELATED EVENTS ........................... 20

CONCLUSION.................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re A.I.G., Inc. Sec. Litig.*,
  293 F.R.D. 459 (S.D.N.Y. 2013) ...............................................................6

*In re Advanced Battery Techs. Inc. Sec. Litig.*,
  298 F.R.D. 171 (S.D.N.Y. 2014) ..........................................................9, 10

*Affiliated Ute Citizens of Utah v. United States*,
  406 U.S. 128 (1972) and (ii) ...................................................................18

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988).................................................................................18

*In re Citigroup Inc. Bond Litig.*,
  296 F.R.D. 147 (S.D.N.Y. 2013) ...............................................................6

*City of Providence v. Aeropostale Inc.*,
  No. 11-cv-7132, 2014 WL 1883494 (S.D.N.Y. May 9, 2014), *aff'd, Arbuthnot
  v. Pierson*, 607 F. App'x. 73 (2d Cir. 2015) .......................................9, 16

*Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974).......................................................................7

*Hicks v. Stanley*,
  No. 01 CIV. 10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) .............................13

*Howard v. Liquidity Servs. Inc.*,
  No. CV 14-1183 (BAH), 2018 WL 4853898 (D.D.C. Oct. 5, 2018).......................................14

*In re IMAX Sec. Litig.*,
  283 F.R.D. 178 (S.D.N.Y. 2012) .............................................................18

*In re Indep. Energy Holdings PLC*,
  No. 00 Civ. 6689 (SAS), 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) .............................10

*Int'l Bhd. of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech., Inc.*,
  No. 3:09-cv-00419-MMD-WGC, 2012 WL 5199742 (D. Nev. Oct. 19, 2012)...............14, 15

*In re Merrill Lynch & Co. Rsch. Reports Sec. Litig.*,
  No. 02-MDL 1484, 2007 WL 313474 (S.D.N.Y. Feb. 1, 2007).............................................13

*In re Merrill Lynch Tyco Rsch. Sec. Litig.*,
  249 F.R.D. 124 (S.D.N.Y. 2008) .............................................................16

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
    339 U.S. 306 (1950)..................................................................................................18

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
    176 F.R.D. 99 (S.D.N.Y. 1997) ..................................................................................9

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
    187 F.R.D. 465 (S.D.N.Y. 1998) ................................................................................9

*Olkey* v. *Hyperion 1999 Term Tr., Inc.*,
    98 F.3d 2 (2d Cir. 1996)............................................................................................11

*In re Patriot Nat'l, Inc. Sec. Litig.*,
    828 F. App'x. 760 (2d Cir. 2020)..........................................................................13, 14

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    330 F.R.D. 11 (E.D.N.Y. 2019) ..................................................................................7

*In re Peabody Energy Corp. Sec. Litig.*,
    No. 20-cv-8024 (PKC), 2022 WL 671222 (S.D.N.Y. Mar. 7, 2022) ...........4, 11, 13

*Schuler v. Meds. Co.*,
    No. CV 14-1149 (CCC), 2016 WL 3457218 (D.N.J. June 24, 2016)........................14

*Thorpe v. Walter Inv. Mgmt. Corp.*,
    No. 14-cv-20880-UU, 2016 WL 10518902 (S.D. Fla. Oct. 17, 2016) ....................14

*In re Veeco Instruments Inc. Sec. Litig.*,
    No. 05-MDL-01695(CM), 2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007)..................10

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005)......................................................................................6, 18

*Yang v. Focus Media Holding Ltd.*,
    No. 11-cv-9051-CM-GWG, 2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014)................6

**Docketed Cases**

*In re Extreme Networks, Inc. Sec. Litig.*,
    No. 5:15-cv-04883-BLF (N.D. Cal. July 22, 2019)..................................................14

*Guevoura Fund Ltd. v. Sillerman*,
    No. 15-cv-07192 (S.D.N.Y. Dec. 18, 2019) ............................................................16

*In re Helios and Matheson Analytics, Inc. Sec. Litig.*,
    No. 18-cv-06965-JGK (S.D.N.Y. May 13, 2021)................................................15, 16

**Statutes**

15 U.S.C. § 78u-4(a)(4) .......................................................................................................16

15 U.S.C. §78u-4(a)(7)(A)-(F) ............................................................................................19

**Rules**

Fed. R. Civ. P.  23 ................................................................................................................7

Fed. R. Civ. P. 23(a) ...........................................................................................................17

Fed. R. Civ. P. 23(b)(3) ..................................................................................................17, 18

Fed. R. Civ. P. 23(c)(2)(B) .................................................................................................18

Fed. R. Civ. P. 23(e) ..........................................................................................................1, 6

Fed. R. Civ. P. 23(e)(1) .....................................................................................................6, 7

Fed. R. Civ. P. 23(e)(1)(B) ..................................................................................................7

Fed. R. Civ. P. 23(e)(2) .....................................................................................................6, 7

Fed. R. Civ. P. 23(e)(2)(A) ..................................................................................................8

Fed. R. Civ. P. 23(e)(2)(B) ..................................................................................................8

Fed. R. Civ. P. 23(e)(2)(C) .................................................................................................10

Fed. R. Civ. P. 23(e)(2)(C) .................................................................................................16

Fed. R. Civ. P. 23(e)(2)(D) .................................................................................................16

Fed. R. Civ. P. 23(e)(3) .......................................................................................................7

**Other Authorities**

Francis**,** *Samuel Meet Two-Face: The Dualistic Rule 10b-5 and the Quandary of
    Offsetting Losses by Gains*, 77 FORDHAM L. REV. 3045, 3047 (2009) ....................................12

Rubenstein, William B. NEWBERG ON CLASS ACTIONS (6th ed. 2022) ............................................6

## PRELIMINARY STATEMENT

Lead Plaintiff Oregon Public Employees Retirement Fund ("OPERF" or "Lead Plaintiff"), on behalf of itself and all other members of the proposed Settlement Class,[1] submits this memorandum of law in support of its unopposed motion for preliminary approval of the proposed settlement reached in the above-captioned class action (the "Action").  The Settlement would provide a recovery of $4,625,000 to resolve this securities class action brought against Defendants Peabody Energy Corporation ("Peabody" or the "Company"), one of the largest coal mining companies in the world with operations throughout the U.S. and Australia, its former President and CEO, Glenn L. Kellow ("Kellow") and its former CFO, Amy B. Schwetz ("Schwetz" collectively, "Defendants").  The terms of the proposed settlement are set forth in the Stipulation, which was entered into by all Parties to the litigation.

Lead Plaintiff respectfully submits that the Settlement warrants preliminary approval by the Court given that it is the result of vigorous arm's-length negotiations by experienced counsel overseen by a well-respected mediator, represents a favorable recovery given that the Court dismissed 58 out of 60 of Lead Plaintiff's allegedly false and misleading statements, leaving a proposed class period of only a few days, and meets all of the approval factors required by Fed. R. Civ. P. 23(e) and Second Circuit precedent.  Through the Court's grant of preliminary approval, Lead Plaintiff will be able to provide notice of the Settlement's terms and conditions to potential members of the Settlement Class.  A final approval hearing (the "Settlement Hearing") will then be conducted so that the Parties and Settlement Class Members may present arguments and

---

[1] All capitalized terms used in this memorandum that are not defined have the same meanings as in the Stipulation and Agreement of Settlement, dated October 7, 2022 (the "Stipulation").  The Stipulation is annexed as Exhibit 1 to the Declaration of Christine M. Fox ("Fox Decl."), filed herewith.

evidence for, or against, the Settlement, and the Court will then make a final determination as to whether the Settlement is fair, reasonable, and adequate.  The Court will also be asked to approve the proposed Plan of Allocation for distributing the proceeds of the Settlement and to consider Lead Counsel's Fee and Expense Application.

The proposed Preliminary Approval Order has been negotiated by the Parties and will, among other things: (i) preliminarily approve the Settlement on the terms set forth in the Stipulation; (ii) preliminarily certify the Settlement Class and appoint Lead Plaintiff as class representative and Lead Counsel as class counsel, for purposes of the Settlement only; (iii) approve the form and content of the Notice of Pendency of Class Action, Proposed Settlement, and Motion for Attorneys' Fees and Expenses ("Notice"), Proof of Claim and Release ("Claim Form"), and Summary Notice, attached as Exhibits 1, 2 and 3 to the Preliminary Approval Order; (iv) find that the procedures for distribution of the Notice and Claim Form and publication of the Summary Notice constitute the best notice practicable under the circumstances and comply with due process, Fed. R. Civ. P. 23, and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4, *et seq.*; (v) set a date and time for the Settlement Hearing, at which the Court will consider final approval of the Settlement, the Plan of Allocation, and Lead Counsel's application for attorneys' fees and expenses, including reimbursement of costs and expenses to Lead Plaintiff pursuant to the PSLRA; and (vi) appoint Strategic Claims Services ("SCS") to administer the Settlement process.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.     Procedural History and Lead Plaintiff's Investigation

On September 28, 2020, a securities class action was filed in the Court, on behalf of investors in Peabody, alleging violations of the Securities Exchange Act of 1934 ("Exchange

Act"). *See, e.g.*, ECF No. 1.  By Order dated January 12, 2021, the Court: (i) appointed Oregon Public Employees Retirement Fund as Lead Plaintiff; and (ii) approved Labaton Sucharow LLP as Lead Counsel to represent the proposed class.  ECF No. 26.

Prior to and after its appointment, Lead Plaintiff engaged in a thorough investigation for the purpose of drafting a comprehensive, consolidated amended complaint that would survive the strictures of the PSLRA, which included the review and analysis of: (i) documents filed publicly by the Company with the U.S. Securities and Exchange Commission ("SEC"); (ii) publicly available information, including press releases, Peabody earnings call transcripts, news articles, and other public statements issued by or concerning the Company and the Defendants; (iii) research reports issued by financial analysts concerning the Company; (iv) other publicly available information and data concerning the Company; and (v) the applicable law governing the claims and potential defenses.  Through its own internal investigation, Lead Counsel identified approximately 168 former Peabody employees and other persons with relevant knowledge, contacted 134 persons, and interviewed 19 of them.  Lead Counsel also consulted with an expert on damages and loss causation issues, and an expert in longwall coal mining with more than 20 years of experience.

On March 19, 2021, Lead Plaintiff filed the Consolidated Amended Class Action Complaint (the "Complaint") asserting claims against all Defendants under Section 10(b) of the Exchange Act, and Section 20(a) of the Exchange Act against Defendants Kellow and Schwetz. Among other things, the Complaint alleged that Defendants made materially false and misleading statements and omissions with respect to: (i) Peabody's commitment to safety; (ii) the circumstances and timing of the September 2018 fire at the Company's most profitable mine at North Goonyella, Queensland, Australia; and (iii) the timing of resumption of coal production at

the North Goonyella mine following a fire in September 2018.  The Complaint further alleged that the price of Peabody common stock was artificially inflated and artificially maintained as a result of Defendants' allegedly false and misleading statements and omissions and declined when the truth was revealed through a series of partial corrective disclosures.  ECF No. 38.

On June 25, 2021, Defendants filed a motion to dismiss the Complaint. ECF Nos. 42, 47-48, which Lead Plaintiff opposed, ECF No. 45.

On March 7, 2022, the Court entered its Opinion and Order granting in part and denying in part Defendants' motion to dismiss the Complaint.  *See In re Peabody Energy Corp. Sec. Litig.*, No. 20-cv-8024 (PKC), 2022 WL 671222 (S.D.N.Y. Mar. 7, 2022) ("MTD Order").  The Court dismissed the majority of Lead Plaintiff's allegedly false and misleading statements and significantly shortened the length of the Class Period – sustaining only two statements on a single day (September 25, 2018) related to Defendants' alleged "fail[ure] to disclose the fact that the [North Goonyella mine] was actually or likely on fire as of September 22, 2018, when black smoke could be seen billowing from the mine." *Id.,* at *1.  The fire was disclosed by Peabody a few days later, on September 28, 2018. *Id.*  This effectively cut the alleged class period from 2.5 years to less than one week, and cut the allegedly false statements from 60 statements to two statements. *Id.*, at *22.

## II.    Discovery and Class Certification

In connection with formal discovery, which commenced in April 2022 when the PSLRA discovery stay was lifted, Lead Plaintiff and Defendants exchanged written discovery of the Parties and certain relevant third-parties.

Pursuant to Court recommendation and the Parties' agreement, in advance of a July 29, 2022 mediation, discussed below, and in order to facilitate settlement discussions, Defendants

prioritized and produced certain categories of documents to Lead Plaintiff.

On July 15, 2022, Lead Plaintiff filed its motion for class certification and appointment of class counsel, which was accompanied by a report from Lead Plaintiff's expert Chad Coffman, CFA, of Global Economics Group, on market efficiency and common damages methodologies. ECF Nos. 67, 68-1. In connection with Lead Plaintiff's class certification motion, Defendants deposed — and Lead Plaintiff defended the deposition of — a representative from Lead Plaintiff. Defendants were in the process of preparing their opposition to Lead Plaintiff's motion for class certification at the time the Parties agreed to settle.

## III.  Negotiation of the Settlement and the Terms of the Proposed Settlement

The Parties began exploring the possibility of a settlement in May 2022. Specifically, the Parties agreed to engage in mediation and subsequently retained David M. Murphy of Phillips ADR to serve as mediator (the "Mediator").

On July 29, 2022, Lead Counsel and Defendants' Counsel, among others, participated in a full-day in-person mediation session before the Mediator. In advance of the session, the Parties submitted detailed mediation statements to the Mediator, together with numerous supporting exhibits, which addressed both liability and damages issues. At the conclusion of the mediation session, the Parties reached an agreement in principle to settle the Action, which was memorialized in a term sheet executed and finalized on August 2, 2022 (the "Term Sheet"), subject to the execution of a customary "long form" stipulation and agreement of settlement and related papers. On August 4, 2022, the Parties notified the court of the Settlement and requested a stay of the Action, which was ordered on August 4, 2022. ECF No. 70.

The Parties subsequently negotiated the Stipulation, which sets forth the final terms and conditions of the Settlement, including, among other things, a release of all claims asserted against

Defendants in the Action and related claims ("Released Claims"), in return for a payment on behalf of Defendants of $4,625,000 for the benefit of the Settlement Class.

## ARGUMENT

### I.     PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED

#### A.     Standards for Preliminary Approval of a Proposed Class Action Settlement

Public policy favors settlement of litigation.  *See Yang v. Focus Media Holding Ltd.,* No. 11-cv-9051-CM-GWG, 2014 WL 4401280, at *3 (S.D.N.Y. Sept. 4, 2014) ("[W]hen exercising discretion to approve a settlement, courts are mindful of the strong judicial policy in favor of settlements[.]"[2]  This is especially so in securities class actions.  *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 116-17 (2d Cir. 2005) ("We are mindful of the 'strong judicial policy in favor of settlements, particularly in the class action context." "The compromise of complex litigation is encouraged by the courts and favored by public policy.").

Rule 23(e) of the Federal Rules of Civil Procedure provides that a class action settlement must be presented to the court for approval, and the settlement should be approved if the court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *see In re Citigroup Inc. Bond Litig.,* 296 F.R.D. 147, 154 (S.D.N.Y. 2013); *In re A.I.G., Inc. Sec. Litig.,* 293 F.R.D. 459, 464 (S.D.N.Y. 2013).  District court review of a class action settlement proposal is a two-step process. WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS §13:12 (6th ed. 2022); Fed. R. Civ. P. 23(e)(1).  The first step is a preliminary, pre-notification determination of whether notice of the proposed settlement should be sent to the class.  *Id*. at §13:13.

Rule 23(e) was amended in 2018 to, among other things, specify that the crux of a court's preliminary approval evaluation is whether notice should be provided to the class given the

---

[2] All internal quotations and citations are omitted, unless otherwise noted.

*likelihood* that the court will be able to finally approve the settlement, after considering the required factors enumerated in Rule 23(e)(2), and be able to certify the class. Rule 23(e)(1)(B). Rule 23(e)(2) provides that a court may approve a proposed settlement that would bind class members "only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:"

(A)     class representatives and counsel have adequately represented the class;

(B)     the proposal was negotiated at arm's length;

(C)     the relief provided for the class is adequate, taking into account:

    (i)     the costs, risks, and delay of trial and appeal;

    (ii)     the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii)     the terms of any proposed award of attorney's fees, including timing of payment; and

    (iv)     any agreement required to be identified under Rule 23(e)(3); and

(D)     the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).[3]  The Rule 23 amendment, which became effective in December 2018, has not changed the overall standard for approving a settlement, *i.e.* whether or not the settlement is fundamentally fair, adequate, and reasonable.  The proposed Settlement here readily satisfies all these factors and should be preliminarily approved.  *See, e.g., In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,* 330 F.R.D. 11, 28, 60 (E.D.N.Y. 2019).

---

[3] In assessing these core factors at the final approval stage, the Court may also consider the Second Circuit's long-standing approval factors, many of which overlap with the Rule 23 factors: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability and damages; (5) the risks of maintaining the class action through the trial; (6) the ability of the defendants to withstand a greater judgment; and (7) the range of reasonableness of the settlement fund in light of the best possible recovery and the attendant risks of litigation.  *See Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir. 1974).

### B.     Rule 23(e)(2)(A): Adequate Representation

Lead Plaintiff and Lead Counsel have zealously prosecuted this Action on behalf of the class since its inception and will continue to do so throughout the administration of the Settlement to secure and deliver its benefits.  Lead Plaintiff was an active and informed participant in the litigation and, among other things, supervised Lead Counsel and oversaw the litigation, responded to and produced relevant discovery to Defendants, was deposed by Defendants, and participated remotely in portions of the mediation.  Faithfully executing its duty, Lead Plaintiff also oversaw: (i) the drafting of a robust Complaint containing over 163 pages of detailed allegations; (ii) discovery; and (iii) the preparation of Lead Plaintiff's motion for class certification.  Lead Plaintiff was aware of both the Settlement Class's and Defendants' best arguments concerning liability and damages, and was consulted on and approved the terms of the Settlement.

Likewise, Lead Counsel developed a deep understanding of the facts of the case and merits of the claims through (i) a comprehensive investigation that involved, among other things, a review of publicly available information regarding the Company and interviews of former employees and persons with knowledge of the allegations; (ii) briefing on Defendants' motion to dismiss; (iii) engaging in mediation discovery efforts; and (iv) working with experts in longwall coal mining and damages and loss causation issues.  In consultation with its damages expert, Lead Counsel evaluated the potential damages in the case and negotiated vigorously to secure the $4.625 million recovery.  Accordingly, the Settlement Class has been, and remains, well represented.

### C.     Rule 23(e)(2)(B): The Settlement Is the Product of Good Faith, Informed, and Arm's-Length Negotiations by Experienced Counsel

"Where the proposed settlement appears to be the product of serious, informed, non–collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible

approval, preliminary approval is granted." *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997). A strong presumption of fairness attaches where a settlement is "reached by experienced counsel after arm's-length negotiations." *In re Advanced Battery Techs. Inc. Sec. Litig.*, 298 F.R.D. 171, 179 (S.D.N.Y. 2014). The Settlement is entitled to this presumption because it was achieved after thorough arm's-length negotiations during a full-day of mediation by well-informed and experienced counsel—on both sides.[4] *See City of Providence v. Aeropostale Inc. et al*., No. 11-cv-7132*, 2014 WL 1883494, at \*4 (S.D.N.Y. May 9, 2014), *aff'd*, *Arbuthnot v. Pierson*, 607 F. App'x. 73 (2d Cir. 2015) ("initial presumption of fairness and adequacy applies" where "Settlement was reached by experienced, fully-informed counsel after arm's-length negotiations"); see also *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) (Courts give "great weight . . . to the recommendations of counsel[.]").

Here, Lead Plaintiff is represented by an experienced and skilled firm in securities class litigation. *See* Fox Decl., Ex. 2. Lead Counsel believes that the achieved Settlement is a good result for the Settlement Class given the parameters of the remaining allegations in the case and the attendant risks of ongoing litigation, and recommends that the Settlement be preliminarily approved.

Second, Lead Plaintiff and Lead Counsel only agreed to settle the claims after a rigorous factual investigation and consultation with experts, and after testing the Parties' claims and defenses through a mediation process overseen by a highly experienced third-party neutral, Mr. David Murphy of Phillips ADR. In fact, the accepted Settlement was the product of a full-day of mediation. "[T]hat the Settlement was reached . . . with the assistance of a private mediator

---

[4] Defendants were represented by Cravath, Swaine & Moore LLP, a well-regarded and skilled defense firm.

experienced in complex litigation, is further proof that it is fair and reasonable." *In re Indep. Energy Holdings PLC*, No. 00 Civ. 6689 (SAS), 2003 WL 22244676, at \*4 (S.D.N.Y. Sept. 29, 2003).

Finally, the Settlement was negotiated with the oversight of Lead Plaintiff, a sophisticated institutional investor, which recommends that the Settlement be approved. *See In re Veeco Instruments Inc. Sec. Litig.*, No. 05-MDL-01695(CM), 2007 WL 4115809, at \*5 (S.D.N.Y. Nov. 7, 2007) ("[U]nder the PSLRA, a settlement reached . . . under the supervision and with the endorsement of a sophisticated institutional investor . . . is entitled to an even greater presumption of reasonableness."). Thus, the procedurally fair manner in which this Settlement was reached weighs strongly in favor of granting preliminary approval.

### D.     Rule 23(e)(2)(C): The Settlement Provides Significant and Certain Benefits

#### 1.     <u>Despite Strong Claims, Many Risks to Recovery Remained</u>

To determine whether the proposed Settlement is fair, reasonable, and adequate, courts balance the continuing risks of litigation against the benefits afforded to class members through settlement. Although Lead Plaintiff and Lead Counsel believe the remaining two statements left in the case were strong, they acknowledge that Defendants advanced several substantial arguments concerning liability and damages. It is well known that "[s]ecurities class actions present hurdles to proving liability that are particularly difficult for plaintiffs to meet." *In re Advanced Battery*, 298 F.R.D. at 177.

With respect to liability, Lead Plaintiff would have faced significant hurdles in connection with ultimately proving materiality, falsity, scienter, and reliance given the nature of the remaining/non-dismissed statements on September 25, 2018, *see, e.g.,* Complaint ¶¶274-275, and the evidence advanced or likely to be advanced by Defendants at class certification, summary judgment, and trial.

For instance, Defendants would have likely argued that they disclosed, prior to September 28, 2018, the existence of a potential or likely fire on site at the North Goonyella mine in Queensland, Australia, thus "warn[ing] investors of exactly the risk the plaintiffs claim was not disclosed." *Olkey* v. *Hyperion 1999 Term Tr., Inc.*, 98 F.3d 2, 5 (2d Cir. 1996).  Further, Defendants would have likely argued that their actions were fully consistent with and supportive of the genuine belief that they disclosed the fire as soon as they had confirmed its existence and scope.

With respect to proving that Defendants acted with the required intent to defraud or severe recklessness necessary to establish Defendants' scienter, Defendants likely would have argued, among other things, that they reasonably believed, after independent inquiry, that the smoke conditions and likely fire at the North Goonyella mine were under control and such conditions had been sufficiently disclosed to the market.

Furthermore, even if the hurdles to establishing liability were overcome, Lead Plaintiff would have confronted significant challenges in proving loss causation and damages.  Defendants would have likely argued that the alleged corrective disclosure on September 28, 2018, repackaged already-available information or failed to provide any correction of the alleged misstatements, given the robust risk warnings and cautionary statements by Defendants throughout the remaining class period.  If such arguments were accepted by the Court or a jury, in whole or part, they would have dramatically limited any potential recovery.

Lead Plaintiff consulted with an expert in damages and loss causation who has worked on numerous securities class action matters, and who analyzed class-wide damages in light of the facts and circumstances presented in the case and developed through the discovery process.  Again, after the MTD Order, only two statements and one corrective disclosure remained in the case.

Lead Plaintiff's expert has estimated that maximum damages attributable to that sole corrective disclosure in the remaining class period Lead Plaintiff defined as September 22, 2018 – September 28, 2018 were between $1 million and $13 million depending on the trading model and assumptions used.[5]   The Settlement represents approximately 35% of the highest end of this estimate of achievable damages.   Lead Plaintiff's expert also estimated that maximum damages attributable to a slightly shorter class period defined as September 25, 2018 – September 28, 2018 as between $663,000 and $10 million depending on the trading model and assumptions used.   The Settlement represents approximately 46% of this estimate of likely damages.

With respect to the Settlement Class Period, which is the originally pled class period of April 3, 2017 through October 28, 2019, Lead Plaintiff's expert has estimated that maximum damages attributable to the alleged fraud, using an Institutional and Proportional Two-Trader Model, were at least $900 million before netting pre-Class Period gains and before disaggregation of any stock price movement not attributable to the alleged fraud.   However, this "best case" scenario would be impossible to achieve as it does not disaggregate the non-fraud related causes of downward stock movement on the four alleged corrective disclosure dates in the originally pled class period.[6]   Lead Plaintiff's expert determined that the stock price declines on each of these dates would need to be disaggregated to remove the portion of the declines related to confounding non-fraud related information but, given the phase of the case when the Settlement was reached, Lead Plaintiff's expert had not yet run such a disaggregation analysis.

---

[5] These damage estimates assume that gains on pre-class period purchases accrued during the class period are removed or "netted."   *See* Samuel Francis, *Meet Two-Face: The Dualistic Rule 10b-5 and the Quandary of Offsetting Losses by Gains,* 77 FORDHAM L. REV. 3045, 3047 (2009) ("Courts emphasizing the compensation objective have taken a netting approach to damages that offsets gains and losses stemming from different transactions.").

[6] The corrective disclosure dates in the originally-pled class period were: (i) September 28, 2018; (ii) February 6, 2019; (iii) May 1, 2019; and (iv) October 29, 2019.

Lead Plaintiff's expert also considered other damage scenarios based on the factual record, Defendants' arguments, and risks related thereto.   If Lead Plaintiff successfully appealed the Court's dismissal of at least certain of the allegedly false and misleading statements post-fire (September 29, 2018 – October 28, 2019) at the mine — something Lead Plaintiff was seriously contemplating at the time of the Settlement — Lead Plaintiff's expert has estimated that maximum damages attributable Defendants' alleged fraud for the period September 22, 2018 through October 28, 2019, were approximately $158 million before disaggregation, and approximately $86 million after disaggregation.[7]   The Settlement represents approximately 5.4% of this estimate of likely recoverable disaggregated damages.

Although the Settlement and release covers the entire class period as originally pled, in order to provide the Defendants with "complete peace", the Plan of Allocation considers the strengths and weaknesses of the sustained and dismissed statements, and applies discounts to the recognized loss amounts for purchases during certain time periods.

Even the lowest of these percentages of recovery are similar to or above the range of recoveries that have received approval within this District.  *See, e.g.*, *In re Merrill Lynch & Co. Rsch. Reports Sec. Litig.*, No. 02-MDL 1484, 2007 WL 313474, at *10 (S.D.N.Y. Feb. 1, 2007) (approving $40.3 million settlement representing approximately 6.25% of estimated damages and noting was at the "higher end of the range of reasonableness of recovery in class actions securities litigations"); *Hicks v. Stanley*, No. 01 CIV. 10071 (RJH), 2005 WL 2757792, at *7 (S.D.N.Y. Oct. 24, 2005) (finding $10 million settlement representing 3.8% of plaintiffs' estimated damages within range of reasonableness).  *See also In re Patriot Nat'l, Inc. Sec. Litig.*, 828 F. App'x. 760,

---

[7] The Court's order dismissing statements in the longer period and narrowing the class period has not yet been challenged on appeal.  If no settlement had been reached, Lead Plaintiff contemplated appealing that portion of the MTD Order once a final judgment was entered.

762 (2d Cir. 2020) (affirming district court's approval of $6.5 million settlement representing 6.1% of the class's maximum potentially recoverable damages).

Courts in other jurisdictions have approved similar ranges of recovery in other securities class action settlements.  *See, e.g.*, *Howard v. Liquidity Servs. Inc*., No. CV 14-1183 (BAH), 2018 WL 4853898, at *5 (D.D.C. Oct. 5, 2018) (recovery of approximately 4% of the maximum realistic recoverable damages compared favorably with similar securities class-action settlements weighing in favor of approval); *Schuler v. Meds. Co*., No. CV 14-1149 (CCC), 2016 WL 3457218, at *8 (D.N.J. June 24, 2016) (recovery of approximately 4.0% of plaintiffs' estimated recoverable damages fell squarely within the range of previous settlement approvals); *In re Extreme Networks, Inc. Sec. Litig.*, No. 5:15-cv-04883-BLF (N.D. Cal. July 22, 2019) (ECF Nos. 182 & 183) (approving settlement representing recovery between approximately 3% and 7% of estimated damages); *Thorpe v. Walter Inv. Mgmt. Corp*., No. 14-cv-20880-UU, 2016 WL 10518902, at *3 (S.D. Fla. Oct. 17, 2016) (approving settlement representing 5.5% of best-case scenario); *Int'l Bhd. of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech., Inc.*, No. 3:09-cv-00419-MMD-WGC, 2012 WL 5199742, at *3 (D. Nev. Oct. 19, 2012) (approving settlement representing about 3.5% of estimated damages, noting that the "amount [was] within the median recovery in securities class actions"); Thus, the Settlement is a good outcome for the Settlement Class.

### 2.    The Effective Process for Distributing Relief to the Settlement Class

The Settlement, like most securities class action settlements, will be effectuated with the assistance of an established and experienced claims administrator.  The Claims Administrator will employ a well-tested protocol for the processing of claims in a securities class action.  Namely, a potential class member will submit, either by mail or online using the Claims Administrator's website, the Court-approved Claim Form.  Based on the trade information provided by Claimants,

the Claims Administrator will determine each claimant's eligibility to participate by, among other things, calculating their respective "Recognized Claims" based on the Court-approved Plan of Allocation, and ultimately determine each eligible Claimant's *pro rata* portion of the Net Settlement Fund. *See* Stipulation at ¶25. Lead Plaintiff's claim will be reviewed in the same manner. Claimants will be notified of any defects or conditions of ineligibility and be given the chance to contest the rejection of their claims. *Id*. at ¶31(d)-(e). Any claim disputes that cannot be resolved will be presented to the Court for a determination. *Id*.

After the Settlement reaches its Effective Date (*id*. at ¶40) and the claims process is completed, Authorized Claimants will be issued payments. If there are un-claimed funds after the initial distribution, and it would be feasible and economical to conduct a further distribution, the Claims Administrator will conduct a further distribution of remaining funds (less the estimated expenses for the additional distribution, taxes, and unpaid Notice and Administration Expenses). Additional distributions will proceed in the same manner until it is no longer economical to conduct further distributions. At this point, if there are unclaimed funds, Lead Plaintiff will request Court approval of a *cy pres* beneficiary. *Id*. at ¶ 28.

### 3. The Settlement Does Not Excessively Compensate Lead Counsel

As an initial matter, the reasonableness of attorneys' fees will be decided by the Court after Lead Counsel files a motion for attorneys' fees and Litigation Expenses. The Settlement does not contemplate any specific award. Lead Counsel will be compensated out of the Settlement Fund, under the common fund doctrine, and will not be compensated by Defendants. In connection with Lead Counsel's Fee and Expense Application, Lead Counsel will seek no more than 25% of the Settlement Fund, an amount that is within the range of percentages that courts in the Second Circuit have approved in class actions with comparable recoveries. *See, e.g., In re Helios and Matheson*

*Analytics, Inc. Sec. Litig.,* No. 18-cv-06965-JGK, ECF No. 141 (S.D.N.Y. May 13, 2021)

(awarding 25% of $8.25 million settlement); *Guevoura Fund Ltd. v. Sillerman*, No. 15-cv-07192,

ECF No. 201 (S.D.N.Y. Dec. 18, 2019) (awarding 33 1/3% of $6.75 million settlement); *City of*

*Providence,* 2014 WL 1883494, at *20 (awarding 33% of $15 million settlement).

Lead Counsel will also seek payment of Litigation Expenses incurred during the

prosecution of the Action, in an amount not to exceed $250,000.

### E.    Rule 23(e)(2)(D): Settlement Class Members Are Treated Equitably Relative to One Another

The Settlement does not improperly grant preferential treatment to either Lead Plaintiff or

any segment of the Settlement Class.  Rather, all members of the Settlement Class, including Lead

Plaintiff, will receive a distribution from the Net Settlement Fund pursuant to the Plan of

Allocation approved by the Court.[8]  The proposed plan was created by Lead Plaintiff's damages

expert and is consistent with Lead Plaintiff's theories of damages under the Exchange Act.  All

Settlement Class Members that were allegedly harmed as a result of the alleged fraud, and that

have an eligible claim pursuant to the Plan of Allocation, will receive their *pro rata* share of the

Net Settlement Fund based on their "Recognized Claim" under the plan.  Notice at ¶¶50-69.  *See,*

*e.g.*, *In re Merrill Lynch Tyco Rsch. Sec. Litig.* 249 F.R.D. 124, 135 (S.D.N.Y. 2008) ("A plan of

allocation that calls for the pro rata distribution of settlement proceeds on the basis of investment

loss is presumptively reasonable.").[9]

---

[8]  Lead Plaintiff will seek reimbursement of its reasonable costs and expenses (including lost wages) directly related to its participation in the Action, pursuant to the PSLRA.  This would not constitute preferential treatment. *See* 15 U.S.C. § 78u-4(a)(4) (reimbursement of a plaintiff's costs and expenses is explicitly contemplated, in addition to receiving a *pro rata* portion of the recovery).

[9]  Rule 23(e)(2)(C)(iv) also requires the disclosure of any agreement between the Parties in connection with the proposed Settlement.  Here, on August 2, 2022 the Parties entered into a

## II.    PRELIMINARY CERTIFICATION OF THE SETTLEMENT CLASS

For the reasons set forth in Lead Plaintiff's motion for class certification (ECF Nos. 66-69), Lead Plaintiff respectfully requests that the Court preliminarily certify the Settlement Class for purposes of the Settlement only, pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure.  The proposed Settlement Class, which has been stipulated to by the Parties, is "all persons and entities who or which purchased or otherwise acquired Peabody publicly traded common stock during the period from April 3, 2017 through October 28, 2019, inclusive, and were damaged thereby (the "Settlement Class")."[10]  *See* Stipulation at ¶1(ff).

Pursuant to Rule 23(a): (1) the Settlement Class is so numerous that joinder of all members is impracticable (ECF No. 67 at 8-9); (2) there are questions of law or fact common to the Settlement Class (*id*. at 9-10); (3) the claims or defenses of Lead Plaintiff are typical of the claims or defenses of the Settlement Class (*id*. at 10-11); and (4) Lead Plaintiff and Lead Counsel will fairly and adequately protect the interests of the Settlement Class (*id*. at 11-13).

---

settlement term sheet and on October 7, 2022, they entered into a confidential Supplemental Agreement Regarding Requests for Exclusion, (the "Supplemental Agreement").  Stipulation at ¶42. The Supplemental Agreement sets forth the conditions under which Defendants have the option to terminate the Settlement in the event that requests for exclusion from the Settlement Class exceed a certain agreed-upon threshold.  As is standard in securities class actions, the Supplemental Agreement is kept confidential in order to avoid incentivizing the formation of a group of opt-outs for the sole purpose of leveraging a larger individual settlement.  Pursuant to its terms, the Supplemental Agreement may be submitted to the Court *in camera* or under seal.  The Supplemental Agreement, Stipulation, and term sheet are the only agreements concerning the Settlement entered into by the Parties.

[10] Excluded from the Settlement Class are: (i) Defendants; (ii) members of the immediate families of the Individual Defendants; (iii) any person who was an officer or director of Peabody during the Settlement Class Period; (iv) any firm, trust, corporation, or other entity in which any Defendant has or had a controlling interest; (v) Peabody's employee retirement and benefit plan(s) and their participants or beneficiaries, to the extent they made purchases through such plan(s); and (vi) the legal representatives, affiliates, heirs, successors-in-interest, and/or assigns of any such excluded person or entity.

Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  The proposed Settlement Class meets this standard: (i) common questions of both fact and law predominate, given the presumptions of reliance under *Basic Inc. v. Levinson*, 485 U.S. 224, 241-42 (1988) or *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), (ECF No. 67 at 14-15); and (ii) a class action would be superior to other methods for the fair and efficient adjudication of the claims (*id.* at 23-25).

Courts within the Second Circuit have long acknowledged the propriety of certifying settlement classes. "Certification of a settlement class has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants."  *In re IMAX Sec. Litig.,* 283 F.R.D. 178, 186 (S.D.N.Y. 2012).  For the foregoing reasons, Lead Plaintiff respectfully requests that the Court preliminarily certify the Settlement Class for purposes of implementing the proposed Settlement.

## III.   THE PROPOSED NOTICE PROGRAM SHOULD BE APPROVED

The proposed Notice and Summary Notice, attached as Exhibits 1 and 3 to the proposed Preliminary Approval Order, would satisfy due process, the federal rules, and the PSLRA.  Rule 23(c)(2)(B) requires notice of the pendency of the class action to be "the best notice that is practicable under the circumstances." It must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).  Due process is satisfied if the notice "fairly apprise[s] the [prospective] members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings."  *Wal-Mart Stores, Inc.* 396 F.3d at 114.

Collectively, the proposed forms of notice here describe, *inter alia*: (i) the terms of the Settlement and the recovery; (ii) the reasons for the Settlement; (iii) the maximum attorneys' fees and expenses that may be sought; (iv) the procedures for requesting exclusion from the Settlement Class and objecting; (v) the procedure for submitting a claim; (vi) the proposed Plan of Allocation for distributing the settlement proceeds to the Settlement Class; and (vii) the date, time and place of the Settlement Hearing (which can be held in-person or remotely, at the Court's discretion). The Notice also satisfies the PSLRA's separate requirements by, *inter alia,* stating*:* (i) the amount of the Settlement determined in the aggregate and on an average per share basis; (ii) that the Parties do not agree on the average amount of damages per share that would be recoverable; (iii) that Lead Counsel intends to make an application for attorneys' fees and expenses (including the amount of such fees and expenses on an average per share basis); (iv) the names, telephone numbers, and addresses of Lead Counsel; and (v) the reasons why the Parties are proposing the Settlement.  15 U.S.C. §78u-4(a)(7)(A)-(F).

The proposed notice program uses a standard and well-established method in securities cases for notifying class members: individual notice by mail or email (to the extent provided), publication in *The Wall Street Journal*, a national newspaper focusing on investors, and dissemination over the internet using a wire service.  Upon entry of the Preliminary Approval Order, the Claims Administrator will mail or email the Notice and Claim Form to all Settlement Class Members who can be identified and located, using information provided by Peabody's transfer agent, as well as information provided by banks, brokers, and other nominees about their customers who may have eligible purchases.  The Notice and Claim Form will also be available on the Claims Administrator's website and Lead Counsel's website.

Lead Plaintiff also requests that the Court appoint SCS as the Claims Administrator to provide all notices approved by the Court, to process Claim Forms, and to administer the Settlement. SCS is a nationally recognized notice and claims administration firm that has successfully and efficiently administered hundreds of complex securities class action settlements. *See* Fox Decl. Ex. 3.

## IV.     PROPOSED SCHEDULE OF SETTLEMENT-RELATED EVENTS

Lead Plaintiff respectfully proposes the following schedule for Settlement-related events. The proposed schedule revolves around the date that the Court enters the Preliminary Approval Order and the date on which the Court schedules the final Settlement Hearing—which Lead Plaintiff requests be approximately 100 days from entry of the Order in order to allow recipients of the Notice sufficient time to act:

| Event | Proposed Timing |
|---|---|
| Deadline for mailing the Notice and Claim Form to Settlement Class Members (the "Notice Date") | *No later than 10 business days after entry of Preliminary Approval Order.* |
| Deadline for publishing the Summary Notice | *Within 14 calendar days of the Notice Date.* |
| Deadline for filing motions in support of final approval of the Settlement, Plan of Allocation, and Lead Counsel's application for attorneys' fees and expenses | *No later than 35 calendar days before the Settlement Hearing.* |
| Deadline for receipt of requests for exclusion or objections | *Received no later than 21 calendar days before the Settlement Hearing.* |
| Deadline for filing reply papers | *No later than 7 calendar days before the Settlement Hearing.* |
| Deadline for submitting Claim Forms | *Seven (7) calendar days before the Settlement Hearing.* |

| Event | Proposed Timing |
|---|---|
| Settlement Hearing | *At the Court's convenience, approximately 100 days from entry of the Preliminary Approval Order.  The hearing can be held either in-person or remotely, in the discretion of the Court.  Any scheduling updates will be posted on the Claims Administrator's website and Lead Counsel's website.* |

## <u>CONCLUSION</u>

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court enter the proposed Preliminary Approval Order, submitted herewith, which will: (i) preliminarily approve the Settlement; (ii) approve the proposed manner and forms of notice to the Settlement Class; (iii) appoint SCS as Claims Administrator; (iv) set a date and time for the Settlement Hearing to consider final approval of the Settlement and related matters, and grant such other and further relief as may be required.

DATED: October 7, 2022

**LABATON SUCHAROW LLP**

 */s/ Christine M. Fox*
Christine M. Fox
Mark Willis
James Fee
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
Emails: cfox@labaton.com
       mwillis@labaton.com
       jfee@labaton.com

*Counsel for Lead Plaintiff Oregon Public Employees Retirement Fund*

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 7, 2022, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all registered ECF participants.

/s/    *Christine M. Fox*    
CHRISTINE M. FOX