**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- x
                                                    :   Case No. 1:20-cv-08024-PKC
IN RE PEABODY ENERGY CORP.                          :
SECURITIES LITIGATION                               :
                                                    :
                                                    :
                                                    :
                                                    :
---------------------------------------------------------------- x

**MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S**
**MOTION FOR AN AWARD OF ATTORNEYS' FEES**
**<u>AND PAYMENT OF EXPENSES</u>**

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................1

ARGUMENT .....................................................................................................................3

I.      THE REQUESTED FEE WOULD BE REASONABLE UNDER EITHER THE
        PERCENTAGE OR LODESTAR METHOD ....................................................................3

        A.      The Requested Attorneys' Fee Would Be Reasonable Under the
                Percentage-of-the-Fund Method ..............................................................4

        B.      Fees Awarded in Comparable Cases Within this District.........................5

        C.      The Requested Attorneys' Fee Would Be Reasonable Under the Lodestar
                Method .....................................................................................................6

II.     THE REQUESTED FEE IS FAIR AND REASONABLE WHEN APPLYING
        THE SECOND CIRCUIT'S FACTORS ............................................................................9

        A.      Lead Counsel Has Devoted Significant Time and Labor to the Action .................9

        B.      The Magnitude and Complexity of the Action Support the Requested Fee .........10

        C.      The Risks of the Litigation Support the Requested Fee ........................11

        D.      The Quality of Lead Counsel's Representation Supports the Requested
                Fee...........................................................................................................12

        E.      The Requested Fee in Relation to the Settlement ..................................14

        F.      Public Policy Considerations Support the Requested Fee .....................14

III.    THE REACTION OF THE SETTLEMENT CLASS TO DATE SUPPORTS THE
        REQUESTED FEE .....................................................................................................15

IV.     LEAD COUNSEL'S EXPENSES ARE REASONABLE AND WERE
        NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED .................16

V.      LEAD PLAINTIFF SHOULD BE AWARDED ITS REQUESTED
        REIMBURSEMENT UNDER 15 U.S.C. §78u-4(a)(4) ....................................17

CONCLUSION....................................................................................................................18

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Adelphia Commc'ns Corp. Sec. and Derivative Litig.*,
  MDL No. 03-1529, 2006 WL 3378705 (S.D.N.Y. Nov. 16, 2006),
  *aff'd*, 272 F. App'x. 9 (2d Cir. 2008)................................................................14

*In re Am. Bank Note Holographics, Inc. Sec. Litig.*,
  127 F. Supp. 2d 418 (S.D.N.Y. 2001).............................................................11

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
  472 U.S. 299 (1985)...........................................................................................3

*In re Bayer AG Sec. Litig.*,
  No. 03-1546, 2008 WL 5336691 (S.D.N.Y. Dec. 15, 2008)............................11

*In re Bear Stearns Cos. Sec. Derivative & ERISA Litig.*,
  909 F. Supp. 2d 259 (S.D.N.Y. 2012)................................................................7

*In re BRF S.A. Sec. Litig.*,
  No. 1:18-CV-02213-PKC, 2020 WL 10618214 (S.D.N.Y. Oct. 23, 2020).........6, 18

*In re Bristol-Myers Squibb Sec. Litig.*,
  361 F. Supp. 2d 229 (S.D.N.Y. 2005)................................................................6

*In re China Sunergy Sec. Litig.*,
  No. 07-cv-7895, 2011 WL 1899715 (S.D.N.Y. May 13, 2011)........................16

*City of Providence v. Aeropostale Inc.*,
  No. 11-7132, 2014 WL 1883494 (S.D.N.Y. May 9, 2014),
  *aff'd, Arbuthnot v. Pierson,* 607 F. App'x. 73 (2d Cir. 2015).....................4, 10, 11

*City of Warren Police and Fire Ret. Sys. v. World Wrestling Ent.*, *Inc.*,
  No. 20-cv-02031, 2021 WL 2736135 (S.D.N.Y. June 30, 2021)........................18

*In re Colgate-Palmolive Co. ERISA Litig.*,
  36 F. Supp. 3d 344 (S.D.N.Y. 2014)..................................................................8

*In re Comverse Tech., Inc. Sec. Litig.*,
  No. 06-cv-1825, 2010 WL 2653354 (E.D.N.Y. June 24, 2010)..................8, 11, 14

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
  343 F. Supp. 3d 394 (S.D.N.Y. Nov. 26, 2018)..................................................6

*In re FLAG Telecom Holdings, Ltd. Sec. Litig.*,
  No. 02-cv-3400, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)..........................8

*Fogarazzo v. Lehman Bros. Inc.*,
   No. 03 Civ. 5194 (SAS), 2011 WL 671745 (S.D.N.Y. Feb. 23, 2011) ....................................5

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) .........................................................................................12

*Goldberger v. Integrated Res, Inc.*,
   209 F.3d 43 (2d Cir. 2000)................................................................................................4, 9

*In re Hi-Crush Partners L.P. Sec. Litig.*,
   No. 12-CIV-8557 CM, 2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014)...................................5

*Hicks v. Morgan Stanley, et al.*,
   No 01-cv-10071, 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005)...................................3, 5, 15

*Lea v. Tal Educ. Grp.*,
   No. 18-CV-5480 (KHP), 2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021) ..............................13

*Luciano v. Olsten Corp.*,
   109 F.3d 111 (2d Cir. 1997) ................................................................................................7

*Maley v. Del Global Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002) ................................................................................15

*In re Marsh & McLennan Inc. Sec. Litig.*,
   No. 04-8144, 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) .......................................7, 8, 18

*McDaniel v. Cnty. of Schenectady*,
   595 F.3d 411 (2d Cir. 2010)...............................................................................................3, 4

*Missouri v. Jenkins*,
   491 U.S. 274 (1989).............................................................................................................7

*In re Patriot Nat'l, Inc. Sec. Litig.*,
   828 F. App'x. 760 (2d Cir. 2020) .......................................................................................13

*In re Petrobras Sec. Litig.*,
   317 F. Supp. 3d 858 (S.D.N.Y. 2018).................................................................................18

*In re PPDAI Grp. Inc. Sec. Litig.*,
   No. 18 cv 6716, 2022 WL 198491 (E.D.N.Y. Jan. 21, 2022)..............................................13

*Savoie v. Merchs. Bank*,
   166 F.3d 456 (2d Cir. 1999)................................................................................................4

*In re Signet Jewelers Ltd. Sec. Litig.*,
   No. 16 cv 06728, 2020 WL 4196468 (S.D.N.Y. July 21, 2020) ...........................................10

*In re Telik, Inc. Sec. Litig.*,
    576 F. Supp. 2d 570 (S.D.N.Y. 2008) ................................................................. 4, 5

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) .......................................................................................... 3

*Vaccaro v. New Source Energy Partners L.P.*,
    No. 15 CV 8954 (KMW), 2017 WL 6398636 (S.D.N.Y. Dec. 14, 2017) .................. 13, 14

*In re Veeco Instruments Inc. Sec. Litig.*,
    MDL No. 05-1695, 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) ............................ 12

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005) ................................................................................ 4, 6

**Docketed Cases**

*Ark. Tchr. Ret. Sys. v. Bankrate*,
    No. 13-cv-7183, slip op. (S.D.N.Y Nov. 25, 2014) ............................................... 8

*In re Celestica Inc. Sec. Litig.*,
    No. 07-cv-00312-GBD, slip op. (S.D.N.Y. July 28, 2015) ..................................... 6

*In re Mindbody Inc. Sec. Litig.*,
    No. 1:19-cv-08331-VEC, slip op. (S.D.N.Y Oct. 27, 2022) .................................. 5

*In re NQ Mobile Inc. Sec. Litig.*,
    No. 1:13-cv-07608, slip op. (S.D.N.Y. Mar. 11, 2016) ......................................... 5

*In re Salomon Analyst Metromedia Litig.*,
    No 02-7966, slip op. (S.D.N.Y. Feb. 27, 2009) ................................................... 6

*In re Silvercorp Metals Inc. Sec. Litig.*,
    No. 12-cv-09456-JSR, slip op. (S.D.N.Y. Feb. 13, 2015) ..................................... 18

*Stein v. Eagle Bancorp, Inc., et al.*,
    Case No. 1:19-cv-06873-LGS, slip op. (S.D.N.Y. Feb 10, 2022) .......................... 18

*The Penn. Ave. Funds v. INYX Inc.*,
    No. 08-CV 6857-(PKC), slip op. (S.D.N.Y. May 5, 2012) ................................... 5

*In re Van Der Moolen Holding N.V. Sec. Litig.*,
    No. 1:03-CV-8284 (RWS), slip op. (S.D.N.Y. Dec. 6, 2006) ................................ 5

**Statutes**

15 U.S.C. §78u-4(a)(4) ............................................................................................ 17

Court-appointed Lead Counsel, Labaton Sucharow LLP ("Labaton Sucharow"), respectfully submits this memorandum of law in support of its motion for an award of attorneys' fees in the amount of 25% of the Settlement Fund. Lead Counsel also seeks payment of $199,505.48 in Litigation Expenses that Lead Counsel reasonably incurred in prosecuting the Action, as well as $9,197.60 in reimbursement to Lead Plaintiff Oregon Public Employees Retirement Fund ("Lead Plaintiff" or "OPERF") directly related to its representation of the Settlement Class, as authorized by the Private Securities Litigation Reform Act of 1995 (the "PSLRA").[1]

## PRELIMINARY STATEMENT

The proposed Settlement, if approved by the Court, will resolve this case in its entirety in exchange for a $4.625 million cash payment pursuant to the terms of the Stipulation. The Settlement brings to a close, with a favorable result, nearly two years of vigorous litigation, including motion practice, discovery, and robust arm's-length negotiations between counsel. The Settlement will provide meaningful compensation to the Settlement Class while avoiding the delay and significant risks of continued litigation.

The benefits of the Settlement are clear when weighed against the risk that the Settlement Class might recover less (or nothing) if litigation continued. Defendants had substantial defenses to liability. Lead Plaintiff would have faced significant hurdles in connection with ultimately

---

[1] Lead Counsel is simultaneously submitting the Declaration of Christine M. Fox in Support of (I) Final Approval of Class Action Settlement and Plan of Allocation and (II) an Award of Attorneys' Fees and Payment of Expenses (the "Fox Declaration") (cited as "¶"). Capitalized terms have the meanings ascribed to them in the Fox Declaration or the Stipulation and Agreement of Settlement (ECF No. 74-1) (the "Stipulation").

All exhibits referenced below are attached to the Fox Declaration. For clarity, citations to exhibits that themselves have attached exhibits will be referenced as "Ex. ___ - ___." The first numerical reference is to the designation of the entire exhibit attached to the Declaration and the second alphabetical reference is to the exhibit designation within the exhibit itself.

proving materiality, falsity, scienter, and reliance given the nature of the few remaining/non-dismissed alleged misstatements and omissions, and the arguments advanced or likely to be advanced by Defendants at class certification, summary judgment, and trial.  Finally, if Lead Plaintiff succeeded in establishing both Defendants' liability and loss causation at trial, Defendants likely intended to pursue appeals, which would have further delayed and threatened any recovery.  The Settlement eliminates these risks while providing a very favorable recovery to the Settlement Class.

In the face of these challenges—as well as the fully contingent nature of the case—Lead Counsel devoted substantial resources to prosecuting this Action against highly skilled opposing counsel.  Among the other work detailed in the Fox Declaration, Lead Counsel: (i) conducted a robust international investigation and filed a detailed amended complaint, which involved identifying approximately 168 potential witnesses, contacting 134 of them, and interviewing 19 former Peabody employees or government regulators in Australia that were familiar with the Company's operations at the North Goonyella Mine (the "NGM") and others with potentially relevant knowledge; (ii) consulted with an expert concerning longwall mining at the NGM and longwall mining safety practices in general; (iii) researched and drafted an opposition to Defendants' motion to dismiss the Complaint; (iv) engaged in extensive meet and confer sessions regarding the Parties' multiple discovery requests; (v) defended the deposition of Lead Plaintiff's representative; (vi) moved for class certification; and (vii) engaged in extensive mediation efforts overseen by David Murphy of Phillips ADR, which included the preparation of mediation briefs, a full-day mediation session, and subsequent negotiations of the Stipulation.  *See generally* Fox Decl. at §§ III - V.

Against this backdrop, Lead Counsel requests a fee of 25% of the Settlement Fund, which would represent a negative lodestar "multiplier" of approximately 0.58, *i.e.*, only 58% of Lead Counsel's lodestar, payment of Lead Counsel's Litigation Expenses in the amount of $199,505.48, and reimbursement of $9,197.60 to Lead Plaintiff for the time and resources it dedicated to representing the class.  As demonstrated below, the fee request is well within the range of attorneys' fees typically awarded in securities class actions of this size, and the fee and expense requests are well supported by both case law and the facts of this case.

For the following reasons, Lead Counsel respectfully submits that its efforts and the results achieved in this Action justify the requested fees and expenses.

## ARGUMENT

### I. THE REQUESTED FEE WOULD BE REASONABLE UNDER EITHER THE PERCENTAGE OR LODESTAR METHOD

The Supreme Court has emphasized that private securities actions are "an essential supplement to criminal prosecutions and [SEC] civil enforcement actions…." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007); *accord Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (private securities actions provide "a most effective weapon in the enforcement of the securities laws and are a necessary supplement to [SEC] action").  Compensating counsel for bringing these actions is important because "[s]uch actions could not be sustained if plaintiffs' counsel were not to receive remuneration from the settlement fund for their efforts on behalf of the class." *Hicks v. Morgan Stanley*, *et al.*, No 01-cv-10071, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005).  In the Second Circuit, courts "may award attorneys' fees in common fund cases under either the 'lodestar' method or the 'percentage of the fund' method." *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010). "[W]hether calculated pursuant to the lodestar or the percentage method, the fees awarded in common fund

cases may not exceed what is 'reasonable' under the circumstances." *Goldberger v. Integrated Res, Inc.*, 209 F.3d 43, 47 (2d Cir. 2000).

In this case, the requested fee award—25% of the Settlement Fund is well supported under either the "percentage" or "lodestar" method.

### A.   The Requested Attorneys' Fee Would Be Reasonable Under the Percentage-of-the-Fund Method

Lead Counsel respectfully submits that the Court should award a fee based on a percentage of the common fund obtained.  Courts have recognized that, in addition to providing just compensation, "awards of fair attorneys' fees from a common fund should also serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future alleged misconduct of a similar nature." *City of Providence v. Aeropostale Inc.*, No. 11-7132, 2014 WL 1883494, at *11 (S.D.N.Y. May 9, 2014) *aff'd*, *Arbuthnot v. Pierson,* 607 F. App'x. 73 (2d Cir. 2015).

The Second Circuit has approved the percentage method, recognizing that the "trend in this Circuit is toward the percentage method" and that the method "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation."  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *see also*, *Goldberger,* 209 F.3d at 48-50 (either percentage of fund method or lodestar method may be used to determine fees, but noting the "lodestar method proved vexing" and results in "inevitable waste of judicial resources"); *Savoie v. Merchs. Bank*, 166 F.3d 456, 460 (2d Cir. 1999) ("percentage-of-the-fund method has been deemed a solution to certain problems that may arise when the lodestar method is used in common fund cases"); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 586 & n.7 (S.D.N.Y. 2008) ("[T]here is a strong consensus – both in

this Circuit and across the country – in favor of awarding attorneys' fees in common fund cases as a percentage of the recovery.").[2]

### B.       Fees Awarded in Comparable Cases Within this District

The 25% fee requested by Lead Counsel is well within the range of percentage fees awarded within the Second Circuit in securities class actions of a similar size.  *See, e.g., The Penn. Ave. Funds v. INYX Inc.,* No. 08-CV 6857-(PKC), slip op. at 5 (S.D.N.Y. May 5, 2012) (awarding 33 1/3% of $1.1 million settlement) (J. Castel) (Ex. 5)[3]; *In re Hi-Crush Partners L.P. Sec. Litig.,* No. 12-CIV-8557 CM, 2014 WL 7323417, at *12 (S.D.N.Y. Dec. 19, 2014) (awarding 33 1/3% of $3.8 million settlement and noting that "[i]n this Circuit, courts routinely award attorneys' fees that run to 30% and even a little more of the amount of the common fund"); *Fogarazzo v. Lehman Bros. Inc*., No. 03 Civ. 5194 (SAS), 2011 WL 671745, at *4 (S.D.N.Y. Feb. 23, 2011) (awarding 33.3% of $6.75 million settlement); *In re Van Der Moolen Holding N.V. Sec. Litig*., No. 1:03-CV-8284 (RWS), slip op. at 2 (S.D.N.Y. Dec. 6, 2006) (awarding 33 1/3% of $8 million settlement) (Ex. 5); *In re Silvercorp Metals, Inc. Sec. Litig*., No. 12-cv-9456 (JSR), slip. op. at 9 (S.D.N.Y. Feb. 13, 2015) (awarding 25% of $14 million settlement) (Ex. 5); *In re NQ Mobile Inc. Sec. Litig*., No. 1:13-cv-07608, slip op. at 1 (S.D.N.Y. Mar. 11, 2016) (awarding 30% of $5.1 million settlement) (Ex. 5); *In re Mindbody Inc. Sec. Litig.*, No. 1:19-cv-08331-VEC, slip op. at 2 (S.D.N.Y Oct. 27, 2022) (awarding 30% of $9.75 million settlement) (Ex. 5); *Hicks*, 2005 WL 2757792, at *9 (awarding 30% of $10 million settlement);

---

[2] All internal quotations and citations are omitted unless otherwise stated.

[3] All unreported slip opinions are submitted in a compendium of cases, which is Exhibit 5 to the Fox Declaration.

Awards of 25% or more are also regularly awarded in cases with larger settlements. *See, e.g, In re BRF S.A. Sec. Litig.*, No. 1:18-CV-02213-PKC, 2020 WL 10618214, at *1 (S.D.N.Y. Oct. 23, 2020) (awarding 25% of $40 million settlement) (J. Castel); *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394 (S.D.N.Y. Nov. 26, 2018) (awarding 25% of $35 million settlement); *In re Salomon Analyst Metromedia Litig.*, No 02-7966, slip op. at 1 (S.D.N.Y. Feb. 27, 2009) (27% fee of $35 million settlement) (Ex. 5); *In re Celestica Inc. Sec. Litig.*, No. 07-cv-00312-GBD, slip op. at 2 (S.D.N.Y. July 28, 2015) (awarding 30% fee of $30 million settlement) (Ex. 5).

Additionally, a recent analysis by NERA Economic Consulting of securities class action settlements found that from 2012-2021, the median attorneys' fee award for settlements of between $5 million and $10 million was 30%. *See* Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review* (NERA 2022), Ex. 6 at 27.

### C. The Requested Attorneys' Fee Would Be Reasonable Under the Lodestar Method

To ensure the reasonableness of a fee awarded under the percentage-of-the-fund method, the Second Circuit encourages district courts to "cross-check" the proposed award against counsel's lodestar. *Wal–Mart*, 396 F.3d at 123 (quoting *Goldberger*, 209 F.3d at 50); *see also In re Bristol-Myers Squibb Sec. Litig.*, 361 F. Supp. 2d 229, 233 (S.D.N.Y. 2005) ("Typically, courts utilize the percentage method and then 'cross-check' the adequacy of the resulting fee by applying the lodestar method.").

Here, Lead Counsel spent more than 2,900 hours of attorney and other professional staff time litigating the case from inception through December 15, 2022. *See* Ex. 3-A. Lead Counsel's lodestar, derived by multiplying the hours spent by each attorney and other

professional by their current hourly rates, is $1,991,873.00. *Id.* Lead Counsel's lodestar is based on counsel's current hourly rates, which are comparable to those in the legal community for similar services by attorneys of reasonably comparable skill, experience, and reputation.[4] "[P]erhaps the best indicator of the market rate in the New York area for plaintiffs' counsel in securities class actions is to examine the rates charged by New York firms that *defend* class actions on a regular basis." *Telik*, 576 F. Supp.2d at 589; *Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997) ("[t]he 'lodestar' figure should be in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation"). Lead Counsel's rates here range from $875 to $1,300 for partners, $625 to $850 for of counsels, $450 to $575 for associates, and $400 for a staff attorney. *See* ¶ 93; Ex. 3-A. Sample defense firm rates in 2021, gathered by Labaton Sucharow annually from bankruptcy court filings nationwide, often exceeded these rates. ¶ 93; Ex. 4.

The requested fee of 25% of the Settlement Fund, *i.e.,* $1,156,250, therefore represents a *negative* fractional multiplier of 0.58 (58%) of the total lodestar of Lead Counsel. A 0.58 "multiplier" is well below the parameters used throughout district courts in the Second Circuit and is additional evidence that the requested fee is reasonable. *See*, *e.g.*, *In re Bear Stearns Cos. Sec. Derivative & ERISA Litig.*, 909 F. Supp. 2d 259, 271 (S.D.N.Y. 2012) (approving fee with a negative multiplier and noting that the negative multiplier was a "strong indication of the reasonableness of the [requested] fee"); *In re Marsh & McLennan Inc. Sec. Litig.*, No. 04-8144, 2009 WL 5178546, at *20 (S.D.N.Y. Dec. 23, 2009) (reasoning that where the multiplier is

---

[4] The Supreme Court and other courts have held that the use of current rates is proper since such rates compensate for inflation and the loss of use of funds. *See Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989).

negative, the lodestar cross-check "unquestionably supports the requested percentage fee award.").

Fees representing multiples above a lodestar are frequently awarded to reflect the contingency risk and other relevant enhancement factors. *See In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, No. 02-cv-3400, 2010 WL 4537550, at \*26 (S.D.N.Y. Nov. 8, 2010) ("[A] positive multiplier is typically applied to the lodestar in recognition of the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors[.]"); *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-cv-1825, 2010 WL 2653354, at \*5 (E.D.N.Y. June 24, 2010) ("Where, as here, counsel has litigated a complex case under a contingency fee arrangement, they are entitled to a fee in excess of the lodestar[.]").  Within the Second Circuit, lodestar multiples greater than 1.5 are regularly awarded.  *See, e.g., Walmart Stores Inc. v. Visa USA Inc.*, 396 F. 3d 96, 123 (2d Cir. 2005) (upholding a multiplier of 3.5 as reasonable on appeal); *Ark. Tchr. Ret. Sys. v. Bankrate*, No. 13-cv-7183, slip op. at 2 (S.D.N.Y Nov. 25, 2014) (Ex. 5) (awarding 1.8 multiplier); *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 347, 353 (S.D.N.Y. 2014) (awarding 25% of $45.9 million settlement, equating to multiplier of 5.2).

Here, Lead Counsel carefully and efficiently staffed the Action from the beginning, and litigated the case with just one main partner, Christine Fox.  Other partners were involved, but only at particular stages of the case, such as lead plaintiff appointment or settlement, consistent with their areas of expertise.  Fox Decl. ¶ 91; Ex. 3-A.  The result of this staffing by Lead Counsel was that associates and of counsel with lower hourly rates handled the case on a day-to-day basis, as opposed to more expensive partners.

Additional work will be required of Lead Counsel on an ongoing basis, including: correspondence with Settlement Class Members; preparation for, and participation in, the final approval hearing; supervising the claims administration process being conducted by the Claims Administrator; and supervising the distribution of the Net Settlement Fund to Settlement Class Members who have submitted valid Claim Forms.   However, Lead Counsel will not seek payment for this additional work.

For all these reasons, the lodestar "cross-check" supports the reasonableness of the requested fee.

\*       \*       \*

In sum, Lead Counsel's requested fee award is well within the range of what courts regularly award in comparable class actions, whether calculated as a percentage of the fund or in relation to Lead Counsel's lodestar.

## II.     THE REQUESTED FEE IS FAIR AND REASONABLE WHEN APPLYING THE SECOND CIRCUIT'S FACTORS

The Second Circuit has set forth the following criteria that courts should consider when reviewing a request for attorneys' fees in a common fund case, whether under the percentage approach or the lodestar multiplier approach:

> (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

*Goldberger*, 209 F.3d at 50.   As discussed below, these factors and the analyses above demonstrate that Lead Counsel's requested fee would be reasonable.

### A.     Lead Counsel Has Devoted Significant Time and Labor to the Action

The substantial time and effort expended by Lead Counsel in prosecuting the Action and achieving the Settlement support the requested fee.   As set forth in greater detail in the Fox

Declaration, Lead Counsel, among other things: (i) conducted a comprehensive international investigation of the claims and potential claims against Peabody and the other Defendants, including conducting 19 interviews of potential witnesses (including former Peabody employees (¶¶ 19-23); (ii) researched and drafted a detailed amended complaint (*id.*); (iii) opposed Defendants' motion to dismiss, which the Court granted in part and denied in part (¶¶ 24-34); (iv) moved for class certification (¶¶ 36-39); (v) engaged in discovery, including numerous meet and confer sessions regarding the Parties' productions and the review of approximately 1,100 documents produced by Defendants (¶¶ 40-45); (vi) consulted with experts on longwall mining operations and safety protocols, as well as market efficiency, loss causation, and damages (¶¶ 20, 37, 73-75); (vii) defended the deposition of Lead Plaintiff's representative, Brian de Haan (¶ 45); and (viii) engaged in extensive mediation efforts overseen by an experienced mediator, that included the preparation of mediation briefs and a full-day mediation session (¶¶ 46-48).

As noted above and discussed further in the Fox Declaration, Lead Counsel expended more than 2,900 hours prosecuting the Action with a lodestar value of $1,991,873.00. *See* Ex. 3-A.  At all times, Lead Counsel took care to staff the matter efficiently and to avoid unnecessary duplication of effort.

**B.**  **The Magnitude and Complexity of the Action Support the Requested Fee**

The magnitude and complexity of the Action also support the fee request. Courts regularly recognize that securities class action litigation is "notably difficult and notoriously uncertain." *City of Providence,* 2014 WL 1883494, at \*5; *In re Signet Jewelers Ltd. Sec. Litig.,* No. 16 cv 06728, 2020 WL 4196468, at \*4 (S.D.N.Y. July 21, 2020) ("securities class actions are generally complex and expensive to prosecute").

As detailed in the Fox Declaration, this Action raised difficult questions concerning— among other things—loss causation, falsity, scienter, and materiality within the sphere of

longwall mining operations and safety protocols, among other things.  Prosecuting the class's claims required expertise, skill and dedication, including extensive expert analysis across multiple fields.  Accordingly, the magnitude and complexity of the Action support the conclusion that the requested fee is fair and reasonable.  *See City of Providence*, 2014 WL 1883494, at *16 ("[T]he complex and multifaceted subject matter involved in a securities class action such as this supports the fee request.").

C.       **The Risks of the Litigation Support the Requested Fee**

The risks associated with this contingency fee case also support the requested fee. "Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation."  *Comverse*, 2010 WL 2653354, at *5; *see also In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418, 433 (S.D.N.Y. 2001) (it is "appropriate to take [contingent-fee] risk into account in determining the appropriate fee.").

Although Lead Plaintiff and Lead Counsel believe that the remaining omissions and misstatements left in the case supported strong claims of securities fraud, Lead Plaintiff still faced the burdens of establishing liability arising from these statements in connection with summary judgment.  This is in addition to the substantial burdens of class certification and prevailing at trial, as well as in likely appeals – a process that could possibly extend for years and might lead to a smaller recovery, or no recovery at all.  The contours of the ultimate class and actionable misstatements could have compromised Lead Plaintiff's ability to succeed at trial and obtain a larger judgment for the class.  *See In re Bayer AG Sec. Litig.*, No. 03-1546, 2008 WL 5336691, at *5 (S.D.N.Y. Dec. 15, 2008) (noting the "difficulty of establishing loss causation [] and the difficulty in proving that Defendants acted with scienter, militate in favor of fee awards").

The Parties were deeply divided on virtually every issue in the litigation, as detailed in the Fox Declaration at Section VII. and the accompanying Memorandum of Law in Support of Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation ("Settlement Brief"), and there was no guarantee Lead Plaintiff's position would prevail.  If Defendants had succeeded with respect to any of their defenses, Lead Plaintiff and the class would have recovered nothing or far less than the Settlement Amount.

In the face of many uncertainties, Lead Counsel undertook this case on a wholly contingent basis, knowing that the litigation would require the devotion of substantial time and expense with no guarantee of compensation.  ¶¶ 98-104.  Lead Counsel's assumption of this contingency fee risk strongly supports the requested fee.  *See FLAG Telecom*, 2010 WL 4537550, at *27 ("Courts in the Second Circuit have recognized that the risk associated with a case undertaken on a contingent fee basis is an important factor in determining an appropriate fee award.").

### D.      The Quality of Lead Counsel's Representation Supports the Requested Fee

The quality of the representation by Lead Counsel is another important factor that supports the reasonableness of the requested fee.  Lead Counsel respectfully submits that the quality of its representation is best evidenced by the progress of the litigation and the quality of the result achieved.  *See, e.g.*, *In re Veeco Instruments Inc. Sec. Litig.*, MDL No. 05-1695, 2007 WL 4115808, at *7 (S.D.N.Y. Nov. 7, 2007); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 467 (S.D.N.Y. 2004).  Furthermore, Lead Counsel is a nationally recognized leader in the field of securities class action litigation and has substantial experience litigating and trying securities class actions in courts throughout the country.  ¶ 96; Ex. 3-C.  The attorneys who were principally responsible for prosecuting this case relied upon their skill to develop and implement

sophisticated strategies to overcome myriad obstacles raised by Defendants throughout the litigation.

The result obtained for the Settlement Class in this case is favorable, particularly when viewed in light of the serious risks of continued litigation. The Settlement represents approximately 35% of the highest estimate of likely achievable damages ($1 million to $13.3 million), using the post motion to dismiss class period of September 22, 2018 through September 28, 2018, and assuming Lead Plaintiff prevailed in proving liability for the few remaining misstatements, but (i) assuming no non-fraud related reasons for the price decrease on September 28, 2018; and (ii) before netting gains on pre-class period purchases.  Using a slightly shorter class period of September 25, 2018 to September 28, 2018, Lead Plaintiff's expert has estimated maximum damages of between $663,000 and $10 million depending on the trading assumptions used, making the Settlement a recovery of 46% of estimated damages.  *See* Fox Decl. ¶ 75 and Settlement Brief at §I.E.2(c).

Since the passage of the PSLRA, courts have regularly approved settlements that recover smaller percentages of damages.  *See, e.g., Lea v. Tal Educ. Grp.,* No. 18-CV-5480 (KHP), 2021 WL 5578665, at *10 (S.D.N.Y. Nov. 30, 2021) (approving $7.5 million settlement representing 5.3% of maximum estimated damages); *In re PPDAI Grp. Inc. Sec. Litig.,* No. 18 cv 6716, 2022 WL 198491, at *12 (E.D.N.Y. Jan. 21, 2022) (approving $9 million settlement representing 6.4% of aggregate damages and noting that the amount is within a reasonable range); *In re Patriot Nat'l, Inc. Sec. Litig.*, 828 F. App'x. 760, 762 (2d Cir. 2020) (affirming district court's approval of settlement representing 6.1% of the class's maximum potentially recoverable damages); *Vaccaro v. New Source Energy Partners L.P.*, No. 15 CV 8954 (KMW), 2017 WL 6398636, at *6 (S.D.N.Y. Dec. 14, 2017) (approving settlement representing 6.5% of the maximum

recoverable damages and noting that the settlement amount is "in line with other settlements in securities class actions").

The quality of Lead Counsel's representation is further demonstrated by the fact that this substantial recovery was obtained after opposing an aggressive defense by highly skilled attorneys at Cravath Swaine & Moore LLP.  Courts recognize that the strength of Lead Counsel's opposition should be considered in assessing its performance.  *See, e.g.*, *Veeco*, 2007 WL 4115808, at *7 (among factors supporting 30% fee award was that defendants were represented by "one of the country's largest law firms"); *In re Adelphia Commc'ns Corp. Sec. and Derivative Litig.*, MDL No. 03-1529, 2006 WL 3378705, at *3 (S.D.N.Y. Nov. 16, 2006) ("The fact that the settlements were obtained from defendants represented by 'formidable opposing counsel from some of the best defense firms in the country' also evidences the high quality of lead counsels' work."), *aff'd*, 272 F. App'x. 9 (2d Cir. 2008).

### E.   The Requested Fee in Relation to the Settlement

"When determining whether a fee request is reasonable in relation to a settlement amount, 'the court compares the fee application to fees awarded in similar securities class-action settlements of comparable value.'" *Comverse*, 2010 WL 2653354, at *3.  As discussed in Section I, *supra*, the requested fee is well within the range of percentage fees that this Court and other courts have awarded in comparable cases and, accordingly, the fee requested is reasonable in relation to the Settlement.

### F.   Public Policy Considerations Support the Requested Fee

A strong public policy favors rewarding firms for bringing successful securities litigation. *See FLAG Telecom*, 2010 WL 4537550, at *29 (if the "important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks

they undertook"); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 373 (S.D.N.Y. 2002) ("In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered."); *Hicks*, 2005 WL 2757792, at *9 ("To make certain that the public is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding."). This factor supports Lead Counsel's fee and expense application.

## III.   THE REACTION OF THE SETTLEMENT CLASS TO DATE SUPPORTS THE REQUESTED FEE

The reaction of the Settlement Class to date also supports the fee request. Through December 30, 2022, the Claims Administrator has emailed or mailed 33,243 copies of the Notice to potential Settlement Class Members and nominees informing them that, among other things, Lead Counsel intended to apply to the Court for an award of attorneys' fees in an amount not to exceed 25% of the Settlement Fund and up to $250,000 in Litigation Expenses. *See* Declaration of Josephine Bravata Concerning: (A) Mailing of the Notice and Claim Form; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion Received to Date (the "Mailing Declaration" or "Mailing Decl."), dated December 30, 2022, Ex. 2 at ¶ 8 and Ex. A thereto. While the time to object to the Fee and Expense Application does not expire until January 17, 2023, to date no objections have been received. Lead Counsel will address any that are submitted in its reply papers, which will be filed on or before January 31, 2023.

Additionally, the requested fee of 25% is made with the full support of the Lead Plaintiff. *See* Declaration of Brian de Haan on Behalf of Oregon Public Employees Retirement Fund, dated January 3, 2023, submitted herewith as Ex. 1, at ¶ 5. Lead Plaintiff's endorsement of the fee supports its approval. *See Veeco*, 2007 WL 4115808, at *8 ("Public policy considerations support the award in this case because the Lead Plaintiff . . . – a large public pension fund – conscientiously supervised the work of lead counsel and has approved the fee request[.]").

**IV.    LEAD COUNSEL'S EXPENSES ARE REASONABLE AND WERE
        NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED**

Lead Counsel's fee application includes a request for payment of Lead Counsel's

Litigation Expenses, which were reasonably incurred and necessary to prosecute the Action.

Lead Counsel incurred $199,505.48 in Litigation Expenses.  *See* Ex. 3-B.  This amount is below

the $250,000 cap that the Notice informed potential Settlement Class Members that counsel may

apply for, and which—to date—there has been no objection to.

The amount of Litigation Expenses is consistent with the stage of the litigation.  Lead

Counsel has incurred considerable expenses related to, among other things, expert and consultant

fees, mediation fees, and litigation support fees related to electronic discovery.  A complete

breakdown by category of the expenses incurred by Lead Counsel is set forth in Exhibit B to the

Declaration of Christine Fox on behalf of Labaton Sucharow.  These expense items are reported

separately by Lead Counsel, and such costs are not duplicated in the firm's hourly rates.  It is

respectfully submitted that the expenses are properly recoverable by counsel.  *See In re China*

*Sunergy Sec. Litig.*, No. 07-cv-7895, 2011 WL 1899715, at *6 (S.D.N.Y. May 13, 2011) (in a

class action, attorneys should be compensated "for reasonable out-of-pocket expenses incurred

and customarily charged to their clients, as long as they were 'incidental and necessary to the

representation'").

The largest expense relates to the retention of Lead Plaintiff's testifying and consulting

experts.  These fees total $142,587.50, or approximately 71% of the total Litigation Expenses.  ¶

110; Ex. 3-B.   Principally, Lead Plaintiff retained a market efficiency/loss causation/and

damages expert who contributed to the prosecution of the Action by, among other things,

preparing an expert report concerning market efficiency; analyzing loss causation and damages

issues, including in connection with the Parties' mediation; and developing the proposed Plan of

Allocation. Lead Counsel also consulted with an expert concerning longwall mining at the NGM and longwall mining safety practices in general. *Id*.

Costs related to discovery total $13,609.03, or approximately 7% of all expenses. Ex. 3-B. Lead Counsel also incurred fees in the amount of $20,000 (10% of all expenses) in connection with the mediation and efforts of the Mediator.

The remainder of the expenses sought are the types that are necessarily incurred in complex litigation and routinely charged to clients who pay by the hour.

## V. LEAD PLAINTIFF SHOULD BE AWARDED ITS REQUESTED REIMBURSEMENT UNDER 15 U.S.C. §78u-4(a)(4)

Lead Counsel also seeks reimbursement of $9,197.60 on behalf of Lead Plaintiff, OPERF, directly related to its representation of the class. *See* Ex. 1, ¶¶ 3-8. The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4). Here, as described more fully in the Declaration of Brian de Haan, Senior Assistant Attorney General at the Oregon Department of Justice, submitted on behalf of OPERF, Lead Plaintiff has been committed to pursuing the class's claims—and has taken an active role in so doing. Among other things, Lead Plaintiff, through Mr. de Haan and others: (i) regularly communicated with Lead Counsel regarding the progress of the Action; (ii) responded to discovery requests, including producing documents; (iii) prepared for and appeared at one of two scheduled depositions of OPERF; (iv) liaised with its investment adviser Dimensional Fund Advisors regarding its receipt of a document subpoena from Defendants; and (v) discussed the potential for settlement with counsel, and received updates from counsel during the mediation session. Ex. 1 at ¶ 3. These efforts required representatives of Lead Plaintiff to dedicate time and resources to the Action that they would

17

have otherwise devoted to their regular duties.  Lead Plaintiff seeks $9,197.60 in connection with the 39.8 hours Mr. de Haan dedicated to the litigation.  *See* Ex. 1 at ¶¶ 3-8.

Courts within this District have approved payments to compensate representative plaintiffs under similar circumstances.  *See, e.g., In re BRF S.A. Sec. Litig.,* 2020 WL 10618214, at *2 (awarding lead plaintiff $2,889.15 for time spent directly related to its representation of the class) (Ex. 5); *Stein v. Eagle Bancorp, Inc., et al.,* Case No. 1:19-cv-06873-LGS, slip op. at 3 (S.D.N.Y. Feb 10, 2022) (awarding individual lead plaintiff $7,500) (Ex. 5); *City of Warren Police and Fire Ret. Sys. v. World Wrestling Ent.*, *Inc.,* No. 20-cv-02031, 2021 WL 2736135, at *1 (S.D.N.Y. June 30, 2021) (awarding $6,286.40 to lead plaintiff pension fund); *In re Silvercorp Metals Inc. Sec. Litig.,* No. 12-cv-09456-JSR, slip op. at 9 (S.D.N.Y. Feb. 13, 2015) (awarding two individual lead plaintiffs $12,500 each) (Ex. 5); *In re Petrobras Sec. Litig*., 317 F. Supp. 3d 858, 879 (S.D.N.Y. 2018) (awarding university pension plan and state pension plan lead plaintiffs $300,000, $50,000, and $50,000; *Marsh & McLennan,* 2009 WL 5178546, at *21 (awarding a combined $214,657 to two state pension fund lead plaintiffs).

## <u>CONCLUSION</u>

For the foregoing reasons, Lead Counsel respectfully requests that the Court award it attorneys' fees in the amount of 25% of the Settlement Fund, which includes accrued interest; $199,505.48 in Litigation Expenses incurred by Lead Counsel, plus accrued interest; and $9,197.60 in reimbursement to Lead Plaintiff pursuant to the PSLRA.  A proposed order will be submitted with Lead Counsel's reply papers, after the deadline for objecting has passed.

Dated: January 3, 2023                                  **LABATON SUCHAROW LLP**

                                        */s/ Christine M. Fox*
                                        Christine M. Fox
                                        Mark Willis
                                        James Fee

140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
Emails: cfox@labaton.com
       mwillis@labaton.com
       jfee@labaton.com

*Counsel for Lead Plaintiff Oregon Public Employees Retirement Fund*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 3, 2023, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all registered ECF participants.

<u>/s/ *Christine M. Fox*</u>
CHRISTINE M. FOX