# Exhibit 2

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
| --- | --- |
| IN RE PEABODY ENERGY CORP. SECURITIES LITIGATION | : Case No. 1:20-cv-08024-PKC<br>:<br>:<br>: |

**DECLARATION OF JOSEPHINE BRAVATA CONCERNING**
**(A) MAILING OF THE NOTICE AND CLAIM FORM; (B) PUBLICATION OF THE**
**SUMMARY NOTICE; AND (C) REPORT ON**
**REQUESTS FOR EXCLUSION RECEIVED TO DATE**

I, Josephine Bravata, declare as follows:

1.     I am the Quality Assurance Manager of Strategic Claims Services ("SCS"), a nationally recognized class action administration firm. I have over twenty years of experience specializing in the administration of class action cases. SCS was established in April 1999 and has administered over five hundred twenty-five (525) class action cases since its inception. I have personal knowledge of the facts set forth herein and, if called on to do so, I could and would testify competently thereto.

**MAILING OF THE NOTICE AND CLAIM FORM**

2.     Pursuant to the Court's Order Granting Preliminary Approval of Class Action Settlement, Approving Form and Manner of Notice, and Setting Date for Hearing on Final Approval of Settlement, dated October 13, 2022 (ECF No. 77, the "Preliminary Approval Order"), the Court approved the retention of SCS as the Claims Administrator in connection with the Settlement[1] of the above-captioned Action.

3.     To provide individual notice to those who purchased or otherwise acquired Peabody Energy Corp. ("Peabody") publicly traded common stock during the period from April

---

[1] All terms with initial capitalization not otherwise defined herein shall have the meanings ascribed to them in the Stipulation and Agreement of Settlement, dated as of October 7, 2022 (ECF No. 74-1, the "Stipulation").

3, 2017 through October 28, 2019, inclusive ("Settlement Class Period"), SCS, pursuant to the Preliminary Approval Order, printed and mailed the Notice of Pendency of Class Action, Proposed Settlement, and Motion for Attorneys' Fees and Expenses ("Notice") and Proof of Claim and Release Form ("Claim Form") (collectively, the "Notice and Claim Form") to potential members of the Settlement Class. A true and correct copy of the Notice and Claim Form is attached as **Exhibit A**.

4.    More specifically, SCS mailed, by First-Class mail, postage prepaid, the Notice and Claim Form to 229 individuals and organizations identified in Peabody's transfer records provided to SCS from American Stock Transfer and Trust Company, LLC. on October 26, 2022. These records reflect those who purchased shares of Peabody publicly traded common stock for their own account, or for the account(s) of their clients, during the Settlement Class Period. The transfer record mailing was completed on October 27, 2022.

5.    As in most class actions of this nature, the large majority of potential Settlement Class Members are anticipated to be beneficial purchasers whose securities are held in "street name" — *i.e.,* the securities are purchased by brokerage firms, banks, institutions and other third-party nominees in the name of the nominee, on behalf of the beneficial purchasers. The names and addresses of these beneficial purchasers are known only to the nominees. SCS maintains a proprietary master list consisting of 817 banks and brokerage companies ("Nominee Account Holders"), as well as 950 mutual funds, insurance companies, pension funds, and money managers ("Institutional Groups"). On October 24, 2022, SCS caused a letter to be mailed or e-mailed to the 1,767 Nominee Account Holders and Institutional Groups contained in the SCS master mailing list. The letter notified recipients of the Settlement and requested that they, within ten (10) calendar days from the date of the letter, either (i) provide SCS with a list of the

email addresses (if available) and names and addresses of such beneficial purchasers/owners so that SCS could promptly email or mail the Notice and Claim Form directly to the purchasers or (ii) request copies of the Notice and Claim Form from SCS so that the nominee could mail or email a direct link to the Notice and Claim Form to their customers who may be beneficial purchasers/owners.

6.    On October 24, 2022, SCS also sent the Depository Trust Company ("DTC") a Notice and Claim Form to publish on its Legal Notice System ("LENS").  LENS provides DTC participants the ability to search and download legal notices as well as receive email alerts based on particular notices or particular CUSIPs once a legal notice is posted.

7.    Following these mailings, SCS received additional names and addresses of potential Settlement Class Members from individuals or nominees requesting that a Notice and Claim Form be mailed by SCS, as well as requests from nominees for Notice and Claim Forms, in bulk, so that the nominees could forward them to their customers directly. SCS has promptly responded to each of these notice requests. SCS also received email addresses from a nominee, and SCS was notified by a nominee that they emailed a link to the Notice and Claim Form to their clients. Additionally, SCS was notified by four nominees that they printed and mailed the Notice and Claim Form to their clients.

8.    To date, 33,243 Notice and Claim Forms were either mailed or emailed to potential Settlement Class Members and nominees. Out of the 33,243 Notice and Claim Forms, 26,868 were mailed either by SCS or a nominee, and the remaining 6,375 were emailed either by SCS or one of the nominees.

9.    Out of the 26,868 Notices mailed, 412 were returned as undeliverable.  Of these, the United States Postal Service provided forwarding addresses for 14, and SCS immediately

3

mailed Notices to the updated addresses.  The remaining 398 Notices returned as undeliverable were "skip-traced" to obtain updated addresses and 177 were re-mailed to updated addresses.

### PUBLICATION OF THE SUMMARY NOTICE

10.    Pursuant to the Court's Preliminary Approval Order, the Summary Notice of Pendency of Class Action, Proposed Settlement, and Motion for Attorneys' Fees and Expenses ("Summary Notice") was published in *The Wall Street Journal*, and transmitted over *PR Newswire* on November 10, 2022, as shown in the confirmations of publication attached hereto as **Exhibit B.**

### TOLL-FREE PHONE LINE

11.    SCS maintains a toll-free telephone number (1-866-274-4004) for Settlement Class Members to call and obtain information about the Settlement.  SCS has promptly responded to each telephone inquiry received and will continue to address Settlement Class Member inquiries.

### WEBSITE

12.    On October 20, 2022, SCS's website, www.strategiclaims.net/Peabody, was updated to include a specific webpage for this Settlement.  The webpage contains the current status of the case, important Settlement-related deadlines, an online claim filing link, and downloadable copies of the Notice and Claim Form, the Preliminary Approval Order, the Stipulation, the Motion to Dismiss Order, and the Complaint. To date, there have been 2,964 pageviews by 921 unique users.

### REPORT ON EXCLUSIONS RECEIVED TO DATE

13.    The Notice informs potential Settlement Class Members that written requests for exclusion are to be mailed to SCS such that they are received no later than January 17, 2023.

SCS has been monitoring all mail received for this case. As of the date of this declaration, SCS has received one request for exclusion. A redacted copy of the request for exclusion, with personal information removed, is attached hereto as **Exhibit C**.

14.    According to the Notice, Settlement Class Members seeking to object to the Settlement or any of its terms, the proposed Plan of Allocation of the Net Settlement Fund, and/or Lead Counsel's Fee and Expense Application are required to submit their objection in writing such that the objection is received by Lead Counsel and Defendants' Counsel, as well as filed with the Clerk of the Court, no later than January 17, 2023. As of the date of this declaration, SCS has not received any misdirected objections.

I declare under penalty of perjury that the foregoing is true and correct.

Signed this 30th day of December 2022, in Media, Pennsylvania.

Josephine Bravata

5

**EXHIBIT A**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| IN RE PEABODY ENERGY CORP. SECURITIES LITIGATION | :  Case No. 1:20-cv-08024-PKC<br>:<br>:<br>: |

**NOTICE OF PENDENCY OF CLASS ACTION, PROPOSED SETTLEMENT,**
**AND MOTION FOR ATTORNEYS' FEES AND EXPENSES**

If you purchased or otherwise acquired Peabody Energy Corp. publicly traded common stock during the period from April 3, 2017 through October 28, 2019, inclusive (the "Settlement Class Period"), you may be entitled to a payment from a class action settlement.

*A Federal Court authorized this Notice.  This is not a solicitation from a lawyer.*

- This Notice describes important rights you may have and what steps you must take if you wish to participate in the Settlement of this securities class action, wish to object, or wish to be excluded from the Settlement Class.[1]
- If approved by the Court, the proposed Settlement will create a $4,625,000 cash fund, plus earned interest, if any, for the benefit of Settlement Class Members after the deduction of Court-approved fees, expenses, and Settlement Fund Taxes.  This is an average recovery of approximately $0.04 per allegedly damaged share before deductions for awarded attorneys' fees and Litigation Expenses, and $0.03 per allegedly damaged share after deductions for awarded attorneys' fees and Litigation Expenses, as discussed more below.
- The Settlement resolves claims by Court-appointed Lead Plaintiff Oregon Public Employees Retirement Fund ("Lead Plaintiff") asserted on behalf of the Settlement Class (defined below) against Peabody Energy Corporation ("Peabody" or the "Company"), Glenn L. Kellow, and Amy B. Schwetz (collectively, "Defendants," and, together with Lead Plaintiff, the "Parties").  It avoids the costs and risks of continuing the litigation; pays money to eligible investors; and releases the Released Defendant Parties (defined below) from liability.

**If you are a Settlement Class Member, your legal rights will be affected by this Settlement whether you act or do not act.  Please read this Notice carefully.**

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT ||
|---|---|
| **SUBMIT A CLAIM FORM ON OR BEFORE FEBRUARY 2, 2023** | The only way to get a payment.  *See* Question 8 for details. |
| **EXCLUDE YOURSELF FROM THE SETTLEMENT CLASS ON OR BEFORE JANUARY 17, 2023** | Get no payment.  This is the only option that, assuming your claim is timely brought, might allow you to ever bring or be part of any other lawsuit against Defendants and/or the other Released Defendant Parties concerning the Released Claims.  *See* Question 10 for details. |
| **OBJECT ON OR BEFORE JANUARY 17, 2023** | Write to the Court about why you do not like the Settlement, the Plan of Allocation for distributing the proceeds of the Settlement, and/or Lead Counsel's Fee and Expense Application.  If you object, you will still be in the Settlement Class.  *See* Question 14 for details. |
| **PARTICIPATE IN A HEARING ON FEBRUARY 7, 2023 AND FILE A NOTICE OF INTENTION TO APPEAR BY JANUARY 17, 2023** | Ask to speak to the Court at the Settlement Hearing about the Settlement.  *See* Question 18 for details. |
| **DO NOTHING** | Get no payment.  Give up rights.  Still be bound by the terms of the Settlement. |

---

[1] The terms of the Settlement are in the Stipulation and Agreement of Settlement, dated as of October 7, 2022 (the "Stipulation"), which can be viewed at www.strategicclaims.net/Peabody/.  All capitalized terms not defined in this Notice have the same meanings as in the Stipulation.

- 1 -

- These rights and options—**and the deadlines to exercise them**—are explained below.
- The Court in charge of this case still has to decide whether to approve the proposed Settlement. Payments will be made to Settlement Class Members who timely submit valid Claim Forms, if the Court approves the Settlement and after any appeals are resolved.

**PSLRA SUMMARY OF THE NOTICE**

### Statement of the Settlement Class's Recovery

1. Lead Plaintiff has entered into the proposed Settlement with Defendants which, if approved by the Court, will resolve the Action in its entirety. Subject to Court approval, Lead Plaintiff, on behalf of the Settlement Class, has agreed to settle the Action in exchange for a payment of $4,625,000 (the "Settlement Amount"), which will be deposited into an Escrow Account (the "Settlement Fund"). Based on Lead Plaintiff's consulting damages expert's estimate of the number of shares of Peabody publicly traded common stock eligible to participate in the Settlement, and assuming that all investors eligible to participate in the Settlement do so, it is estimated that the average recovery, before deduction of any Court-approved fees and expenses, such as attorneys' fees, Litigation Expenses, award to Lead Plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Settlement Fund Taxes, and Notice and Administration Expenses, would be approximately $0.04 per allegedly damaged share.[2] If the Court approves Lead Counsel's Fee and Expense Application (discussed below), the average recovery would be approximately $0.03 per allegedly damaged share. **These average recovery amounts are only estimates and Settlement Class Members may recover more or less than these estimates.** A Settlement Class Member's actual recovery will depend on, for example: (i) the number of claims submitted; (ii) the amount of the Net Settlement Fund; (iii) when and how many shares of Peabody publicly traded common stock the Settlement Class Member purchased during the Settlement Class Period; and (iv) whether and when the Settlement Class Member sold their common stock. *See* the Plan of Allocation beginning on page 9 for information on the calculation of your Recognized Claim.

### Statement of Potential Outcome of Case if the Action Continued to Be Litigated

2. The Parties disagree about both liability and damages and do not agree about the amount of damages that would be recoverable if Lead Plaintiff were to prevail on each claim. The issues that the Parties disagree about include, for example: (i) whether Defendants made any statements or omitted any facts that were materially false or misleading, or otherwise actionable under the federal securities laws; (ii) whether any such statements or omissions were made with the requisite level of intent or recklessness; and (iii) the amounts by which the price of Peabody publicly traded common stock was allegedly artificially inflated, if at all, during the Settlement Class Period.

3. Defendants have denied and continue to deny any and all allegations of wrongdoing or fault asserted in the Action, deny that they have committed any act or omission giving rise to any liability or violation of law, deny each and every one of the claims alleged by Lead Plaintiff in the Action on behalf of the Settlement Class, and deny that Lead Plaintiff and the Settlement Class have suffered any loss attributable to Defendants' actions or omissions. Defendants assert that, at all times, they acted in good faith and in a manner they reasonably believed to be in accordance with all applicable rules, regulations, and laws, and that they did not make any false or misleading statements and disclosed all information required to be disclosed by the federal securities laws.

### Statement of Attorneys' Fees and Expenses Sought

4. Lead Counsel will apply to the Court for an award of attorneys' fees from the Settlement Fund in an amount not to exceed 25% of the Settlement Fund, *i.e.,* $1,156,250, plus accrued interest at the same rate earned by the Settlement Fund, if any. Lead Counsel will also apply for payment of Litigation Expenses incurred in prosecuting the Action in an amount not to exceed $250,000, plus accrued interest at the same rate earned by the Settlement Fund, which may include an application pursuant to the PSLRA for the reasonable costs and expenses (including lost wages) of Lead Plaintiff directly related to its representation of the Settlement Class. If the Court approves Lead Counsel's Fee and Expense Application in full, the average amount of fees and expenses is estimated to be approximately $0.01 per allegedly damaged share of Peabody publicly traded common stock. A copy of the

---

[2] An allegedly damaged share might have been traded, and potentially damaged, more than once during the Settlement Class Period, and the average recovery indicated above represents the estimated average recovery for each share that allegedly incurred damages.

Fee and Expense Application will be posted on www.strategicclaims.net/Peabody/ and www.labaton.com after it has been filed with the Court.

**Reasons for the Settlement**

5. For Lead Plaintiff, the principal reason for the Settlement is the guaranteed cash benefit to the Settlement Class. This benefit must be compared to the uncertainty of being able to prove the allegations in the Complaint; the risk that the Court may grant some or all of the anticipated summary judgment motions to be filed by Defendants; the uncertainty of a greater recovery after a trial and appeals; and the difficulties and delays inherent in such litigation.

6. For Defendants, who deny all allegations of wrongdoing or liability whatsoever and deny that Settlement Class Members were damaged, the principal reasons for entering into the Settlement are to avoid the further burden, inconvenience and expense of the Action, and the distraction and diversion of personnel and resources. Defendants have determined that it is desirable to obtain the conclusive and complete dismissal of this Action.

**Identification of Representatives**

7. Lead Plaintiff and the Settlement Class are represented by Lead Counsel: Christine M. Fox, Esq., Labaton Sucharow LLP, 140 Broadway, New York, NY 10005, (888) 219-6877, settlementquestions@labaton.com.

8. Further information regarding the Action, the Settlement, and this Notice may be obtained by contacting the Claims Administrator: Strategic Claims Services, (866) 274-4004, www.strategicclaims.net/Peabody/.

**Please Do Not Call the Court with Questions About the Settlement.**

**BASIC INFORMATION**

| **1. Why did I get this Notice?** |
| --- |

9. The Court authorized that this Notice be sent to you because you or someone in your family may have purchased Peabody publicly traded common stock during the period from April 3, 2017 through October 28, 2019, inclusive (the "Settlement Class Period"). **Receipt of this Notice does not mean that you are a member of the Settlement Class or that you will be entitled to receive a payment. The Parties do not have access to your individual investment information. If you wish to be eligible for a payment, you are required to submit the Claim Form that is being distributed with this Notice.** *See* **Question 8 below.**

10. The Court directed that this Notice be sent to Settlement Class Members because they have a right to know about the proposed Settlement of this class action lawsuit, and about all of their options, before the Court decides whether to approve the Settlement.

11. The Court in charge of the Action is the United States District Court for the Southern District of New York, and the case is known as *In re Peabody Energy Corp. Securities Litigation*, Case No. 1:20-cv-08024-PKC. The Action is assigned to the Honorable P. Kevin Castel, United States District Judge.

| **2. How do I know if I am part of the Settlement Class?** |
| --- |

12. By the Preliminary Approval Order, the Court preliminarily certified the Action as a class action on behalf of the following Settlement Class. Everyone who fits the following description is a Settlement Class Member and subject to the Settlement unless they are an excluded person (*see* Question 3 below) or take steps to exclude themselves from the Settlement Class (*see* Question 10 below):

> **All persons and entities who or which purchased or otherwise acquired Peabody publicly traded common stock during the period from April 3, 2017 through October 28, 2019, inclusive, and were allegedly damaged thereby.**

13. However, if you received shares on or around April 3, 2017 as a result of Peabody's reissuance of shares in accordance with the Second Amended Joint Plan of Reorganization and Emergence from the Chapter 11 cases then pending before the U.S. Bankruptcy Court for the Eastern District of Missouri (*In re Peabody Energy Corporation, et al.*, Case No. 16-42529, "Chapter 11 Cases"), **this does not make you a member of the Settlement Class**. Those shares are not eligible for a recovery because they were originally purchased *before* the Settlement

Class Period.  **Only submit a Claim Form if you purchased *new* publicly traded shares during the Settlement Class Period.**

14.    Check your investment records or contact your broker to see if you have any eligible purchases. The Parties do not independently have access to your trading information.

---

**3.  Are there exceptions to being included?**

15.    Yes.  There are some individuals and entities who are excluded from the Settlement Class by definition.  Excluded from the Settlement Class are: (i) Defendants; (ii) members of the immediate families of the Individual Defendants; (iii) any person who was an officer or director of Peabody during the Settlement Class Period; (iv) any firm, trust, corporation, or other entity in which any Defendant has or had a controlling interest; (v) Peabody's employee retirement and benefit plan(s) and their participants or beneficiaries, to the extent they made purchases through such plan(s); and (vi) the legal representatives, affiliates, heirs, successors-in-interest, and/or assigns of any such excluded person or entity.  Also excluded from the Settlement Class is anyone who timely and validly seeks exclusion from the Settlement Class in accordance with the procedures described in Question 10 below.

---

**4.  Why is this a class action?**

16.    In a class action, one or more persons or entities (in this case, Lead Plaintiff), sue on behalf of people and entities who have similar claims.  Together, these people and entities are a "class," and each is a "class member."  A class action allows one court to resolve, in a single case, many similar claims that, if brought separately by individual people, might be too small economically to litigate.  One court resolves the issues for all class members at the same time, except for those who exclude themselves, or "opt-out," from the class.

---

**5.  What is this case about and what has happened so far?**

17.    On March 19, 2021, Lead Plaintiff filed the Consolidated Amended Class Action Complaint (the "Complaint") asserting claims against all Defendants under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, and Section 20(a) of the Exchange Act against Defendants Kellow and Schwetz.  Among other things, the Complaint alleged that Defendants made materially false and misleading statements and omissions with respect to: (i) Peabody's commitment to safety; (ii) the circumstances and timing of a September 2018 fire at the Company's North Goonyella mine in Queensland, Australia; and (iii) the timing of resumption of coal production at the North Goonyella mine following the September 2018 fire.  The Complaint further alleged that the price of Peabody common stock was artificially inflated and artificially maintained as a result of Defendants' allegedly false and misleading statements and omissions and declined when the truth was revealed through a series of partial corrective disclosures.

18.    On June 7, 2021, Defendants filed a motion to dismiss the Complaint.  On July 22, 2021, Lead Plaintiff filed its memorandum of law in opposition to the motion to dismiss and, on August 23, 2021, Defendants filed their reply.  On March 7, 2022, the Court entered its Opinion and Order granting in part and denying in part Defendants' motion to dismiss the Complaint.  As a result of the Opinion and Order, the case proceeded to discovery on two alleged misstatements, both made on September 25, 2018, related to the circumstances and timing of the September 2018 fire at the Company's North Goonyella mine in Queensland, Australia.

19.    On April 6, 2022, the Defendants filed their Answer to the Complaint.

20.    Discovery in the Action commenced in April 2022, and the Parties began the exchange of document productions in July 2022.

21.    On July 15, 2022, Lead Plaintiff filed its motion to certify a class for the period from September 22, 2018 through September 28, 2018, inclusive, and for the appointment of class representative and class counsel. In July 2022, the Parties engaged in discovery related to Lead Plaintiff's motion for class certification.

22.    After the Parties began exploring the possibility of reaching a negotiated resolution of the Action, they agreed to participate in a formal mediation and retained David M. Murphy of Phillips ADR to serve as mediator (the "Mediator").

23.    On July 29, 2022, the Parties participated in a full-day mediation session before the Mediator.  At the conclusion of the full-day mediation session, the Parties reached an agreement in principle to settle the Action,

which was memorialized in a term sheet executed and finalized on August 2, 2022, subject to the execution of the Stipulation and related papers.

24.    The Stipulation (together with the exhibits thereto) reflects the final and binding agreement between the Parties.

## THE SETTLEMENT BENEFITS

| **7.  What does the Settlement provide?** |
| --- |

25.    In exchange for the Settlement and the release of the Released Claims against the Released Defendant Parties (*see* Question 9 below), Defendants have agreed to cause a $4,625,000 payment to be made, which, along with any interest earned, will be distributed after deduction of Court-awarded attorneys' fees and litigation expenses, Notice and Administration Expenses, Settlement Fund Taxes, and any other fees or expenses approved by the Court (the "Net Settlement Fund"), to Settlement Class Members who submit valid and timely Claim Forms and are found to be eligible to receive a distribution from the Net Settlement Fund.

| **8.  How can I receive a payment?** |
| --- |

26.    To qualify for a payment from the Net Settlement Fund, you must submit a timely and valid Claim Form.  A Claim Form is included with this Notice.  You may also obtain one from the Claims Administrator's website www.strategicclaims.net/Peabody/, or submit a claim online at www.strategicclaims.net/Peabody/.  You can also request that a Claim Form be mailed to you by calling the Claims Administrator toll-free at (866) 274-4004.

27.    Please read the instructions contained in the Claim Form carefully, fill out the Claim Form, include all the documents the form requests, sign it, and mail or submit it to the Claims Administrator so that it is **postmarked or received no later than February 2, 2023.**

28.    **PLEASE NOTE**: If you ONLY received shares on or around April 3, 2017 as a result of Peabody's reissuance of shares in accordance with the Second Amended Joint Plan of Reorganization and Emergence from the Chapter 11 Cases, DO NOT SUBMIT A CLAIM FORM.  Those shares are not eligible for a recovery because they were originally purchased before the Settlement Class Period.  **Only submit a Claim Form if you purchased *new* publicly traded shares during the Settlement Class Period.**[3]

| **9.  What am I giving up to receive a payment and by staying in the Settlement Class?** |
| --- |

29.    If you are a Settlement Class Member and do not timely and validly exclude yourself from the Settlement Class, you will remain in the Settlement Class and that means that, upon the "Effective Date" of the Settlement, you will release all "Released Claims" against the "Released Defendant Parties."  All of the Court's orders in the Action, whether favorable or unfavorable, will apply to you and legally bind you.

(a)    **"Released Claims"** means any and all claims and causes of action of every nature and description, whether known or Unknown (defined below), contingent or absolute, mature or not mature, liquidated or unliquidated, accrued or not accrued, concealed or hidden, regardless of legal or equitable theory and whether arising under federal, state, common, or foreign law, that Lead Plaintiff or any other member of the Settlement Class: (a) asserted in the Action; or (b) could have asserted in the Action or any forum that arise out of, are based upon, or relate to, both (1) the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in the Action and (2) the purchase or acquisition of Peabody publicly traded common stock during the Settlement Class Period.  For the avoidance of doubt, Released Claims do not include claims to enforce the Settlement or claims that were asserted in In re Peabody Energy Corp. Derivative Litigation, 20-cv-01747-CFC (D. Del. 2020) (J. Connolly).

(b)    **"Released Defendant Parties"** means Defendants, Defendants' Counsel, and each of their respective past or present direct or indirect subsidiaries, parents, affiliates, principals, successors and predecessors, assigns, officers, directors, shareholders, trustees, partners, agents, fiduciaries, contractors, employees, attorneys, insurers; the spouses, members of the immediate families, representatives, and heirs of the Individual Defendants,

---

[3] Before the Settlement Class Period, Peabody publicly traded common stock traded under the symbol BTUUQ and CUSIP # 704594203.  After the effective date of the Reorganization Plan, beginning on April 3, 2017, shares were traded under the symbol BTU and CUSIP # 704551100.

as well as any trust of which any Individual Defendant is the settlor or which is for the benefit of any of their immediate family members; any firm, trust, corporation, or entity in which any Defendant has a controlling interest; and any of the legal representatives, heirs, successors in interest or assigns of Defendants.

(c)    **"Unknown Claims"** means any and all Released Claims that Lead Plaintiff or any other Settlement Class Member do not know or suspect to exist in his, her, or its favor at the time of the release of the Released Defendant Parties, and any and all Released Defendants' Claims that any Defendant does not know or suspect to exist in his, her, or its favor at the time of the release of the Released Plaintiff Parties, which if known by him, her, or it might have affected his, her, or its decision(s) with respect to the Settlement, including but not limited to the decision to object to the terms of the Settlement or to exclude himself, herself, or itself from the Settlement Class.  With respect to any and all Released Claims and Released Defendants' Claims, the Parties stipulate and agree that, upon the Effective Date, Lead Plaintiff and Defendants shall expressly, and each other Settlement Class Member shall be deemed to have, and by operation of the Judgment shall have, to the fullest extent permitted by law, expressly waived and relinquished any and all provisions, rights and benefits conferred by any law of any state or territory of the United States or foreign law, or principle of common law, which is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:

> **A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.**

Lead Plaintiff, other Settlement Class Members, or Defendants may hereafter discover facts, legal theories, or authorities in addition to or different from those which any of them now knows or believes to be true with respect to the subject matter of the Released Claims and the Released Defendants' Claims, but Lead Plaintiff and Defendants shall expressly, fully, finally, and forever waive, settle, discharge, extinguish and release, and each Settlement Class Member shall be deemed to have waived, settled, discharged, extinguished and released, and upon the Effective Date and by operation of the Judgment shall have waived, settled, discharged, extinguished and released, fully, finally, and forever, any and all Released Claims and Released Defendants' Claims as applicable, without regard to the subsequent discovery or existence of such different or additional facts, legal theories, or authorities.  Lead Plaintiff and Defendants acknowledge, and other Settlement Class Members by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Released Claims and Released Defendants' Claims was separately bargained for and was a material element of the Settlement.

30.    The "Effective Date" will occur when an Order entered by the Court approving the Settlement becomes Final and is not subject to appeal.  Upon the "Effective Date," the Released Defendant Parties will also provide a release of any claims against the Released Plaintiff Parties arising out of or related to the institution, prosecution, or settlement of the claims in the Action.

## EXCLUDING YOURSELF FROM THE SETTLEMENT CLASS

31.    If you want to keep any right you may have to sue or continue to sue Defendants and the other Released Defendant Parties on your own concerning the Released Claims, then you must take steps to remove yourself from the Settlement Class.  This is called excluding yourself or "opting out."  **Please note:** If you decide to exclude yourself from the Settlement Class, there is a risk that any lawsuit you may file may be dismissed, including because the suit is not filed within the applicable time periods required for filing suit.  Defendants have the option to terminate the Settlement if a certain amount of Settlement Class Members request exclusion.

---

**10.  How do I exclude myself from the Settlement Class?**

---

32.    To exclude yourself from the Settlement Class, you must mail a signed letter stating that you request to be "excluded from the Settlement Class in *In re Peabody Energy Corp. Sec. Litig.*, No. 1:20-cv-08024-PKC (S.D.N.Y.)." You cannot exclude yourself by telephone or e-mail.  Each request for exclusion must also: (i) state the name, address, email, and telephone number of the person or entity requesting exclusion; (ii) state the number of shares of Peabody publicly traded common stock the person or entity purchased, acquired, and sold during the Settlement Class Period, as well as the dates and prices of each such purchase, acquisition, and sale; and (iii) be signed by the Person requesting exclusion or an authorized representative.  A request for exclusion must be mailed so that it is **received no later than January 17, 2023** at:

*Peabody Securities Litigation*
c/o Strategic Claims Services
P.O. Box 230
600 N. Jackson St., Ste. 205
Media, PA 19063

33.     This information is needed to determine whether you are a member of the Settlement Class.  Your exclusion request must comply with these requirements in order to be valid.

34.     If you ask to be excluded, do not submit a Claim Form because you cannot receive any payment from the Net Settlement Fund.  Also, you cannot object to the Settlement because you will not be a Settlement Class Member and the Settlement will not affect you.  If you submit a valid exclusion request, you will not be legally bound by anything that happens in the Action, and you may be able to sue (or continue to sue) Defendants and the other Released Defendant Parties in the future.

| 11. | **If I do not exclude myself, can I sue Defendants and the other Released Defendant Parties for the same reasons later?** |
|---|---|

35.     No.  Unless you properly exclude yourself, you will give up any rights to sue Defendants and the other Released Defendant Parties for any and all Released Claims.  If you have a pending lawsuit against any of the Released Defendant Parties, **speak to your lawyer in that case immediately**.  You must exclude yourself from this Settlement Class to continue your own lawsuit, assuming that lawsuit was timely brought.  Remember, the exclusion deadline is **January 17, 2023.**

## THE LAWYERS REPRESENTING YOU

| 12. | **Do I have a lawyer in this case?** |
|---|---|

36.     Labaton Sucharow LLP is Lead Counsel in the Action and represents all Settlement Class Members.  You will not be separately charged for the work of Lead Counsel.  The Court will determine the amount of attorneys' fees and Litigation Expenses, which will be paid from the Settlement Fund.  If you want to be represented by your own lawyer, you may hire one at your own expense.

| 13. | **How will the lawyers be paid?** |
|---|---|

37.     Lead Counsel has been prosecuting the Action on a contingent basis and has not been paid for any of its work.  Lead Counsel will apply to the Court for an award of attorneys' fees of no more than 25% of the Settlement Fund, which may include accrued interest.  Lead Counsel will also seek payment of Litigation Expenses incurred in the prosecution and settlement of the Action of no more than $250,000, plus accrued interest, if any, which may include an application in accordance with the PSLRA for the reasonable costs and expenses (including lost wages) of Lead Plaintiff directly related to its representation of the Settlement Class.  As explained above, any attorneys' fees and expenses awarded by the Court will be paid from the Settlement Fund.  Settlement Class Members are not personally liable for any such fees or expenses.

## OBJECTING TO THE SETTLEMENT, THE PLAN OF ALLOCATION, OR THE FEE AND EXPENSE APPLICATION

| 14. | **How do I tell the Court that I do not like something about the proposed Settlement?** |
|---|---|

38.     If you are a Settlement Class Member, you can object to the Settlement or any of its terms, the proposed Plan of Allocation of the Net Settlement Fund, and/or Lead Counsel's Fee and Expense Application.  You may write to the Court about why you think the Court should not approve any or all of the Settlement terms or related relief.  If you would like the Court to consider your views, you must file a proper objection within the deadline, and according to the following procedures.

39.     To object, you must send a signed letter stating that you object to the proposed Settlement, the Plan of Allocation, and/or the Fee and Expense Application in *"In re Peabody Energy Corp. Sec. Litig.*, No. 1:20-cv-08024-PKC (S.D.N.Y.)."  The objection must also: (i) state the name, address, telephone number, and email address of the objector and must be signed by the objector; (ii) contain a statement of the Settlement Class Member's

objection or objections and the reasons for the objection; and (iii) include documents sufficient to show the objector's membership in the Settlement Class, including the number of shares of Peabody publicly traded common stock purchased, acquired, and sold during the Settlement Class Period, as well as the dates and prices of each such purchase, acquisition, and sale.  Unless otherwise ordered by the Court, any Settlement Class Member who does not object in the manner described in this Notice will be deemed to have waived any objection and will be foreclosed from making any objection.  Your objection must be filed with the Court **no later than January 17, 2023 and** be mailed or delivered to the following counsel so that it is **received no later than January 17, 2023.  You may do so by using the Court's Case Management/Electronic Case Files system (CM/ECF), delivering by hand, or mailing:**

| Court | Lead Counsel | Defendants' Counsel |
|---|---|---|
| **Clerk of the Court**<br>United States District Court<br>Southern District of New York<br>Daniel Patrick Moynihan U.S.<br>Courthouse<br>500 Pearl Street<br>New York, NY 10007 | **Labaton Sucharow LLP**<br>Christine M. Fox, Esq.<br>140 Broadway<br>New York, NY 10005 | **Cravath, Swaine & Moore LLP**<br>Karin A. DeMasi, Esq.<br>825 Eighth Avenue<br>New York, NY 10019 |

40.     You do not need to attend the Settlement Hearing to have your written objection considered by the Court.  However, any Settlement Class Member who has complied with the procedures described in this Question 14 and below in Question 18 may appear at the Settlement Hearing and be heard, to the extent allowed by the Court.  An objector may appear in person or arrange, at his, her, or its own expense, for a lawyer to represent him, her, or it at the Settlement Hearing.

| 15.  What is the difference between objecting and seeking exclusion? |
|---|

41.     Objecting is telling the Court that you do not like something about the proposed Settlement, Plan of Allocation, or Lead Counsel's Fee and Expense Application.  You can still recover money from the Settlement.  You can object *only* if you stay in the Settlement Class.  Excluding yourself is telling the Court that you do not want to be part of the Settlement Class.  If you exclude yourself from the Settlement Class, you have no basis to object because the Settlement and the Action no longer affect you.

THE SETTLEMENT HEARING

| 16.  When and where will the Court decide whether to approve the Settlement? |
|---|

42.     The Court will hold the Settlement Hearing on **February 7, 2023 at 2:30 p.m.**, in Courtroom 11D of the United States District Court for the Southern District of New York, Daniel Patrick Moynihan U.S. Courthouse, 500 Pearl Street, New York, NY 10007.

43.     At this hearing, the Honorable P. Kevin Castel will consider whether: (i) the Settlement is fair, reasonable, adequate, and should be approved; (ii) the Plan of Allocation is fair and reasonable, and should be approved; and (iii) the application of Lead Counsel for an award of attorneys' fees and payment of Litigation Expenses is reasonable and should be approved.  The Court will take into consideration any written objections filed in accordance with the instructions in Question 14 above.  We do not know how long it will take the Court to make these decisions.

44.     The Court may change the date and time of the Settlement Hearing, or hold the hearing remotely, without another individual notice being sent to Settlement Class Members.  If you want to attend the hearing, you should check with Lead Counsel beforehand to be sure that the date and/or time and procedures for participating have not changed, or periodically check the Claims Administrator's website at www.strategicclaims.net/Peabody/ to see if the Settlement Hearing stays as scheduled or is changed.

| 17.  Do I have to come to the Settlement Hearing? |
|---|

45.     No.  Lead Counsel will answer any questions the Court may have.  But, you are welcome to attend at your own expense.  If you submit a valid and timely objection, the Court will consider it and you do not have to

come to Court to discuss it.  You may have your own lawyer attend (at your own expense), but it is not required.  If you do hire your own lawyer, he or she must file and serve a Notice of Appearance in the manner described in the answer to Question 18 below **no later than January 17, 2023**.

| 18.  May I speak at the Settlement Hearing? |
| --- |

46.        You may ask the Court for permission to speak at the Settlement Hearing.  To do so, you must, **no later than January 17, 2023,** submit a statement that you, or your attorney, intend to appear in "*In re Peabody Energy Corp. Sec. Litig.,* No. 1:20-cv-08024-PKC (S.D.N.Y.)."  If you intend to present evidence at the Settlement Hearing, you must also include in your objection (prepared and submitted according to the answer to Question 14 above) the identities of any witnesses you may wish to call to testify and any exhibits you intend to introduce into evidence at the Settlement Hearing.  You may not speak at the Settlement Hearing if you exclude yourself from the Settlement Class.

## IF YOU DO NOTHING

| 19.  What happens if I do nothing at all? |
| --- |

47.        If you do nothing and you are a member of the Settlement Class, you will receive no money from this Settlement and you will be precluded from starting a lawsuit, continuing with a lawsuit, or being part of any other lawsuit against Defendants and the other Released Defendant Parties concerning the Released Claims.  To share in the Net Settlement Fund, you must submit a Claim Form (*see* Question 8 above).  To start, continue, or be a part of any other lawsuit against Defendants and the other Released Defendant Parties concerning the Released Claims, you must exclude yourself from the Settlement Class (*see* Question 10 above).

## GETTING MORE INFORMATION

| 20.  Are there more details about the Settlement? |
| --- |

48.        This Notice summarizes the proposed Settlement.  More details are contained in the Stipulation.  You may review the Stipulation filed with the Court or other documents in the case during business hours at the office of the Clerk of the Court, United States District Court for the Southern District of New York, Daniel Patrick Moynihan U.S Courthouse, 500 Pearl Street, New York, New York 10007.  (Please check the Court's website, www.nysd.uscourts.gov, for information about Court closures before visiting.)  Subscribers to PACER, a fee-based service, can also view the papers filed publicly in the Action through the Court's on-line Case Management/Electronic Case Files System at https://www.pacer.gov.

49.        You can also get a copy of the Stipulation, and other documents related to the Settlement, as well as additional information about the Settlement by visiting the Claims Administrator's website www.strategicclaims.net/Peabody/.  You may also call the Claims Administrator toll free at (866) 274-4004 or write to the Claims Administrator at *Peabody Securities Litigation,* c/o Strategic Claims Services, P.O. Box 230, 600 N. Jackson St., Suite 205, Media, PA 19063.  **Please do not call the Court with questions about the Settlement.**

## PLAN OF ALLOCATION OF THE NET SETTLEMENT FUND

| 21.  How will my claim be calculated? |
| --- |

50.        The Plan of Allocation set forth below is the plan for calculating claims and distributing the proceeds of the Settlement that is being proposed by Lead Plaintiff and Lead Counsel to the Court for approval.  The Court may approve this Plan of Allocation or modify it without additional notice to the Settlement Class.  Any order modifying the Plan of Allocation will be posted at: www.strategicclaims.net/Peabody/ and www.labaton.com.

51.        As noted above, the Settlement Amount and the interest it earns is the "Settlement Fund."  The Settlement Fund, after deduction of Court-approved attorneys' fees and Litigation Expenses, Notice and Administration Expenses, Settlement Fund Taxes, and any other fees or expenses approved by the Court, is the "Net Settlement Fund."  The Net Settlement Fund will be distributed to members of the Settlement Class who timely submit valid Claim Forms that show a "Recognized Claim" according to the Court-approved Plan of Allocation.  Settlement Class Members who do not timely submit valid Claim Forms will not share in the Net Settlement Fund but will still be bound by the Settlement.

- 9 -

52.    The objective of this Plan of Allocation is to distribute the Net Settlement Fund fairly among those Settlement Class Members who allegedly suffered economic losses as a result of the alleged wrongdoing. To design this plan, Lead Counsel conferred with Lead Plaintiff's damages expert. This plan is intended to be generally consistent with an assessment of, among other things, the damages that Lead Plaintiff and Lead Counsel believe were recoverable in the Action. The Plan of Allocation, however, is not a formal damages analysis and the calculations made pursuant to the plan are not intended to be estimates of, nor indicative of, the amounts that Settlement Class Members might have been able to recover after a trial. The calculations pursuant to the Plan of Allocation are also not estimates of the amounts that will be paid to Authorized Claimants.

53.    An individual Settlement Class Member's recovery will depend on, for example: (i) the total number and value of claims submitted; (ii) when the Claimant purchased Peabody publicly traded common stock; and (iii) whether and when the Claimant sold his, her, or its shares. The computations under the Plan of Allocation are only a method to weigh the claims of Authorized Claimants against one another for the purposes of making *pro rata* allocations of the Net Settlement Fund. The Claims Administrator will determine each Authorized Claimant's *pro rata* share of the Net Settlement Fund based upon each Authorized Claimant's "Recognized Claim."

54.    For losses to be compensable damages under the federal securities laws, the disclosure of the allegedly misrepresented information must be the cause of the decline in the price of the securities at issue. In this case, Lead Plaintiff alleges that Defendants issued false statements and omitted material facts during the Settlement Class Period, which allegedly artificially inflated the price of Peabody publicly traded common stock. In developing the Plan of Allocation, Lead Plaintiff's consulting damages expert calculated the estimated amount of alleged artificial inflation in the per share prices of Peabody common stock that was allegedly proximately caused by Defendants' alleged materially false and misleading statements and omissions.

55.    In this Action, Lead Plaintiff alleges that corrective information allegedly impacting the price of Peabody common stock (which is referred to as a "corrective disclosure") was released to the market on September 28, 2018 (at 2:23 p.m. ET) and prior to market open on February 6, 2019, May 1, 2019, and October 29, 2019, impacting the market price of Peabody common stock in a statistically significant manner and removing the alleged artificial inflation from the share prices on those dates. Accordingly, in order to have a compensable loss in this Settlement, shares of Peabody common stock must have been purchased or otherwise acquired during the Settlement Class Period and held through at least one of the alleged corrective disclosure dates listed above.

## CALCULATION OF RECOGNIZED LOSS AMOUNTS

56.    Only publicly traded shares of Peabody common stock purchased or acquired during the Settlement Class Period can be the basis for Recognized Loss Amounts under the Plan of Allocation. **Common shares reissued to Settlement Class Members in accordance with the Second Amended Joint Plan of Reorganization and Emergence from the Chapter 11 Cases are not eligible acquisitions**.[4]

57.    For purposes of determining whether a Claimant has a "Recognized Claim," if a Claimant has more than one purchase/acquisition or sale of Peabody publicly traded common stock during the Settlement Class Period, all purchases/acquisitions and sales will be matched on a "First In First Out" (FIFO) basis. Settlement Class Period sales will be matched first against any holdings at the beginning of the Settlement Class Period and then against purchases/acquisitions in chronological order, beginning with the earliest purchase/acquisition made during the Settlement Class Period.

58.    Based on the formulas stated below, a "Recognized Loss Amount" will be calculated for each purchase/acquisition of Peabody publicly traded common stock during the Settlement Class Period that is listed on the Claim Form and for which adequate documentation is provided. If a Recognized Loss Amount calculates to a negative number or zero under the formulas below, that Recognized Loss Amount will be zero.

59.    For each share of Peabody publicly traded common stock purchased or otherwise acquired during the Settlement Class Period and sold before the close of trading on January 24, 2020, an "Out of Pocket Loss" will be calculated. Out of Pocket Loss is defined as the purchase price (excluding all fees, taxes, and commissions) minus the sale price (excluding all fees, taxes, and commissions). To the extent that the calculation of the Out of Pocket Loss results in a negative number, that number shall be set to zero.

---

[4] Before the Settlement Class Period, Peabody publicly traded common stock traded under the symbol BTUUQ and CUSIP # 704549104. After the effective date of the Reorganization Plan, beginning on April 3, 2017, shares were traded under the symbol BTU and CUSIP # 704551100.

60.     **For each share of Peabody publicly traded common stock purchased or acquired from April 3, 2017 through and including October 28, 2019, and**:

A.  Sold before 2:23 p.m. ET on September 28, 2018,[5] the Recognized Loss Amount for each such share shall be zero.

B.  Sold during the period from September 28, 2018 (at or after 2:23 p.m. ET) through October 28, 2019, the Recognized Loss Amount for each such share shall be *the lesser of*:
    1.  the dollar artificial inflation applicable to each such share on the date of purchase/acquisition as set forth in **Table 1** below *minus* the dollar artificial inflation applicable to each such share on the date of sale as set forth in **Table 1** below; or
    2.  the Out of Pocket Loss.

C.  Sold during the period from October 29, 2019 through January 24, 2020, the Recognized Loss Amount for each such share shall be *the least of*:
    1.  the dollar artificial inflation applicable to each such share on the date of purchase/acquisition as set forth in **Table 1** below; or
    2.  the actual purchase/acquisition price of each such share *minus* the average closing price from October 29, 2019, up to the date of sale as set forth in **Table 2** below; or
    3.  the Out of Pocket Loss.

D.  Held as of the close of trading on January 24, 2020, the Recognized Loss Amount for each such share shall be *the lesser of*:
    1.  the dollar artificial inflation applicable to each such share on the date of purchase/acquisition as set forth in **Table 1** below; or
    2.  the actual purchase/acquisition price of each such share *minus* $9.53.[6]

61.     Recognized Loss Amounts for shares of Peabody publicly traded common stock purchased or otherwise acquired during the period from April 3, 2017 through September 21, 2018 will be multiplied by 0.1 (discounted by 90%). This is to reflect the fact that these claims were dismissed by the Court in connection with the Order on Defendants' motion to dismiss. Thus, any recovery on these claims in the Action would have occurred only if the Court's Order dismissing these claims was appealed and the ruling was reversed on appeal.

62.     Recognized Loss Amounts for shares of Peabody publicly traded common stock purchased or otherwise acquired during the period from September 28, 2018 (at or after 2:23 p.m. ET) through October 28, 2019 will be multiplied by 0.25 (discounted by 75%). This is to reflect the fact that these claims were dismissed by the Court in connection with the Order on Defendants' motion to dismiss. Thus, any recovery on these claims in the Action would have occurred only if the Court's Order dismissing these claims was appealed and the ruling was reversed on appeal. Lead Counsel has determined that the litigation risks associated with the claims during this portion of the Settlement Class Period, while also significant, were somewhat lower, as reflected in the discount rate applied.

---

[5] For purposes of this Plan of Allocation, in the absence of time-stamped documentation, the Claims Administrator will assume that any shares purchased/acquired or sold on September 28, 2018 at any price less than or equal to $35.74 per share occurred after the allegedly corrective information was released to the market at 2:23 p.m. ET, and that any shares purchased/acquired or sold on September 28, 2018 at any price greater than $35.74 per share occurred before the release of the allegedly corrective information at 2:23 p.m. ET.

[6] Pursuant to Section 21D(e)(1) of the Exchange Act, "in any private action arising under this title in which the plaintiff seeks to establish damages by reference to the market price of a security, the award of damages to the plaintiff shall not exceed the difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the subject security and the mean trading price of that security during the 90-day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market." Consistent with the requirements of the Exchange Act, Recognized Loss Amounts are reduced to an appropriate extent by taking into account the closing prices of Peabody common stock during the "90-day look-back period," October 29, 2019 through January 24, 2020. The mean (average) closing price for Peabody common stock during this 90-day look-back period was $9.53.

**TABLE 1**

**Peabody Common Stock Artificial Inflation**
**for Purposes of Calculating Purchase and Sale Inflation in Plan of Allocation**

| Transaction Date | Artificial Inflation Per Share |
|---|---|
| April 3, 2017 – September 28, 2018 (prior to 2:23 p.m. ET) | $13.07 |
| September 28, 2018 (at or after 2:23 p.m. ET) – February 5, 2019 | $7.50 |
| February 6, 2019 – April 30, 2019 | $4.30 |
| May 1, 2019 – October 28, 2019 | $2.83 |

**TABLE 2**

**Peabody Common Stock Closing Price and Average Closing Price**
**October 29, 2019 – January 24, 2020**

| Date | Closing Price | Average Closing Price Between October 29, 2019 and Date Shown | Date | Closing Price | Average Closing Price Between October 29, 2019 and Date Shown |
|---|---|---|---|---|---|
| 10/29/2019 | $12.48 | $12.48 | 12/11/2019 | $9.86 | $9.92 |
| 10/30/2019 | $11.84 | $12.16 | 12/12/2019 | $10.13 | $9.93 |
| 10/31/2019 | $10.53 | $11.62 | 12/13/2019 | $10.10 | $9.94 |
| 11/1/2019 | $10.22 | $11.27 | 12/16/2019 | $10.32 | $9.95 |
| 11/4/2019 | $10.41 | $11.10 | 12/17/2019 | $9.58 | $9.94 |
| 11/5/2019 | $10.80 | $11.05 | 12/18/2019 | $9.65 | $9.93 |
| 11/6/2019 | $10.87 | $11.02 | 12/19/2019 | $9.09 | $9.91 |
| 11/7/2019 | $10.86 | $11.00 | 12/20/2019 | $9.04 | $9.88 |
| 11/8/2019 | $10.64 | $10.96 | 12/23/2019 | $9.05 | $9.86 |
| 11/11/2019 | $10.51 | $10.92 | 12/24/2019 | $9.16 | $9.84 |
| 11/12/2019 | $9.63 | $10.80 | 12/26/2019 | $9.34 | $9.83 |
| 11/13/2019 | $9.70 | $10.71 | 12/27/2019 | $9.54 | $9.83 |
| 11/14/2019 | $9.65 | $10.63 | 12/30/2019 | $9.15 | $9.81 |
| 11/15/2019 | $9.51 | $10.55 | 12/31/2019 | $9.12 | $9.79 |
| 11/18/2019 | $8.99 | $10.44 | 1/2/2020 | $9.99 | $9.80 |
| 11/19/2019 | $9.06 | $10.36 | 1/3/2020 | $10.04 | $9.80 |
| 11/20/2019 | $8.96 | $10.27 | 1/6/2020 | $9.91 | $9.81 |
| 11/21/2019 | $9.02 | $10.20 | 1/7/2020 | $9.48 | $9.80 |
| 11/22/2019 | $9.45 | $10.16 | 1/8/2020 | $9.23 | $9.79 |
| 11/25/2019 | $9.82 | $10.15 | 1/9/2020 | $9.01 | $9.77 |
| 11/26/2019 | $9.60 | $10.12 | 1/10/2020 | $8.62 | $9.75 |
| 11/27/2019 | $9.70 | $10.10 | 1/13/2020 | $9.04 | $9.74 |
| 11/29/2019 | $9.68 | $10.08 | 1/14/2020 | $9.00 | $9.72 |
| 12/2/2019 | $9.07 | $10.04 | 1/15/2020 | $8.43 | $9.70 |
| 12/3/2019 | $9.10 | $10.00 | 1/16/2020 | $8.69 | $9.68 |
| 12/4/2019 | $9.05 | $9.97 | 1/17/2020 | $8.57 | $9.66 |
| 12/5/2019 | $9.23 | $9.94 | 1/21/2020 | $8.10 | $9.63 |

| Date | Closing Price | Average Closing Price Between October 29, 2019 and Date Shown | | Date | Closing Price | Average Closing Price Between October 29, 2019 and Date Shown |
|---|---|---|---|---|---|---|
| 12/6/2019 | $9.63 | $9.93 | | 1/22/2020 | $7.93 | $9.60 |
| 12/9/2019 | $9.87 | $9.93 | | 1/23/2020 | $7.62 | $9.57 |
| 12/10/2019 | $9.91 | $9.93 | | 1/24/2020 | $7.47 | $9.53 |

### ADDITIONAL PROVISIONS OF THE PLAN OF ALLOCATION

63.    The sum of a Claimant's Recognized Loss Amounts will be the Claimant's "Recognized Claim."

64.    The Net Settlement Fund will be distributed to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claims.  Specifically, a "Distribution Amount" will be calculated for each Authorized Claimant, which will be the Authorized Claimant's Recognized Claim divided by the total Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund.  Given the costs of distribution, the Net Settlement Fund will be allocated among all Authorized Claimants whose Distribution Amount is $10.00 or greater.

65.    Purchases and sales of Peabody publicly traded common stock will be deemed to have occurred on the "contract" or "trade" date as opposed to the "settlement" or "payment" date.  The receipt or grant of shares of Peabody publicly traded common stock by gift, inheritance, or operation of law during the Settlement Class Period will not be deemed an eligible purchase or sale of publicly traded common stock for the calculation of a Claimant's Recognized Claim, nor will the receipt or grant be deemed an assignment of any claim relating to the purchase of common stock unless (i) the donor or decedent purchased the shares during the Settlement Class Period; (ii) no Claim Form was submitted by or on behalf of the donor, on behalf of the decedent, or by anyone else with respect to those shares; and (iii) it is specifically so provided in the instrument of gift or assignment.

66.    The date of covering a "short sale" will be deemed to be the date of purchase of the Peabody common stock.  The date of a "short sale" will be deemed to be the date of sale of Peabody common stock.  Under the Plan of Allocation, however, the Recognized Loss Amount on "short sales" is zero.  In the event that a Claimant has an opening short position in Peabody common stock, his, her, or its earliest Settlement Class Period purchases of Peabody common stock will be matched against the opening short position, and not be entitled to a recovery, until that short position is fully covered.

67.    Option contracts are not securities eligible to participate in the Settlement.  With respect to shares of Peabody common stock purchased or sold through the exercise of an option, the purchase/sale date of the Peabody common stock is the exercise date of the option and the purchase/sale price of the Peabody common stock is the exercise price of the option.

68.    Distributions will be made to eligible Authorized Claimants after all claims have been processed and after the Court has finally approved the Settlement. If there is any balance remaining in the Net Settlement Fund (whether by reason of tax refunds, uncashed checks or otherwise) after at least six (6) months from the date of initial distribution of the Net Settlement Fund, and after payment of outstanding Notice and Administration Expenses, Settlement Fund Taxes, attorneys' fees and expenses, if any, the Claims Administrator shall, if feasible and economical, redistribute (redistributions may occur on multiple occasions) such balance among Authorized Claimants who have cashed their checks in an equitable and economic fashion.  Once it is no longer feasible or economical to make further distributions, any balance that still remains in the Net Settlement Fund after re-distribution(s) and after payment of outstanding Notice and Administration Expenses, Settlement Fund Taxes, and attorneys' fees and expenses, if any, shall be contributed to a non-sectarian, not-for-profit charitable organization certified as tax-exempt under Section 501(c)(3) of the Code and serving the public interest, designated by Lead Plaintiff and approved by the Court

69.    Payment pursuant to the Plan of Allocation or such other plan of allocation as may be approved by the Court will be conclusive against all Claimants.  No person will have any claim against Lead Plaintiff, Lead Counsel, the Claims Administrator, or other agent designated by Lead Counsel, arising from determinations or distributions to Claimants made substantially in accordance with the Stipulation, the Plan of Allocation approved by the Court, or further orders of the Court.  Lead Plaintiff, Defendants, Defendants' Counsel, and all other Released

Parties will have no responsibility for or liability whatsoever for the investment or distribution of the Settlement Fund, the Net Settlement Fund, the Plan of Allocation or the determination, administration, calculation, or payment of any Claim Form or non-performance of the Claims Administrator, the payment or withholding of Settlement Fund Taxes owed by the Settlement Fund or any losses incurred in connection therewith.

70.    Each Claimant is deemed to have submitted to the jurisdiction of the United States District Court for the Southern District of New York with respect to his, her, or its claim.

### SPECIAL NOTICE TO SECURITIES BROKERS AND NOMINEES

71.    If you purchased or otherwise acquired[7] Peabody publicly traded common stock during the Settlement Class Period for the beneficial interest of a person or entity other than yourself, the Court has directed that **WITHIN TEN (10) CALENDAR DAYS OF YOUR RECEIPT OF THIS NOTICE**, **YOU MUST EITHER**: (a) provide a list of the names, addresses, and emails of all such beneficial owners/purchasers to the Claims Administrator and the Claims Administrator is ordered to send the Notice promptly to such identified beneficial owners/purchasers; or (b) request additional copies of this Notice and the Claim Form from the Claims Administrator, which will be provided to you free of charge, and **WITHIN TEN (10) CALENDAR DAYS** of receipt, mail or email the Notice and Claim Form directly to all the beneficial owners/purchasers of those shares. If you choose to follow procedure (b), the Court has also directed that, upon mailing or emailing the Notice and Claim Form, **YOU MUST SEND A STATEMENT** to the Claims Administrator confirming that the distribution was made as directed and keep a record of the names, emails, and mailing addresses used.  You are entitled to reimbursement from the Settlement Fund of your reasonable out-of-pocket expenses incurred in providing notice to beneficial owners of up to: $0.05 per Notice Packet, plus postage at the current pre-sort rate used by the Claims Administrator, for Notice Packets mailed; $0.05 per mailing record and email address provided to the Claims Administrator; and $0.05 per email of the Notice Packet by providing the Claims Administrator with proper documentation supporting the expenses for which reimbursement is sought. Your expenses will be paid upon request and submission of appropriate supporting documentation and timely compliance with the above directives. All communications concerning the foregoing should be addressed to the Claims Administrator:

*Peabody Securities Litigation*
c/o Strategic Claims Services
P.O. Box 230
600 N. Jackson St., Ste. 205
Media, PA 19063
Tel.: (866) 274-4004
Fax: (610) 565-7985
info@strategicclaims.net

**PLEASE NOTE**: Peabody common shares reissued to your customers on or around April 3, 2017 pursuant to the Second Amended Joint Plan of Reorganization and Emergence from the Chapter 11 Cases are not eligible acquisitions.

Dated: October 27, 2022                                    BY ORDER OF THE
                                                           UNITED STATES DISTRICT COURT
                                                           SOUTHERN DISTRICT OF NEW YORK

---

[7] Peabody common shares reissued to Settlement Class Members in accordance with the Second Amended Joint Plan of Reorganization and Emergence from the Chapter 11 Cases are not eligible acquisitions.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| | : | Case No. 1:20-cv-08024-PKC |
| IN RE PEABODY ENERGY CORP. | : | |
| SECURITIES LITIGATION | : | |
| | : | |

**PROOF OF CLAIM AND RELEASE FORM**

**I.   GENERAL INSTRUCTIONS**

1.      To recover as a member of the Settlement Class based on your claims in the class action entitled *In re Peabody Energy Corp. Sec. Litig.*, No. 1:20-cv-08024-PKC (S.D.N.Y.) (the "Action"), you must complete and, on page 19 below, sign this Proof of Claim and Release form ("Claim Form").  If you fail to submit a timely and properly addressed (as explained in paragraph 2 below) Claim Form, your claim may be rejected and you may not receive any recovery from the Net Settlement Fund created in connection with the proposed Settlement.  Submission of this Claim Form, however, does not assure that you will share in the proceeds of the Settlement of the Action.

**2.      THIS   CLAIM   FORM   MUST   BE   SUBMITTED   ONLINE   AT WWW.STRATEGICCLAIMS.NET/PEABODY/ NO LATER THAN FEBRUARY 2, 2023 OR, IF MAILED, BE POSTMARKED NO LATER THAN FEBRUARY 2, 2023, ADDRESSED AS FOLLOWS:**

*Peabody Securities Litigation*
c/o Strategic Claims Services
P.O. Box 230
600 N. Jackson St., Ste. 205
Media, PA 19063
Tel.: (866) 274-4004
Fax: (610) 565-7985
info@strategicclaims.net

3.      If you are a member of the Settlement Class and you do not timely request exclusion in response to the Notice dated October 27, 2022, you will be bound by and subject to the terms of any judgment entered in the Action, including the releases provided therein, WHETHER OR NOT YOU SUBMIT A CLAIM FORM OR RECEIVE A PAYMENT.

**II.   CLAIMANT IDENTIFICATION**

4.      If you purchased or acquired shares of the publicly traded common stock of Peabody Energy Corporation ("Peabody" or the "Company") during the period from April 3, 2017 through October 28, 2019, inclusive (the "Settlement Class Period") and held the stock in your name, you are the beneficial owner as well as the record owner.  If, however, you purchased Peabody publicly traded common stock during the Settlement Class Period through a third party, such as a brokerage firm, you are the beneficial owner and the third party is the record owner.

5.      **PLEASE NOTE**: If you ONLY received shares on or around April 3, 2017 as a result of Peabody's reissuance of shares in accordance with the Second Amended Joint Plan of Reorganization and Emergence from the Chapter 11 cases then pending before the U.S. Bankruptcy Court for the Eastern District of Missouri (*In re Peabody Energy Corporation, et al.*, Case No. 16-42529, "Chapter 11 Cases"), **DO NOT SUBMIT A CLAIM FORM**.  Those shares are not eligible for a recovery because they were originally purchased before the Settlement Class Period.  Only submit a Claim Form if you purchased new publicly traded shares during the Settlement Class Period.

6.      Use **Part I** of this form entitled "Claimant Identification" to identify each beneficial owner of Peabody publicly traded common stock that forms the basis of this claim, as well as the owner of record if different.

- 15 -

THIS CLAIM MUST BE FILED BY THE ACTUAL BENEFICIAL OWNERS OR THE LEGAL REPRESENTATIVE OF SUCH OWNERS.

7.     All joint owners must sign this claim.  Executors, administrators, guardians, conservators, legal representatives, and trustees must complete and sign this claim on behalf of persons represented by them and their authority must accompany this claim and their titles or capacities must be stated.  The Social Security (or taxpayer identification) number and telephone number of the beneficial owner may be used in verifying the claim.  Failure to provide the foregoing information could delay verification of your claim or result in rejection of the claim.

### III.     IDENTIFICATION OF TRANSACTIONS

8.     Use **Part II** of this form entitled "Schedule of Transactions in Peabody Publicly Traded Common Stock" to supply all required details of your transaction(s) in Peabody publicly traded common stock, whether the transactions resulted in a profit or a loss.  If you need more space or additional schedules, attach separate sheets giving all of the required information in substantially the same form.  Sign and print or type your name on each additional sheet.  Failure to report all transactions may result in the rejection of your claim.

9.     The date of covering a "short sale" is deemed to be the date of purchase of Peabody publicly traded common stock.  The date of a "short sale" is deemed to be the date of sale.

10.     Copies of broker confirmations or other documentation of your transactions must be attached to your claim.  Failure to provide this documentation could delay verification of your claim or result in rejection of your claim.  **THE PARTIES DO NOT HAVE INFORMATION ABOUT YOUR TRANSACTIONS IN PEABODY PUBLICLY TRADED COMMON STOCK.**

11.     NOTICE REGARDING ELECTRONIC FILES: Certain Claimants with large numbers of transactions may request, or may be requested, to submit information regarding their transactions in electronic files. (This is different than the online claim portal on the Claim's Administrator's website.)  All such Claimants MUST submit a manually signed paper Claim Form whether or not they also submit electronic copies.  If you wish to submit your claim electronically, you must contact the Claims Administrator at (866) 274-4004 or at efile@strategicclaims.net to obtain the required file layout.  No electronic files will be considered to have been properly submitted unless the Claims Administrator issues to the Claimant a written acknowledgment of receipt and acceptance of electronically submitted data.

PEABODY

## PART I – CLAIMANT IDENTIFICATION

The Claims Administrator will use this information for all communications regarding this Claim Form.  If this information changes, you MUST notify the Claims Administrator in writing at the address above.  Complete names of all persons and entities must be provided.

Beneficial Owner's Name

Co-Beneficial Owner's Name

Entity Name (if claimant is not an individual)

Representative or Custodian Name (if different from Beneficial Owner(s) listed above)

Address1 (street name and number)

Address2 (apartment, unit, or box number)

| City | State | ZIP/Postal Code |
|------|-------|-----------------|
|      |       |                 |

Foreign Country (only if not USA)

| Social Security Number (last four digits only) | | Taxpayer Identification Number (last four digits only) |
|---|---|---|
| | OR | |

| Telephone Number (home) | Telephone Number (work) |
|-------------------------|-------------------------|
|                         |                         |

Email address

Account Number (if filing for multiple accounts, file a separate Claim Form for each account)

Claimant Account Type (check appropriate box):

☐ Individual (includes joint owner accounts)    ☐ Pension Plan    ☐ Trust
☐ Corporation    ☐ Estate
☐ IRA/401K    ☐ Other _____ (please specify)

- 17 -

PEABODY

## PART II - TRANSACTIONS IN PEABODY PUBLICLY TRADED COMMON STOCK

**1. BEGINNING HOLDINGS -** State the total number of shares of Peabody common stock held at the opening of trading on April 3, 2017.  Include all shares held at the opening of trading, **even if they were also reissued to you on or after April 3, 2017 as a result of the Second Amended Joint Plan of Reorganization**.[8]  If none, write "0" or "Zero." (Must submit documentation.)

_____

**2.  PURCHASES DURING THE SETTLEMENT CLASS PERIOD** – Separately list each and every purchase of Peabody common stock from April 3, 2017 through October 28, 2019. **Do not include Peabody shares that were reissued to you as a result of the Second Amended Joint Plan of Reorganization.**  (Must submit documentation.)

| Date of Purchase (List Chronologically) (MM/DD/YY) | Number of Shares Purchased | Purchase Price Per Share | Total Purchase Price (excluding taxes, commissions, and fees) |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

**3.  PURCHASES DURING 90-DAY LOOKBACK PERIOD** – State the total number of shares of Peabody common stock purchased from October 29, 2019 through January 24, 2020.[9]  (Must submit documentation.)  _____

**4.  SALES DURING THE SETTLEMENT CLASS PERIOD AND DURING THE 90-DAY LOOKBACK PERIOD** – Separately list each and every sale of Peabody common stock from April 3, 2017 through and including January 24, 2020.  (Must submit documentation.)

| Date of Sale (List Chronologically) (MM/DD/YY) | Number of Shares Sold | Sale Price Per Share | Total Sale Price (excluding taxes, commissions and fees) |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

**5.  ENDING HOLDINGS** – State the total number of shares of Peabody common stock held as of the close of trading on January 24, 2020.  If none, write "0" or "Zero." (Must submit documentation.)

_____

**IF YOU NEED ADDITIONAL SPACE TO LIST YOUR TRANSACTIONS YOU MUST PHOTOCOPY THIS PAGE AND CHECK THIS BOX** [ ]

---

[8] Before the Settlement Class Period, Peabody publicly traded common stock traded under the symbol BTUUQ and CUSIP # 704549104.  After the effective date of the Reorganization Plan, beginning on April 3, 2017, shares were traded under the symbol BTU and CUSIP # 704551100.

[9] Information requested in this Claim Form with respect to your transactions on October 29, 2019 through, and including, January 24, 2020, is needed only in order for the Claims Administrator to confirm that you have reported all relevant transactions.  Purchases during this period, however, are not eligible for a recovery because these purchases are outside the Settlement Class Period.

PEABODY

## IV. SUBMISSION TO JURISDICTION OF COURT AND ACKNOWLEDGMENTS

12.     By signing and submitting this Claim Form, the Claimant(s) or the person(s) acting on behalf of the Claimant(s) certify(ies) that: I (We) submit this Claim Form under the terms of the Plan of Allocation described in the accompanying Notice.  I (We) also submit to the jurisdiction of the United States District Court for the Southern District of New York (the "Court") with respect to my (our) claim as a Settlement Class Member(s) and for purposes of enforcing the releases set forth herein.  I (We) further acknowledge that I (we) will be bound by and subject to the terms of any judgment entered in connection with the Settlement in the Action, including the releases set forth therein.  I (We) agree to furnish additional information to the Claims Administrator to support this claim, such as additional documentation for transactions in publicly traded Peabody common stock, if required to do so.  I (We) have not submitted any other claim covering the same transactions in Peabody publicly traded common stock during the Settlement Class Period and know of no other person having done so on my (our) behalf.

## V. RELEASES, WARRANTIES, AND CERTIFICATION

13.     I (We) hereby warrant and represent that I am (we are) a Settlement Class Member as defined in the Notice, that I am (we are) not excluded from the Settlement Class, that I am (we are) not one of the "Released Defendant Parties" as defined in the accompanying Notice.

14.     As a Settlement Class Member, I (we) hereby acknowledge full and complete satisfaction of, and do hereby fully, finally, and forever compromise, settle, release, resolve, relinquish, waive, and discharge with prejudice the Released Claims as to each and all of the Released Defendant Parties (as these terms are defined in the accompanying Notice).  This release shall be of no force or effect unless and until the Court approves the Settlement and it becomes effective on the Effective Date.

15.     I (We) hereby warrant and represent that I (we) have not assigned or transferred or purported to assign or transfer, voluntarily or involuntarily, any matter released pursuant to this release or any other part or portion thereof.

16.     I (We) hereby warrant and represent that I (we) have included information about all of my (our) purchases and sales of Peabody publicly traded common stock that occurred during the Settlement Class Period and the number of shares held by me (us), to the extent requested.

17.     I (We) certify that I am (we are) NOT subject to backup tax withholding.  (If you have been notified by the Internal Revenue Service that you are subject to backup withholding, please strike out the prior sentence.)

I (We) declare under penalty of perjury under the laws of the United States of America that all of the foregoing information supplied by the undersigned is true and correct.

Executed this _____ day of _____, 202__.

_____        _____
Signature of Claimant                                          Type or print name of Claimant

_____        _____
Signature of Joint Claimant, if any                       Type or print name of Joint Claimant

_____        _____
Signature of person signing on behalf            Type or print name of person signing
of Claimant                                                        on behalf of Claimant

_____
Capacity of person signing on behalf of Claimant, if other than an individual
(e.g., Administrator, Executor, Trustee, President, Custodian, Power of Attorney, etc.)

- 19 -

*Peabody Securities Litigation*
c/o Strategic Claims Services
600 N. Jackson St., Suite 205
Media, PA 19063

**IMPORTANT LEGAL NOTICE – PLEASE FORWARD**

**REMINDER CHECKLIST:**

1.    Please sign this Claim Form.
2.    DO NOT HIGHLIGHT THE CLAIM FORM OR YOUR SUPPORTING DOCUMENTATION.
3.    Attach only copies of supporting documentation as these documents will not be returned to you.
4.    Keep a copy of your Claim Form for your records.
5.    The Claims Administrator will acknowledge receipt of your Claim Form by mail, within 60 days.  **Your claim is not deemed submitted until you receive an acknowledgment postcard.**  If you do not receive an acknowledgment postcard within 60 days, please call the Claims Administrator toll free at (866) 274-4004.
6.    If you move after submitting this Claim Form please notify the Claims Administrator of the change in your address, otherwise you may not receive additional notices or payment.

# EXHIBIT B

# AFFIDAVIT

**STATE OF NEW JERSEY**                    )
                                                                  ) ss:
**CITY OF MONMOUTH JUNCTION, in the COUNTY OF MIDDLESEX )**

I, Keith Oechsner, being duly sworn, depose and say that I am the Advertising Clerk of the Publisher

of THE WALL STREET JOURNAL, a daily national newspaper of general circulation throughout

 the United States, and that the notice attached to this Affidavit has been regularly

published in THE WALL STREET JOURNAL for National distribution for

 1   insertion(s) on the following date(s):

NOV-10-2022;

ADVERTISER: Peabody Energy Corp.;

and that the foregoing statements are true and correct to the best of my knowledge.

_____

 Sworn to before me this
 10   day of   November     2022

_____
Notary Public



IAN C MARTIN
NOTARY PUBLIC
ID #
50086494
COMMISSION
EXPIRES
7/18/2023
STATE OF NEW JERSEY

## BUSINESS & FINANCE

# Rivian Posts $1.74 Billion Loss for Quarter

Electric truck and SUV startup confronts higher costs as well as assembly-line issues

By Sean McLain

**Performance, year to date**



Source: FactSet

LOS ANGELES—Electric-vehicle startup **Rivian Automotive** Inc. said Wednesday it lost $1.74 billion in the third quarter—about the same as it did for the April-to-June period—as it continued to struggle with higher materials costs and underused assembly lines.

The Irvine, Calif., company said revenue totaled $536 million, reflecting increased production at its factory in Normal, Ill. and higher deliveries to customers.

The company's net loss of $1.88 a share beat analysts' expectations of a $2 loss, according to FactSet.

The battery-powered truck and sport-utility vehicle maker previously said it produced 7,363 vehicles during the quarter and delivered 6,584 vehicles to customers. That means Rivian must produce a little over 10,000 vehicles to hit its 25,000 production target for the full year.

Rivian reiterated that it was on track to hit that target, a reduced figure it set after running into production issues at its factory.

Still, the company continues to burn through cash as it spends heavily to expand operations and gets hit by inflationary pressures that are pushing up materials and parts expenses.

At the end of September, it had $13.8 billion in cash and cash equivalents, compared with $15.46 billion at the end of June.

The results come at a crucial time for the young car maker as it seeks to prove it can build vehicles at volume in a challenging financial environment Rivian is the most prominent of a handful of EV startups to go public in recent years with lofty valuations and ambitions to shake up the automotive pecking order. Since then, market sentiment toward these upstarts has cooled. Rivian shares are down nearly 73% for the year, and the company recently laid off 6% of its workforce and curtailed spending to conserve cash.

The manufacturer attributed its quarterly loss in part to building a low volume of vehicles on assembly lines that were designed for much higher output. It also booked higher operating expenses, mostly due to stock-based compensation expenses, including one not recognized before its November initial public offering.

Other EV startups also have faced production problems, leading them to raise additional capital to keep operations going.

Lucid Group Inc. said Tuesday it planned to generate up to $1.5 billion through a pair of share sales. The maker of luxury electric vehicles slashed its manufacturing target twice this year after encountering issues at its factory in Arizona.

Earlier this year, Rivian recalled nearly all the vehicles it had built, after discovering improperly installed fasteners on some of its trucks and SUVs. In extreme cases, the loose fasteners could cause a wheel to separate from the vehicle, the company said.

The maker of the R1T pickup truck and R1S SUV has also raised the prices of its cheapest vehicles by several thousand dollars in the face of rising raw-material costs. Other car makers have made similar price increases, citing higher costs on commodity parts and inputs for batteries.

The company still has expansion plans, with a planned $5 billion factory in Georgia that would allow it to produce up to 400,000 more vehicles a year, including a more affordable model, dubbed the R2.

Rivian said Wednesday it was working with Georgia authorities on the factory plans and expected the R2 to launch in 2026.

Rivian also said in September that it was considering working with Mercedes-Benz Group AG to establish a new European factory, which would build vans for both companies.



The assembly line at startup Rivian Automotive's electric vehicle factory in Normal, Ill.

---

# Japanese Firms' Earnings Get Boost From Weak Yen

By River Davis

TOKYO—Top Japanese companies are expecting healthy profits this year despite parts shortages leaving them unable to ship many products ranging from cars to gaming devices.

The yen's fall to a three-decade low against the dollar this year has more than offset difficulties for exporters in meeting demand because of the boost it has given to the value of earnings from overseas.

**Honda Motor** Co. and **Nissan Motor** Co. raised their profit forecasts for the fiscal year through March on Wednesday, thanks in large part to the impact of foreign-exchange rates. The auto makers issued the brighter outlooks despite forecasting they will sell fewer vehicles due to continuing chip shortages.

Honda executive Eiji Fujimura said the company's sales revenue target for the current year would be a record if achieved. But, because much of that is attributable to currency effects rather than sales volumes, "we do not say proudly this is a record high," Mr. Fujimura said.

Though a weak yen makes it more expensive to import some commodities and components and squeezes domestically focused companies, it is typically a boon for big multinational Japanese manufacturers. In addition to boosting the yen-denominated value of company earnings, a weak currency means that products made in Japan are more competitive when sold abroad.

The yen was trading Wednesday at around 145 to the dollar, compared with about 115 to the dollar at the beginning of this year. Recently, the currency hit a 32-

> The yen's fall has more than offset exporters' problems in meeting demand.

year low, leading Japan's government to spend more than $40 billion last month in an effort to prop up the yen.

As of Tuesday, 223 companies in Japan's Topix index raised their net profit outlooks for the fiscal year ending March 2023, according to data from SMBC Nikko Securities. That compares with 109 companies that cut their forecasts.

On Tuesday, gaming company **Nintendo** Co. raised its net profit forecast for the year to the equivalent of around $2.7 billion—up nearly one-fifth from an earlier outlook thanks to foreign-exchange effects. That is despite Nintendo lowering its annual sales forecast for Switch consoles by two million units due to shortages of chips and other components.

The weak yen also lifted **Sony Group** Corp.'s earnings last week. Segments such as Sony's image sensor business are particularly benefiting, with impact from the currency making up more than half of the business's operating profit for the July-September quarter.

The same day, **Toyota Motor** Corp. said it was keeping its previous profit guidance for the current year despite trimming its production plan by 500,000 vehicles. Toyota said it expected a $7.4 billion boost to operating profit from currency impacts.

While Japanese auto makers say they are optimistic that a backlog of pent-up demand will carry forward, Toyota Chief Financial Officer Kenta Kon said last week that the auto maker is having to factor in an array of variables into its future forecasts.

On top of the yen's fluctuations, those include rising raw-materials prices, semiconductor shortages, interest-rate increases and inflation, he said. "My honest opinion is that it's difficult to predict the auto industry six months ahead, let alone Toyota's earnings," Mr. Kon said.

**Median change from a year earlier in total debt at S&P 500 companies during the third quarter**



| | |
|---|---|
| Utilities | 8.2% |
| Real estate | 3.2 |
| Consumer discretionary | 3.2 |
| Financials | 2.1 |
| All S&P 500 companies | 0.3 |
| Industrials | 0 |
| Materials | –1.3 |
| Technology | –1.4 |
| Consumer staples | –2.3 |
| Communication services | –2.4 |
| Energy | –3.4 |
| Healthcare | –4.7 |

**Three-month London interbank offered rate**

Nov. 8 4.6%

Sources: S&P Global Market Intelligence (median total debt); FactSet (LIBOR)

---

## *Companies Pay Down Their Debt*

*Continued from page B1*
payment reduces refinancing risk in a rising rate environment," Edward Breen, chief executive at the Wilmington, Del.-based company, said during an earnings call.

Before the Fed's latest rate increase, e.l.f. Beauty paid an annual interest rate of 4.9% on the loan, according to Mandy Fields, the company's chief financial officer. That rate, which adjusts quarterly, is set to increase to nearly 6% during the current quarter, she said. "It felt like a good time to step back and say, 'We built this great cash balance. How can we put it to use in a better way?'" Ms. Fields said.

E.l.f. Beauty's had $85.3 million in cash and equivalents on its balance sheet as of Sept. 30, more than double compared with a year earlier. The company's sales have been strong despite fears of a downturn as the company, whose mass-market products include a $3 lipstick, benefited from strong demand.

Noninvestment grade companies, and particularly those with floating-rate debt, are more urgently looking for ways to trim interest costs than higher-rated companies, which have ample cash and access to the capital markets, said David White, a senior managing director who advises CFOs at FTI Consulting Inc.

"If I have closer to a junk rating, that's a game changer. It's all about the here and now," Mr. White said, describing the sense of urgency among such companies.

Total debt at companies in the S&P 500 that reported third-quarter earnings through Nov. 4 remained about flat during the quarter from a year earlier, increasing by 0.3% at the median to just over $9.3 trillion, according to S&P Global Market Intelligence. Sectors including healthcare, consumer staples and information technology have cut their total debt by median values of 5%, 2% and 1%, respectively. Others, including consumer discretionary and real estate, have increased their debt loads, S&P said.

**KAR Auction Services** Inc., which operates a digital marketplace for second hand cars, used the $1.7 billion after-tax net proceeds that it generated from the May sale of its ADESA U.S. wholesale auction business to pay down debt ahead of schedule.

KAR, which has a junk rating, is looking to trim its expenses as it plans for a macroeconomic slowdown and aims to operate as a leaner, digital business, said Eric Loughmiller, the company's finance chief. "I would much rather, if I had my choice, reduce my interest burden and keep my technology team at full capacity," he said.

During the third quarter, KAR completed a tender offer, buying $600 million of its $950 million in outstanding bonds. The debt carried a 5.125% coupon and was due in 2025. Additionally, KAR three months earlier repaid an approximately $900 million term loan. About two-thirds of the loan carried a 5% interest rate that was fixed through a swap, which was set to expire in 2025. The rate was set to increase to at least 7%, according to Mr. Loughmiller.

The two transactions reduced KAR's annual interest costs by $70 million, or an estimated $15 million a year, Mr. Loughmiller said.

Smaller companies are making similar calculations. Toy and costume company **JAKKS Pacific** Inc. during the third quarter made an advance payment of $17.5 million on its floating-rate term loan, Chief Financial Officer John Kimble said. The interest rate on the loan was about 7.5% as of June 2021, when the company refinanced, and during the current quarter increased to 10.2%, Mr. Kimble said.

Sales at the Santa Monica, Calif.-based company increased 36% during the quarter ended Sept. 30 compared with a year earlier to $323 million, due in part to retailers buying inventory early, as well as the popularity of toys tied to films including Disney's Encanto. Profit slipped 16%, to $30.3 million.

Using cash to pay down debt made sense because the company wasn't earning interest on its bank deposits. It was also worth it to incur a $525,000 paydown fee because the company freed up additional savings that could be spent elsewhere internally, Mr. Kimble said.

JAKKS three years ago was recapitalized after it struggled following the bankruptcy of Toys "R" Us, one of its largest vendors at the time. As JAKKS boosts sales and gets its business on solid footing, it aims to improve the quality of its balance sheet, Mr. Kimble said. "We're kind of like a consumer household that has too much credit card debt," he said.

*—Nina Trentmann contributed to this article.*

---

ADVERTISEMENT

## The Marketplace

To advertise: 800-366-3975 or WSJ.com/classifieds

**CLASS ACTION**

**UNITED STATES DISTRICT COURT, SOUTHERN DISTRICT OF NEW YORK**
IN RE PEABODY ENERGY CORP. SECURITIES LITIGATION    Case No. 1:20-cv-08024-PKC

**SUMMARY NOTICE OF PENDENCY OF CLASS ACTION, PROPOSED SETTLEMENT, AND MOTION FOR ATTORNEYS' FEES AND EXPENSES**

**To:** all persons and entities who or which purchased or otherwise acquired Peabody Energy Corp. publicly traded common stock during the period from April 3, 2017 through October 28, 2019, inclusive (the "Settlement Class Period"), and were damaged thereby (the "Settlement Class")

YOU ARE HEREBY NOTIFIED, pursuant to Rule 23 of the Federal Rules of Civil Procedure and an Order of the United States District Court for the Southern District of New York, that Lead Plaintiff Oregon Public Employees Retirement Fund ("Lead Plaintiff"), on behalf of itself and all members of the Settlement Class, and Peabody Energy Corporation ("Peabody" or the "Company"), Glenn L. Kellow, and Amy B. Schwetz (collectively, "Defendants," and, together with Lead Plaintiff, the "Parties"), have reached a proposed settlement of the claims in the above-captioned class action (the "Action") and related claims in the amount of $4,625,000 (the "Settlement").

A hearing will be held before the Honorable P. Kevin Castel on February 7, 2023, at 2:30 p.m. in Courtroom 11D of the United States District Court for the Southern District of New York, Daniel Patrick Moynihan U.S. Courthouse, 500 Pearl Street, New York, NY 10007 (the "Settlement Hearing") to determine whether the Court should: (i) approve the proposed Settlement as fair, reasonable, and adequate; (ii) dismiss the Action with prejudice as provided in the Stipulation and Agreement of Settlement, dated October 7, 2022; (iii) approve the proposed Plan of Allocation for distribution of the proceeds of the Settlement (the "Net Settlement Fund") to Settlement Class Members; and (iv) approve Lead Counsel's Fee and Expense Application. The Court may change the date of the Settlement Hearing without providing another notice. You do NOT need to attend the Settlement Hearing to receive a distribution from the Net Settlement Fund.

IF YOU ARE A MEMBER OF THE SETTLEMENT CLASS, YOUR RIGHTS WILL BE AFFECTED BY THE PROPOSED SETTLEMENT AND YOU MAY BE ENTITLED TO A MONETARY PAYMENT. If you have not yet received a full Notice and Claim Form, you may obtain copies of these documents by visiting the Claims Administrator's website www.strategicclaims.net/Peabody/, or by contacting the Claims Administrator at:

Peabody Securities Litigation
c/o Strategic Claims Services
P.O. Box 230, 600 N. Jackson Street, Suite 205, Media, PA 19063
www.strategicclaims.net/Peabody/
(866) 274-4004

Inquiries, other than requests for information about the status of a claim, may also be made to Lead Counsel:

LABATON SUCHAROW LLP
Christine M. Fox, Esq.
140 Broadway, New York, NY 10005
settlementquestions@labaton.com
(888) 219-6877

If you are a Settlement Class Member, to be eligible to share in the distribution of the Net Settlement Fund, you must submit a Claim Form **postmarked or submitted online no later than February 2, 2023.** If you are a Settlement Class Member and do not timely submit a valid Claim Form, you will not be eligible to share in the distribution of the Net Settlement Fund, but you will nevertheless be bound by all judgments or orders entered by the Court, whether favorable or unfavorable.

If you are a Settlement Class Member and wish to exclude yourself from the Settlement Class, you must submit a written request for exclusion in accordance with the instructions set forth in the Notice so that it is **received no later than January 17, 2023.** If you properly exclude yourself from the Settlement Class, you will not be bound by any judgments or orders entered by the Court, whether favorable or unfavorable, and you will not be eligible to share in the distribution of the Net Settlement Fund.

Any objections to the proposed Settlement, Lead Counsel's Fee and Expense Application, and/or the proposed Plan of Allocation must be filed with the Court, either by mail or in person, and be mailed to counsel for the Parties in accordance with the instructions in the Notice, such that they are **received no later than January 17, 2023.**

PLEASE DO NOT CONTACT THE COURT, DEFENDANTS, OR DEFENDANTS' COUNSEL REGARDING THIS NOTICE

DATED: NOVEMBER 10, 2022                BY ORDER OF THE UNITED STATES DISTRICT COURT
                                                                 SOUTHERN DISTRICT OF NEW YORK

**BUSINESS OPPORTUNITIES**

▶▶ For Sale ◀◀
4 - SWECO GyraMax™ Big Max
Brand New - Model GQD
5412 Gyratory Sifter
Call Teighlor
**940-595-3210**

WANTED
We are looking for an existing publicly-traded company with world-wide manufacturing capabilities. We have invented a product that will be bigger than the Smartphone. In confidence, please contact us at
bpfconsulting@outlook.com
(215) 588-1669

**Deep Gas Investment**
Tax deductible / $50,000 min.
Approx. 150% return + royalties
Accredited Only
Call Frank 713-503-4225

**COMMERCIAL REAL ESTATE**

**Tulsa County Oklahoma**
**Gas Gathering System**
For Sale with 15 miles of pipeline complete with plant site.
**$850,000**
▶▶▶ Call 918-836-6767 ◀◀◀

A DuPont plant in Luxembourg. The company plans to retire $2.5 billion of senior notes due in 2023.

## jbravata@strategicclaims.net

| | |
|---|---|
| **From:** | phhubs@prnewswire.com |
| **Sent:** | Thursday, November 10, 2022 9:00 AM |
| **To:** | jbravata@strategicclaims.net |
| **Subject:** | PR Newswire: Press Release Distribution Confirmation for Labaton Sucharow LLP. ID# 3699901-1-1 |

Hello

Your press release was successfully distributed at: 10-Nov-2022 09:00:00 AM ET

Release headline: Labaton Sucharow LLP Announces Proposed Securities Class Action Settlement on Behalf of Purchasers of Peabody Energy Corp. Publicly Traded Common Stock – BTU
Word Count: 748
Product Selections:
US1
Visibility Reports Email
Complimentary Press Release Optimization
PR Newswire ID: 3699901-1-1

View your release:* https://www.prnewswire.com/news-releases/labaton-sucharow-llp-announces-proposed-securities-class-action-settlement-on-behalf-of-purchasers-of-peabody-energy-corp-publicly-traded-common-stock--btu-301669479.html?tc=eml_cleartime

Thank you for choosing PR Newswire!

Regards,

Your 24/7 Content Services Team
888-776-0942
PRNCS@prnewswire.com

Achieve your communications goals every time you distribute content, with these tips for crafting your next perfect press release: https://www.cision.com/us/resources/tip-sheets/easy-pr-sharing-guide/?sf=false

US Members, find audience, engagement and other key metrics for your release by accessing your complimentary Visibility Reports in the Online Member Center: https://portal.prnewswire.com/Login.aspx

* If the page link does not load immediately, please refresh and try again after a few m inutes.

# EXHIBIT C

12/17/2022

I, Randolph Arcinieon, wish to be excluded from the Settlement Class In re Peabody Energy Corp. Sec. Litig., No. 1:20-cv-08024-PKC (S.D.N.Y.),

address:                    Hemet Ca
Email:
Telephone #:

History of Purchases and sales of BTU by Randolph Arcinieon Between April 3, 2017 and through October 28, 2019

| DATE PURCH | #sh Purch | COST/ share | TOT cost | #sh Sold | Sold Price |
|---|---|---|---|---|---|
| 5/13/19 | 2 | 27.50 | 55- | | |
| 6/6/19 | 1 | 23.12 | | | |
| 7/3/19 | | | | 1 | 24.33 |

12/17/2022

RANDOLPH ARCINIEGA

Hemet Ca

SAN BERNARDINO CA

19 DEC 2022 PM 4



USA FOREVER

Peabody Securities Litigation
c/o Strategic Claims Services
P.O. Box 230
600 N. Jackson St. Ste. 205
Media, PA 19063

DEC 22 2022

19063-256455